UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------------------x
:
*In re* : Chapter 11
:
LANDSOURCE COMMUNITIES :
DEVELOPMENT LLC, *et al*, : Case No. 08-11111 (KJC)
:
: (Jointly Administered)
Debtors. :
: Re: Docket No. 79
---------------------------------------------------------------x

## OBJECTION OF LNR-LENNAR WASHINGTON SQUARE, LLC TO MOTION OF PCL CONSTRUCTION SERVICES, INC. (A) TO REQUIRE ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS AND (B) FOR ADEQUATE PROTECTION

LNR-Lennar Washington Square, LLC, as debtor and debtor in possession in the above-captioned cases ("*Washington Square*" and, together with its debtor affiliates, the "*Debtors*"[1]), hereby objects (the "*Objection*") to the Motion of PCL Construction Services, Inc. (A) to Require Assumption or Rejection of Executory Contracts and (B) for Adequate Protection, which was filed with this Court on June 20, 2008 [Doc. No. 79] (the "*Motion*"). In support of its Objection, Washington Square respectfully represents as follows:

### Background

1. On June 8, 2008 (the "*Commencement Date*"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States

---

[1] The Debtors in these cases are California Land Company; Friendswood Development Company, LLC; Kings Wood Development Company, L.C.; LandSource Communities Development LLC; LandSource Communities Development Sub LLC; LandSource Holding Company, LLC; Lennar Bressi Ranch Venture, LLC; Lennar Land Partners II; Lennar Mare Island, LLC; Lennar Moorpark, LLC; Lennar Stevenson Holdings, L.L.C.; LNR-Lennar Washington Square, LLC; LSC Associates, LLC; NWHL GP LLC; The Newhall Land and Farming Company (A California Limited Partnership); The Newhall Land and Farming Company; Southwest Communities Development LLC; Stevenson Ranch Venture LLC; Tournament Players Club at Valencia, LLC; Valencia Corporation; and Valencia Realty Company.

Code (the "*Bankruptcy Code*"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"). On June 20, 2008 the Office of the United States Trustee appointed a committee of unsecured creditors (the "*Creditors' Committee*").

2. Less than two weeks after the Commencement Date, PCL Construction Services, Inc. ("*PCL*") filed the Motion, which requests the Court to require (a) Washington Square to determine, no later than August 7, 2008, whether or not to assume or reject (i) a General Contractor Agreement, dated as of June 12, 2006, between Washington Square and PCL and (ii) a Cost Plus Agreement Between Owner and Contractor with a Guaranteed Maximum Price, dated as of February 29, 2007, between Washington Square and PCL (collectively, the "*Contracts*"), and (b) Washington Square to provide adequate protection to PCL in the form of security for PCL's continued performance under the Contracts.

**Preliminary Statement**

3. A mere twelve days into these large and complex chapter 11 cases, PCL is attempting to force Washington Square to make a decision, within the next month, as to whether to assume or reject significant and material contracts. PCL's Motion fails as a matter of fact and law. The controlling case law could not be clearer: *absent compelling circumstances and a showing of significant prejudice to a contract counterparty, a debtor has until plan confirmation to decide whether to assume or reject a contract.*

4. This fundamental bankruptcy principle results from the recognition that premature rejection of a contract can harm the estate by causing the loss of an important contractual relationship for the entire enterprise. On the other hand, early assumption may result in the curing of significant prepetition claims (to the exclusion of other unsecured claims) and the elevation of such unsecured claims to administrative expense status prior to the time when reorganization is assured.

5. PCL offers no valid reason why Washington Square should be compelled to assume or reject the Contracts within the first two months of its chapter 11 cases. The only "harm" cited by PCL is shared by other creditors of Washington Square and the other Debtors – nonpayment of its prepetition claim as a result of the commencement of these chapter 11 cases. PCL cannot realistically allege any harm by PCL as a result of its ongoing performance under the Contracts because Washington Square is prepared to compensate PCL on an ongoing basis for its postpetition work. Continued performance is not a "harm" recognized by the Bankruptcy Code, and, indeed, the Bankruptcy Code requires such performance.

6. PCL's request for adequate protection must also be denied. The Bankruptcy Code requires a debtor to provide adequate protection under three sections: 362, 363, and 364. None of these sections is implicated by PCL's request. To the extent that state law purports to impose on a debtor in possession requirements to provide adequate protection that go beyond those imposed by bankruptcy law, bankruptcy law governs and preempts such state imposed requirements.

### PCL Has Not Demonstrated Cause to Compel
### Washington Square to Assume or Reject the Contracts by August 7, 2008

7. In support of its Motion, PCL asserts that continued performance under the Contracts poses a "substantial financial risk" to PCL because PCL has no assurance that

Washington Square will have availability or the desire to make postpetition payments under the Contracts when due. (Obj. p.4.) This is inaccurate and does not establish cause sufficient to force Washington Square to make an early decision as to whether to assume or reject the Contracts.

8. Pursuant to section 365(d)(2) of the Bankruptcy Code, a chapter 11 debtor has until confirmation of a plan of reorganization to decide to assume or reject an executory contract. "Permitting the debtor to make its decision as late as the plan confirmation date enables the debtor to carefully evaluate the possible benefits and burdens of an [executory contract.] It is vitally important to all interested parties that the debtor make a prudent assumption or rejection decision . . . ." *In re Physician Health Corp.*, 262 B.R. 290, 292 (Bankr. D. Del. 2001) (quoting *In re Wheeling-Pittsburgh Steel Corp.*, 54 B.R. 385, 388 (Bankr. W.D. Pa. 1985)).

9. Upon the request of a party to an executory contract, the court may order the debtor to decide whether to assume or reject the contract "within a specified period of time." 11 U.S.C. § 365(d)(2). A party seeking to compel a debtor to assume or reject an executory contract prior to confirmation, however, has the burden of demonstrating why it is entitled to such relief. *See Mayer Pollock Steel Corp. v. London Salvage & Trading Co., Ltd. (In re Mayer Pollock Steel Corp.)*, 157 B.R. 952, 964 (Bankr. E.D. Pa. 1993). Many courts have held that a debtor is entitled to assume or reject within a "reasonable time." *In re Wheeling-Pittsburgh Steel Corp.*, 54 B.R. at 388 (citing cases). In determining what constitutes a reasonable amount of time for a debtor to make a decision, courts consider the nature of the interests at stake, the balance of harm to the parties, the benefit to be achieved, any safeguards afforded the parties, and whether forcing the debtor to make an early decision would be contrary to the purpose of

chapter 11. *In re G-I Holdings, Inc.*, 308 B.R. 196, 213 (Bankr. D.N.J. 2004) (citing *In re Dunes Casino Hotel*, 63 B.R. 939, 949 (D.N.J. 1986)); *see also In re Physician Health Corp.*, 262 B.R. at 292 ("In deciding whether to accelerate the debtor's decision, the court must balance the interests of the contracting party against the interests of the debtor and its estate.").

10. It is too early to compel Washington Square to assume or reject the Contracts. Washington Square has not been afforded the "reasonable" time required by applicable case law. The Debtors' chapter 11 cases are still in their infancy. They are large and complex and involve 21 Debtors and over 1,000 executory contracts. PCL's Contracts are merely two of hundreds of field and construction agreements entered into by the Debtors. The consequences of assuming or rejecting these contracts needs to be analyzed in the context of a broader business plan for the Debtors. Nothing distinguishes PCL's situation from that of the Debtors' other contractors. In addition, early assumption of the Contracts could harm Washington Square's estate by resulting in the elevation of unsecured claims to administrative expense status prior to the time when reorganization is assured. Thus, premature assumption would have the effect of insuring PCL against the possibility that a reorganization may not occur, at the expense of Washington Square's other creditors. On the other hand, premature rejection of the Contracts could result in a loss of an important contractual relationship for Washington Square.

11. More importantly, PCL has failed to provide a sufficient basis for compelling Washington Square to assume or reject the Contracts at this early stage of its chapter 11 case. It is well established that when a non-debtor party to an executory contract is suffering no postpetition harm or prejudice, that party is not entitled to force the debtor's early assumption or rejection of the contract in question. *See, e.g., In re Physician Health Corp.*, 262 B.R. at 295

(denying motion to compel assumption or rejection prior to confirmation of a plan of reorganization because "there is no evidence that [the non-debtor counterparty] . . . is being prejudiced by the delay in the Debtors' decision," where the debtors were performing under the contract, they were in the process of evaluating their businesses, and their bankruptcy cases were only five months old). Indeed, even in situations where a non-debtor counterparty is being prejudiced, courts have not forced immediate rejection or assumption. *See, e.g., id.* at 294, n.2 (noting that some courts have held that even a postpetition breach of an executory contract is insufficient for a court to compel a debtor to assume or reject a contract on an expedited basis).

12. PCL's bare-bones contention that it has no assurance of Washington Square's postpetition performance is false and insufficient under applicable law to warrant shortening the time period provided in section 365(d)(2) of the Bankruptcy Code. Since the Commencement Date, Washington Square and its counsel have engaged in repeated discussions with PCL and its counsel, during which PCL has been assured that Washington Square has every intention of honoring, and has financing available under its debtor in possession credit agreement to pay for, its postpetition payment obligations in respect of PCL's continued postpetition performance. Notably, Washington Square has not yet failed to make a postpetition payment under the Contracts.

13. The only "harm" PCL alleges is that it will incur significant liability to subcontractors if it continues to perform under the Contracts. Entirely lost on PCL is the fact that such expenditures are required to satisfy PCL's performance obligations under the Contracts, and that the Bankruptcy Code *requires* such performance. *See, e.g., United States ex rel. United States Postal Serv. v. Dewey Freight Sys., Inc.*, 31 F.3d 620, 624 (8th Cir. 1994) ("After a debtor commences a Chapter 11 proceeding, but before executory contracts are

assumed or rejected under § 365(a), those contracts remain in existence, *enforceable by the debtor but not against the debtor.*" (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 532 (1984))); *In re Nat'l Steel Corp.*, 316 B.R. 287, 305 (Bankr. N.D. Ill. 2004) ("The non-debtor party must continue to perform under the cont[r]act prior to assumption or rejection . . . ."); *McLean Indus., Inc. v. Med. Lab. Automation, Inc. (In re McLean Indus., Inc.)*, 96 B.R. 440, 449 (Bankr. S.D.N.Y. 1989) ("A debtor-in-possession's ability to continue to perform and to compel performance with respect to assumable executory contracts is usually the life blood of its reorganization." (quoting Honorable Howard C. Buschman III, *Benefits and Burdens: Post-Petition Performance of Unassumed Contracts*, 5 Bankr. Dev. J. 341, 346 (1988))).

14. Moreover, refusal to continue performing under the Contracts is tantamount to unilateral termination and constitutes a knowing violation of the automatic stay. *See, e.g., Computer Commc'ns, Inc. v. Codex Corp. (In re Computer Commc'ns, Inc.)*, 824 F.2d 725, 730-31 (9th Cir. 1987) (holding that termination of an executory contract violates the automatic stay); *In re Bd. of Dirs. of Compañía General De Combustibles, S.A.*, 269 B.R. 104, 113 (Bankr. S.D.N.Y. 2001) (noting generally that an executory contract may not be terminated without seeking relief from the automatic stay); *In re Redpath Computer Servs., Inc.*, 181 B.R. 975, 981 (Bankr. D. Ariz. 1995) (finding that non-debtor party violated the automatic stay by attempting to terminate, based on agreement terms, executory contract postpetition); *In re Tudor Motor Lodge Assocs., Ltd. P'ship*, 102 B.R. 936, 951 (Bankr. D.N.J. 1989) (finding that postpetition efforts to terminate executory contract that had not been properly terminated prepetition were subject to the automatic stay). Simply put, performance obligations under an executory contract are not a "harm" cognizable by the Bankruptcy Code.

15. PCL's only harm in this case is that it has a prepetition claim against Washington Square. Prepetition debt, however, is a fact common to every other creditor in Washington Square's chapter 11 case and falls wide of the burden that PCL is obligated to prove under section 365(d)(2). *See, e.g.*, *In re Physician Health Corp.*, 262 B.R. at 294 ("[E]ven if [the movant] had established a pre-petition default of the [executory contract], that fact would not be a reason to compel the Debtors to decide more quickly whether to assume or reject the contract. If there were a breach . . . [the movant] would have a claim for that breach."); *In re Wheeling-Pittsburgh Steel Corp.*, 54 B.R. at 388 (concluding that a prepetition default under an executory contract only entitles the non-debtor counterparty to a general unsecured claim against the estate; "it does not provide sufficient grounds for shortening the Debtor's time period for making its assumption or rejection decision"); *In re Mayer Pollock Steel Corp.*, 157 B.R. at 965 (holding that it would be inequitable to force the debtor to assume or reject the contract prior to plan confirmation and noting, "[i]t is no answer to argue, as [the non-debtor counterparty] does, that it is a creditor (among many others) which will probably be paid less than the full amount owed to it under the terms of any reorganizational plan of the Debtor").

16. PCL has not been, and will not be, prejudiced by a delay in determining whether to assume or reject the Contracts. Accordingly, PCL is not entitled to compel expedited assumption or rejection thereof.

## PCL Is Not Entitled to Adequate Protection

17. PCL also is not entitled to condition its continued performance on Washington Square providing adequate protection in the form of a letter of credit or bond in the amount of 15% of the total amount of the Contracts. As described above, this would be in direct violation of section 362 of the Bankruptcy Code, which prohibits creditors from ceasing to

perform under contracts with debtors on the basis of prepetition defaults. Under the Bankruptcy Code, the concept of "adequate protection" is generally limited to what is necessary to protect secured creditors against a decline in the value of their collateral during the pendency of a debtor's chapter 11 case. *See, e.g., In re Price*, 370 F.3d 362, 372-73 (3d Cir. 2004). PCL's reliance on a California state statute[2] in support of its request for adequate protection is misplaced, as this state law is preempted by the Bankruptcy Code. The only condition that federal bankruptcy law imposes for a debtor to continue receiving the benefits of an executory contract prior to assumption is that the debtor continue to pay for the benefits it receives. *See, e.g., In re Nat'l Steel Corp.*, 316 B.R. at 305 ("[I]f a debtor-in-possession postpones the assumption/rejection decision but continues to receive benefits under the executory contract, 'the debtor-in-possession is obligated to pay for the reasonable value of those services . . . .'" (quoting *Bildisco & Bildisco*, 465 U.S. at 531)); *In re GHR Energy Corp*, 41 B.R. 668, 670 (Bankr. D. Mass. 1984) ("During the time the debtor is exercising its freedom to forestall making an election and is exploring the options available to it, it must compensate the lessor for using and occupying the leased premises."); *In re Yonkers Hamilton Sanitarium*, 22 B.R. 427, 435 (Bankr. S.D.N.Y. 1982) ("As long as the debtor continues to receive benefits under such contract it must also bear the burdens or obligations imposed under the contract."), *aff'd*, 34 B.R. 385 (S.D.N.Y. 1983).

18. Except with respect to particular types of contracts (such as real property leases), the Bankruptcy Code contains no other requirements with respect to postpetition performance under an unassumed contract. In fact, prior to assumption of an executory contract, such agreement is unenforceable against a debtor. *Univ. Med. Ctr v. Sullivan (In re Univ. Med.*

---

[2] In any event, Washington Square disputes the applicability of the California statute to the construction project on which PCL is working. Because, however, the Bankruptcy Code clearly does not provide adequate protection to a party to an executory contract, the applicability of the California statute need not be addressed by the Court.

*Ctr.*), 973 F.2d 1065, 1075 (3d Cir. 1992). To the extent state law conflicts with the Bankruptcy Code on this issue, the Bankruptcy Code preempts state law. *See, e.g.*, *In re Kelton*, 137 B.R. 18, 21-22 (Bankr. W.D. Tex. 1992) ("The Bankruptcy Code frequently preempts the operation of numerous state law provisions. . . . The focal policy of bankruptcy is equitable and ratable distribution of estate assets among creditors. States, by means of their own laws, can never devise creditor preferences which federal law does not recognize.") (citation omitted); *In re McLean Enters., Inc.*, 105 B.R. 928, 932 (Bankr. W.D. Mo. 1989) ("To the extent section 365 is inconsistent with state law, the Supremacy Clause of the United States Constitution mandates that this Court follow federal law.").

19. Given the size, complexity, and infancy of these cases, coupled with the fact that PLC is not being prejudiced or harmed in any cognizable way, it is premature to compel Washington Square to assume or reject the Contracts. Under these circumstances, Washington Square submits that no factual or legal justification exists for compelling Washington Square to assume or reject the Contracts at this time.

WHEREFORE Washington Square respectfully requests that the Court (i) deny the Motion and (ii) grant such other and further relief as is just.

Dated: July 3, 2008
      Wilmington, Delaware

*/s/ Paul N. Heath*

Mark D. Collins (No. 2981)
Paul N. Heath (No. 3704)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700

-and-

Marcia L. Goldstein
Debra A. Dandeneau
Robert J. Lemons
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

PROPOSED ATTORNEYS FOR
DEBTORS AND DEBTORS IN
POSSESSION