# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>LANDSOURCE COMMUNITIES<br>DEVELOPMENT LLC, *et al.*<br><br>Debtors. | Chapter 11<br><br>Case No. 08-11111 (KJC)<br><br>Jointly Administered<br><br>Re: Docket No. 1891 |

### BARCLAYS BANK PLC'S RESPONSE TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM DEBTORS, LENNAR CORPORATION AND BARCLAYS BANK, PLC

Barclays Bank PLC, as Administrative Agent under the Superpriority Debtor-In-Possession First Lien Credit Agreement ("Barclays"), by its undersigned counsel, hereby files this response to the Official Committee of Unsecured Creditors' Motion to Compel Production of Documents from Debtors, Lennar Corporation and Barclays Bank PLC ("Motion to Compel")[1] and, in support thereof, respectfully states as follows:

### Preliminary Statement

1. The Motion to Compel is replete with numerous arguments that the Creditors Committee presumably will make at the confirmation hearing for the Plan. But the Creditors Committee's position with respect to whether the Plan should be confirmed has no bearing on this more basic issue, namely whether this Court should permit parties who have the same legal interest in having the Plan confirmed to assert a common interest privilege with respect to the formulation, implementation and execution of that Plan.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Second Amended Joint Chapter 11 Plan of Reorganization for LandSource Communities Development LLC and its Affiliated Debtors ("Plan") and the related disclosure statement filed on June 4, 2009. [Docket Nos. 1771 and 1772.]

2. The answer is unequivocally yes. The common interest privilege is a long and well-established principle of law designed to protect exactly this type of situation: where parties seek to obtain a goal in their common legal interest.

3. The common interest privilege allows attorneys who represent different clients who have at least substantially similar interests to share and exchange information without having to disclose that information to others. This includes parties who all support proposed plans and applies even in situations where parties may be adverse to one another with respect to other issues for which they are not claiming the protection of the common interest doctrine. Here, this is the exact situation among Barclays, Lennar and the Debtors with respect to the Plan.

4. The Debtors, Lennar and Barclays have been working cooperatively to form a plan that is in the best interest of creditors and the Debtors' estate. In order to facilitate such efforts, parties like the Debtors, Lennar and Barclays need the protection of the common interest privilege. Without that protection, the ability of parties to work together to reach a consensus with respect to proposed plans would be severely hampered.

5. For the reasons discussed below, Barclays and the Debtors shared a common interest in pursuing a coordinated course of action for the formulation, implementation and execution of the Plan as of December 5, 2008. The common interest between Barclays and Lennar with respect to the formulation, implementation and execution of the Plan at least as of March 4, 2009, when those two reached an agreement in principle with respect to Lennar's investment in reorganized Debtors. It is Barclays' understanding that Lennar and the Debtors reached an agreement by which they resolved their issues with respect to the formulation, implementation and execution of the Plan on or about April 27, 2009.

**Background**

6. On June 8, 2008, the Debtors commenced these cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. The Debtors' exclusive period to file a plan of reorganization pursuant to section 1121 of the Bankruptcy Code expired as of October 7, 2008. Shortly after the expiration of the Debtors' exclusive period to file a plan of reorganization, Barclays filed the Joint Chapter 11 Plans for LandSource Communities Development LLC and its Affiliated Debtors and the related disclosure statement. [Docket Nos. 741 and 835, respectively.]

8. Counsel for Barclays met with counsel for the Debtors on December 4, 2008.

9. During that meeting, the Debtors and Barclays reached agreement on major points and agreed to pursue a common course of action, including the formulation, implementation and execution of a plan of reorganization.

10. Separately, the Debtors and Barclays continued to have interactions with many other interested parties, including Lennar.

11. Barclays and Lennar had many communications in the winter of 2009. Those discussions ultimately led to an agreement in principle between them on March 4, 2009 whereby Lennar will make a $140 million investment in the reorganized Debtors in exchange for, among other things, 15% of the units of Holdco, a new entity formed to hold all of the equity interests of the reorganized Debtors, acquisition of certain assets and settlement of certain causes of action. At least as of the date of reaching this agreement, Barclays and Lennar had a common interest in formulating, implementing and executing a plan of reorganization incorporating this agreement.

12. On March 20, 2009, Barclays filed the First Amended Joint Chapter 11 Plan of Reorganization for LandSource Communities Development LLC and its Affiliated Debtors and the related disclosure statement. [Docket Nos. 1360 and 1361, respectively.]

13. On or about April 27, 2009, it is Barclays' understanding that Lennar and the Debtors resolved certain issues between them, thereby rendering a common legal interest between Lennar and the Debtors with respect to formulating, implementing and executing a plan of reorganization.

14. On May 6, 2009, Barclays filed the its Second Amended Joint Chapter 11 Plan of Reorganization for LandSource Communities Development LLC and its Affiliated Debtors and the related disclosure statement and related disclosure statement. [Dockets Nos. 1583 and 1584, respectively.] This was subsequently revised and re-filed with the Court on June 4, 2009 and is the current operative Plan. [Docket No. 1771]

15. On May 15, 2009, the Creditors Committee served document requests on Barclays, the Debtors, and Lennar, respectively. Not including subparts, the Creditors Committee served 57 separate document requests on Barclays, 95 separate document requests on Lennar and 58 separate document requests on the Debtors. On or about June 16, 2009, the Creditors Committee served a second set of 13 documents requests on the Debtors.

16. In response, Barclays, the Debtors and Lennar have been diligently searching their files and have been producing documents on a rolling basis. To date, Barclays has produced over 15,000 pages of responsive documents. Lennar has produced over approximately 130,000 pages of hard copy documents and electronic documents to date. The Debtors have produced in excess of 200,000 pages of responsive documents. Barclays, Lennar and the

Debtors are all continuing to search and produce documents responsive to the Creditors Committee's voluminous requests.

17. Barclays, the Debtors and Lennar have not produced documents that are protected from disclosure by the common interest doctrine. Specifically, Barclays has not produced communications (including the exchange of draft documents) relating to the formulation, implementation, execution and confirmation of a proposed plan of reorganization between it and the Debtors on or after December 5, 2008, between it and Lennar on or after March 4, 2009, or those involving Barclays, Lennar and the Debtors on or after April 27, 2009.

**Argument**

18. The common interest privilege[2] "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others." *In re Teleglobe Communications Corporation*, 493 F.3d 345, 364 (3d Cir. 2007). The privilege protects communications made between attorneys when the parties share a "common legal interest." *Id.*

19. In *Teleglobe*, the Third Circuit noted that "[t]he Delaware courts seem not to have taken a position on whether the common legal interest must be identical." *Id.* at 365. In the Third Circuit, "it is sufficient to recognize that members of the community of interest must share at least a substantially similar legal interest." *Id.*; *see also American Legacy Foundation v. Lorillard Tobacco Co.*, No. Civ. A. 19406, 2004 WL 2521289 at *4 (Del. Ch. Nov. 3, 2004) (distinguishing the identical interest standard employed in *Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189, 190 (D. Del. 2004) (cited in Mot. at 6)) (unpublished); *Louisiana Municipal Police Employees Retirement System v. Sealed Air Corp.*, 253 F.R.D. 300, 309-310 (D.N.J. 2008) (applying "substantially similar legal interest" analysis of *Teleglobe*); Paul Rice, Attorney-Client

---

[2] The doctrine is also referred to by some courts as the "community of interest" doctrine.

Privilege in the United States § 4:35 (2007) ("A standard of identical legal interests is unnecessarily narrow.").

20. Co-supporters of a proposed plan have the requisite common interest sufficient to sustain a privilege among themselves. In *In re Hardwood P-G, Inc.*, 403 B.R. 445 (Bankr. W.D. Tex. 2009), the Trustee of a litigation trust established under the debtors' Chapter 11 plan asserted the common interest privilege with respect to certain reports that had been shared among the debtors, the Official Committee of Unsecured Creditors, and the lenders. *Id.* at 452. The Trustee argued that the parties had a common legal interest "to pursue and liquidate the estate's legal causes of action in order to realize the value of those assets for the benefit of the creditors." *Id.* at 453. The court agreed and also noted the parties "join[ed] forces" to support confirmation of the plan:

> The Trustee has properly asserted the common interest doctrine as between the debtors, the Committee, and the Banks here. ***It is uncontested that, in connection with resolving their issues for final approval of the DIP financing, the debtors, the Committee and the Banks agreed to join forces for the ultimate purpose of confirming a liquidating plan of reorganization that recovered and distributed the debtors' assets, and arranged for the pursuit of causes of action held by the estate.*** In pursuit of that strategy the debtor hired A & M for the purpose of analyzing the debtors' causes of action. By the time the debtors hired A & M in May 2006, and subsequently when the A & M Report was shared, the three entities were working towards the common-and ultimately successful-goal of identifying and pursuing the debtors' causes of action.

*Id.* at 461 (emphasis added).

21. "The common interest privilege does not require a complete unity of interests among the participants." *In re Mortgage & Realty Trust*, 212 B.R. 649, 653 (Bankr. C.D. Cal. 1997). "The privilege applies where the interests of the parties are not identical, and it applies even where the parties' interests are adverse in substantial respects." *Id.*, citing *Hunydee v. U.S.*, 355 F.2d 183, 185 (9th Cir. 1965); *see also Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174

F.R.D. 609, 634 (M.D. Pa. 1997) ("The interests of the parties need not be identical, and may even be adverse in some respects."). This is true even where a lawsuit is foreseeable in the future between the parties asserting the privilege. *Id.*, citing *In re Grand Jury Subpoena Duces Tecum*, 406 F. Supp. 381, 392 (S.D.N.Y. 1975).

22. Barclays, Lennar and the Debtors are all asking this Court to confirm the Plan. The Creditors Committee and the Second Lien Lenders have objected to that plan. With respect to the formulation, implementation and execution of the Plan, including confirmation, Barclays, Lennar and the Debtors have a common interest and are adverse to the Creditors Committee and the Second Lien Lenders. This is a textbook application of the common interest privilege.

23. The fact that there may be other issues, other than the formulation, implementation and execution of the Plan, where Barclays, Lennar and/or the Debtors may have unaligned interests does not provide a basis to determine that these three parties do not have a common interest with respect to the Plan. Barclays, Lennar and the Debtors are not asserting that they have a blanket common interest privilege with respect to all outstanding issues relating to this bankruptcy. But, those outstanding issues do not vitiate the common interest among them in opposing the objections filed by the Creditors Committee and the Second Lien Lenders.

24. It is unclear from the Motion to Compel if the Creditors Committee is accusing any one, or more, of Barclays, Lennar or the Debtors of not acting in the best interests of either itself or the entities to whom they have a duty. The Creditors Committee takes great pains to claim that each of these three entities is in a different position, as lender, post-reorganization investor, and reorganized entity, respectively. But in making these argument about their various duties to maximize their own recoveries, the Creditors Committee misses the point. (Mot. at 7-9.)

25. There is absolutely no doubt that counsel for each of Barclays, Lennar and the Debtors has been serving as zealous advocates for their clients. The fact that a party is seeking to maximize recovery for its respective client has no impact on the question of whether its legal interests are currently aligned with another party's. Barclays, Lennar and the Debtors are entitled to take into account the strengths, weaknesses, costs, potential risks and rewards of their respective positions, consult with their clients, and pursue the appropriate legal course. That is exactly what these three parties have done. Their common interest with respect to the formulation, implementation and execution of the Plan, including seeking approval of the Plan, is sufficient to justify the common interest privilege relating to their counsel's communications made as part of their joint effort. *See In re Hardwood P-G,* 403 B.R. at 461.

26. In addition, Barclays, Lennar and the Debtors believe that the Plan is also in the best interests of the creditors and the estate. This is a product of the consensus building nature of the bankruptcy process. If there were to be no privilege in such a situation, it would serve only to chill parties from working together to formulate, implement and execute reorganization plans. The effect on the ability for companies to reorganize via Chapter 11 would be made more difficult.

27. As a second effort to sidestep the common interest privilege, the Creditors Committee makes a cursory argument that the privilege cannot apply because the Plan allegedly conflicts with the Debtors' obligation to act in the best interests of the bankruptcy estate. (Mot. at 9-11.) This allegation is one of the bases of the Creditors Committee's objection to the Plan, namely the Motion of the Official Committee of Unsecured Creditors for Entry of an Order Converting the Debtors' Chapter 11 Cases to Chapter 7 Cases Pursuant to 11 U.S.C. § 1112(b) [Docket No. 1783].

28. That is, the Creditors Committee is asking this Court to essentially rule on its outstanding motion and objection that the Plan is not in the best interests of the bankruptcy estate, a claim that Barclays, Lennar and the Debtors vigorously dispute, in making is determination of whether the common interest privilege applies. This is certain to be a hotly contested issue at the confirmation hearing and is not a reason to find that the common interest privilege does not apply in this case.

## Conclusion

29. For the reasons discussed above, Barclays, Lennar and the Debtors properly have asserted the common interest privilege and not produced communications (including the exchange of draft documents) relating to the formulation, implementation and execution of the Plan of reorganization between it and the Debtors on or after December 5, 2008, between it and Lennar on or after March 4, 2009, or those involving Barclays, Lennar and the Debtors on or after April 27, 2009.

WHEREFORE, Barclays, Lennar and the Debtors respectfully request that the Court affirm that their invocation of the common interest privilege is proper and deny the Creditors Committee's Motion to Compel.

Dated: June 24, 2009

Respectfully submitted,

BARCLAYS BANK, PLC,
as Administrative Agent

By: /s/ Joseph M. Barry
YOUNG CONAWAY STARGATT
& TAYLOR LLP
Edwin J. Harron (No. 3396)
Joseph M. Barry (No. 4221)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

- and -

GREENBERG TRAURIG, LLP
Bruce Zirinsky (*pro hac vice*)
Nathan A. Haynes (*pro hac vice*)
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

- and -

GREENBERG TRAURIG, LLP
Nancy A. Peterman (*pro hac vice*)
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Telephone: (312) 456-8400
Facsimile: (312) 456-8435

*Attorneys for Barclays Bank PLC,
as Administrative Agent*