# Exhibit 21

## Identity and  of Creditor Trustee

**KDW Restructuring & Liquidation Services LLC**

# Exhibit 22

## Identity and  of Creditor Trust Advisory Board

**Class 5 Creditor Trust Advisory Board Members:**

Jeff Myers (Oakridge Landscape Inc.)

John Burgeson (John Burgeson Contractors)

Jim Frankian (R.T. Frankian & Associates)

**Class 5 Creditor Trust Advisory Board Members:**

Jeff Myers (Oakridge Landscape Inc.)

John Burgeson (John Burgeson Contractors)

Jim Frankian (R.T. Frankian & Associates)

**Creditor Litigation Trust Advisory Board Members:**

The initial Creditor Trust Advisory Board Members designated by the Committee are as follows:
    Jeff Myers (Oakridge Landscape Inc.)
    John Burgeson (John Burgeson Contractors)
    Jim Frankian (R.T. Frankian & Associates)

The initial Creditor Litigation Trust Advisory Board Members to be designated by the Plan Proponent and the Second Lien Administrative Agent have not yet been determined.  The Litigation Trustee is to appoint such Creditor Trust Litigation Advisory Board Members on the Effective Date, provided that such Creditor Litigation Trust Advisory Board Members may be replaced, at the option of the Plan Proponent or the Second Lien Administrative Agent, as applicable.

1

**Exhibit 23**

**Class 5 Creditor Trust Agreement**

-------------------------------------------------------------------x
                                                          :

| | |
|---|---|
| *In re* | :   Chapter 11 |
| | : |
| LANDSOURCE COMMUNITIES | :   Case No. 08-11111 (KJC) |
| DEVELOPMENT LLC, *et al.*,[1] | : |
| | :   (Jointly Administered) |
| Debtors. | : |

-------------------------------------------------------------------x

---

## CLASS 5 TRUST AGREEMENT
### Dated: _____, 2009

---

[1] The Debtors are as follows: California Land Company; Friendswood Development Company LLC; Kings Wood Development Company, L.C.; LandSource Communities Development LLC; LandSource Communities Development Sub LLC; LandSource Holding Company, LLC; Lennar Bressi Ranch Venture, LLC; Lennar Land Partners II; Lennar Mare Island, LLC; Lennar Moorpark, LLC; Lennar Stevenson Holdings, L.L.C.; LNR-Lennar Washington Square, LLC; LSC Associates, LLC; NWHL GP LLC; The Newhall Land and Farming Company (A California Limited Partnership); The Newhall Land and Farming Company; Southwest Communities Development LLC; Stevenson Ranch Venture LLC; Tournament Players Club at Valencia, LLC; Valencia Corporation; and Valencia Realty Company.

# TABLE OF CONTENTS

1. Definitions: ................................................................................................................. 5
   1.1 Terms Defined Above ........................................................................................ 5
   1.2 Additional Defined Terms ................................................................................ 5
2. Authority of and Certain Directions to Class 5 Trustee .................................... 7
   2.1 Creation of Class 5 Trust ................................................................................. 7
   2.2 Property in the Class 5 Trust ........................................................................... 7
   2.3 Purpose of Class 5 Trust .................................................................................. 7
3. Beneficial Interests. ...................................................................................... 8
   3.1 Creation of Beneficial Interests ....................................................................... 8
   3.2 Sharing of Proceeds ......................................................................................... 8
   3.3 No Transfer or Exchange ................................................................................. 9
   3.4 Absolute Owners ............................................................................................... 9
   3.5 Means of Payment ............................................................................................. 9
4. Delivery and Acceptance of Class 5 Trust Estate. ........................................... 9
   4.1 Conveyance by Debtors ..................................................................................... 9
   4.2 Acceptance of Conveyance ............................................................................... 9
5. Administration of Class 5 Trust Estate. ........................................................... 9
   5.1 Powers of the Class 5 Trustee ......................................................................... 10
   5.2 Prosecution or Settlement of Claim Objections .......................................... 11
   5.3 Limitations on Class 5 Trustee: Investments ............................................... 11
       5.3.1 No Trade or Business ............................................................................. 11
       5.3.2 Investments of Cash .............................................................................. 11
   5.4 Transferee Liabilities ...................................................................................... 12
   5.5 Administration of Trust ................................................................................... 12
   5.6 Payment of U.S. Trustee's Fees ..................................................................... 12
   5.7 Fiscal Year ........................................................................................................ 12
   5.8 Reports .............................................................................................................. 12
   5.9 Compensation of the Class 5 Trustee ........................................................... 12
   5.10 Termination ...................................................................................................... 13
   5.11 No Bond ............................................................................................................ 13
6. Source of Payments: Distributions To The Beneficiaries ................................ 13
   6.1 Distributions from Class 5 Trust Estate ....................................................... 13
   6.2 Frequency and Amounts of Cash Payments ................................................ 13
   6.3 Establishment of the Claim Accounts ........................................................... 13
   6.4 Allocation of Distributions from Class 5 Trust Estate ............................... 14
   6.5 Distributions of Property Allocated to Disputed Claims ............................ 14
   6.6 Unclaimed Property ......................................................................................... 15

NY 239664150v3

      6.6.1   Escrow of Unclaimed Property ................................................................. 15

      6.6.2   Distribution of Unclaimed Property ........................................................ 15

      6.6.3   Time Bar to Cash Payments ................................................................... 15

  6.7    Fractional Distributions ...................................................................................... 15

  6.8    Final Distribution ................................................................................................ 16

  6.9    Dissolution of the Class 5 Trust .......................................................................... 16

  6.10  Class 5 Trust Expenses ...................................................................................... 16

7.       Other Duties of the Class 5 Trustee. ................................................................... 17

  7.1    Management of Class 5 Trust Estate ................................................................... 17

  7.2    No Implied Duties ............................................................................................... 17

8.       Concerning the Class 5 Trustee. .......................................................................... 17

  8.1    Acceptance by Class 5 Trustee ............................................................................ 17

  8.2    Discretionary Submission of Questions .............................................................. 17

  8.3    Resignation of Class 5 Trustee. ........................................................................... 17

      8.3.1   Resignation ............................................................................................. 18

      8.3.2   Appointment of a Successor Class 5 Trustee ........................................ 18

  8.4    Acceptance of Appointment by Successor Class 5 Trustee ................................ 18

9.       Class 5 Trust Advisory Board ............................................................................. 18

  9.1    Role of the Class 5 Trust Advisory Board .......................................................... 18

  9.2    Class 5 Trust Advisory Board Members .............................................................. 18

  9.3    Duties of the Class 5 Trust Advisory Board ....................................................... 19

  9.4    Class 5 Trust Advisory Board Bylaws ................................................................ 19

  9.5    Board Voting Requirements ................................................................................ 19

      9.5.1   Majority Vote Requirement ................................................................... 19

      9.5.2   Unanimous Vote Requirement ............................................................... 20

  9.6    Reporting ............................................................................................................. 20

  9.7    Retention and Compensation of Professionals ................................................... 20

  9.8    Reimbursement ................................................................................................... 20

10.     Liability of Class 5 Trustee and Class 5 Trust Advisory Board. ........................ 20

  10.1  No Recourse and Limitation on Liability ........................................................... 20

  10.2  Discretion of Class 5 Trustee and Class 5 Trust Advisory Board ...................... 21

  10.3  Reliance by Class 5 Trustee, Class 5 Trust and Class 5 Trust Advisory Board. .......... 21

      10.3.1 Reliance on Docum ents ...................................................................... 21

      10.3.2 Retention of Professional s ................................................................. 22

      10.3.3 Reliance on Class 5 Trus tee and Class 5 Trust Advisory Board ............... 22

  10.4  Exculpation; Indemnification. ............................................................................ 22

      10.4.1 Exculpation ......................................................................................... 22

      10.4.2 I ndemnification of Class 5 Trustee, Class 5 Trust Advisory Board and Agents ...... 23

2

10.4.3 Payment of Expenses ................................................................................................. 23
10.4.4 Insurance ............................................................................................................... 23
11.    Miscellaneous. ........................................................................................................ 23
11.1    Title to Trust Estate.................................................................................................. 23
11.2    Notices ................................................................................................................... 23
11.3    Severability ............................................................................................................ 24
11.4    Counterparts............................................................................................................ 24
11.5    Binding Agreement.................................................................................................. 24
11.6    No Personal Liability of Beneficiaries...................................................................... 24
11.7    Headings ................................................................................................................. 25
11.8    Construction............................................................................................................ 25
11.9    Governing Law ....................................................................................................... 25
11.10  Construction with the Plan...................................................................................... 25
11.11  Subject to Court's Jurisdiction................................................................................. 25
11.12  Intention of the Parties ........................................................................................... 25
11.13  Valuation of Assets................................................................................................. 25
11.14  Requirement of Undertaking ................................................................................... 25
11.15  Books and Records ................................................................................................. 26

NY 239664150v3

## CLASS 5 TRUST AGREEMENT

THIS CLASS 5 TRUST AGREEMENT ("Agreement") is dated as of [_____], 2009, by and among California Land Company; Friendswood Development Company LLC; Kings Wood Development Company, L.C.; LandSource Communities Development LLC; LandSource Communities Development Sub LLC; LandSource Holding Company, LLC; Lennar Bressi Ranch Venture, LLC; Lennar Land Partners II; Lennar Mare Island, LLC; Lennar Moorpark, LLC; Lennar Stevenson Holdings, L.L.C.; LNR-Lennar Washington Square, LLC; LSC Associates, LLC; NWHL GP LLC; The Newhall Land and Farming Company (A California Limited Partnership); The Newhall Land and Farming Company; Southwest Communities Development LLC; Stevenson Ranch Venture LLC; Tournament Players Club at Valencia, LLC; Valencia Corporation; and Valencia Realty Company (collectively, the "Debtors") and KDW Restructuring & Liquidation Services LLC, not in its individual capacity, but solely as Class 5 Trustee hereunder (the "Class 5 Trustee"), in accordance with the Second Amended Joint Chapter 11 Plans of Reorganization for LandSource Communities Development LLC and each of its Affiliated Debtors Proposed by Barclays Bank PLC (the "Plan Proponent"), as Administrative Agent, Under the Super-Priority Debtor-In-Possession First Lien Credit Agreement, as Modified, dated [_____, 2009] (as amended, modified or supplemented from time to time, the "Plan"). Any capitalized terms used, but not defined, herein will have those meanings assigned to such terms in the Plan.

## RECITALS:

WHEREAS, the Debtors filed voluntary petitions commencing their respective cases (the "Chapter 11 Cases") under Chapter 11 of the Bankruptcy Code ("Bankruptcy Code") on June 8, 2008 in the United States Bankruptcy Court for the District of Delaware ("Court") and such Chapter 11 Cases are jointly administered under Case Number 08-11111;

WHEREAS, the Plan Proponent filed the Plan, and such Plan contemplates that a trust will be created for the benefit of the Holders of Allowed Unsecured Claims in Classes 5(a) - (u) solely for purposes of (a) receiving proceeds in the amount of $10,000,000; (b) distributing such proceeds (net of any expenses) to the Holders of Allowed Unsecured Claims in Classes 5(a) - (u) in accordance with the Plan; and (c) filing and prosecuting objections to, or negotiating, settling or otherwise resolving any and all Disputed Claims in Classes 5(a) - (u) in accordance with the objection procedures set forth in the Plan (the "Class 5 Trust");

WHEREAS, the Plan was confirmed by the Court pursuant to that certain Order entered on [_____, 2009] (the "Confirmation Order");

WHEREAS, all conditions to consummation of the Plan have been met (or waived) as of the date of execution of this Agreement;

WHEREAS, the Debtors, the Holders of Allowed Unsecured Claims in Classes 5(a) - (t) (the "Non-Newhall Beneficiaries") and the Holders of Allowed Unsecured Claims in Class 5(u) (the "Newhall Beneficiaries," and together with the Non-Newhall Beneficiaries, the "Beneficiaries") desire to create and fund the Class 5 Trust, as contemplated by the Plan,

pursuant to this Agreement;

WHEREAS, the Distributions due the Non-Newhall Beneficiaries equal $1,000,000 and the Distributions due the Newhall Beneficiaries equal $9,000,000;

WHEREAS, the Non-Newhall Beneficiaries desire to exchange their Allowed Claims under the Plan for Beneficial Interests (as defined herein) in a subtrust of the Class 5 Trust to be known as the "Non-Newhall Beneficiaries Subtrust" and the Newhall Beneficiaries desire to exchange their Allowed Claims under the Plan for Beneficial Interests (as defined herein) in a subtrust of the Class 5 Trust to be known as the "Newhall Beneficiaries Subtrust"; and

WHEREAS, all references to the Class 5 Trust in the ensuing provisions of this Agreement will be deemed to be a reference to the Non-Newhall Beneficiaries Subtrust and the Newhall Beneficiaries Subtrust to the extent of the respective interests of the Non-Newhall Beneficiaries and the Newhall Beneficiaries in the Class 5 Trust Estate.

## AGREEMENTS:

NOW THEREFORE, for and in consideration of the premises, and the mutual promises and agreements contained herein and in the Plan, the receipt and sufficiency of which are hereby expressly acknowledged, the Plan Proponent and Class 5 Trustee hereby agree as follows:

1. <u>Definitions:</u>

1.1 <u>Terms Defined Above</u>. As used in this Agreement, each of the terms "Agreement," "Bankruptcy Code," "Beneficiaries," "Chapter 11 Cases," "Court," "Confirmation Order," "Class 5 Trust," "Debtors," "Newhall Beneficiaries," "Newhall Beneficiaries Subtrust," "Non-Newhall Beneficiaries," "Non-Newhall Beneficiaries Subtrust," "Plan," "Plan Proponent" and "Class 5 Trustee" will have the meanings hereinabove set forth.

1.2 <u>Additional Defined Terms</u>. As used herein, the following terms will have the meanings set forth below, unless the context otherwise requires:

(a) "Beneficial Interest" means the rights and interests of each of the Beneficiaries in and to the Class 5 Trust Estate as described in Section 3 herein.

(b) "Claim Account" has the meaning ascribed to such term in Section 6.3(b) of this Agreement.

(c) "Claims List" has the meaning ascribed to such term in Section 6.3(a) of this Agreement.

(d)     "Class 5 Trust Advisory Board" means that certain three (3) member advisory board relating to the Class 5 Trust which members will be appointed by the Committee, as described in Section 9 of this Agreement.

(e)     "Class 5 Trust Advisory Board Member" and "Class 5 Trust Advisory Board Members" have the meanings ascribed to such terms in Section 9.2(a) of this Agreement.

(f)     "Class 5 Trust Estate" means $10,000,000, which will be irrevocably assigned, transferred and conveyed to the Class 5 Trust, free and clear of all claims, liens, encumbrances and other liabilities, including all Claims against and Interests in the Debtors, in accordance with the Plan and as of the Effective Date.

(g)     "Class 5 Trust Expenses" means all costs, expenses and obligations incurred by the Class 5 Trustee, the Class 5 Trust, the Class 5 Trust Advisory Board and their respective members, officers, directors, employees, professionals, representatives, agents, successors, heirs and assigns in administering the Class 5 Trust or in any manner connected, incidental or related thereto, including, but not limited to, the fees and expenses of any professionals retained by the Class 5 Trustee, the Class 5 Trust or the Creditor Class 5 Trustee Advisory Board, including its members, to assist in carrying out its duties pursuant to this Agreement and the Plan.

(h)     "Class 5 Trust Proceeds" means $10,000,000 *less* the Class 5 Trust Expenses.

(i)     "Disputed Claim Distribution Amount" has the meaning ascribed to such term in Section 6.5 of this Agreement.

(j)     "Final Cash" has the meaning ascribed to such term in Section 6.8 of this Agreement.

(k)     "Final Distribution" has the meaning ascribed to such term in Section 6.8 of this Agreement.

(l)     "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended from time to time.

(m)     "Permitted Transfer" has the meaning ascribed to such term in Section 3.3 of this Agreement.

(n)     "Resolved Claim" has the meaning ascribed to such term in Section 6.5 of this Agreement.

(o)     "Residual Authority" has the meaning ascribed to such term in Section 9.1(c) of this Agreement.

NY 239664150v3

(p)   "Unanimous Vote" has the meaning ascribed to such term in Section 9.5.2 of this Agreement.

(q)   The terms "Class 5 Trustee," "Class 5 Trust Advisory Board Member," "representative," "employer" or "agent" as used herein, where applicable, include the heirs, successors, executors, administrators, personal representatives or estates of such Persons or entities.

2.   Authority of and Certain Directions to Class 5 Trustee: Declaration of Trust.

2.1   Creation of Class 5 Trust. Pursuant to Article IX.A of the Plan and the Confirmation Order, and effective as of the Effective Date of the Plan, the Beneficiaries and the Debtors hereby create the Class 5 Trust for the benefit of the Beneficiaries.

2.2   Property in the Class 5 Trust. The Class 5 Trust will hold the legal title to all property at any time constituting a part of the Class 5 Trust Estate and will hold such property in trust to be administered and disposed of by it pursuant to the terms of this Agreement and the Plan for the benefit of the Beneficiaries.  The Class 5 Trustee is authorized to make disbursements and payments from the Class 5 Trust Estate in accordance with the provisions of Sections 5 and 6 of this Agreement and pursuant to the Plan.

2.3   Purpose of Class 5 Trust. This Class 5 Trust is organized for the sole purposes of (a) receiving proceeds in the amount of $10,000,000; (b) distributing the Class 5 Trust Proceeds and (c) filing and prosecuting objections to, or negotiating, settling or otherwise resolving any and all Disputed Claims in Classes 5(a) - (u) in accordance with the objection procedures set forth in the Plan, with no objective to engage in the conduct of a trade or business. In accordance with such express and limited purposes, as of the Effective Date, the Class 5 Trustee is hereby authorized and directed to (w) take any and all steps necessary to maintain the Class 5 Trust as a liquidating trust for federal income tax purposes in accordance with Treasury Regulation Section 301.7701-4(d) and as a "grantor trust" subject to the provisions of Subchapter J of the Internal Revenue Code unless otherwise required; (x) take all reasonable and necessary actions to conserve and protect the Class 5 Trust Estate; (y) commence, administer, compromise, settle or otherwise dispose of, as appropriate, the Class 5 Trust Estate; and (z) distribute the Class 5 Trust Proceeds to the Beneficiaries, in as prompt, efficient and orderly a fashion as possible and in accordance with the Plan and the provisions of Section 6 hereof.  The Class 5 Trust is intended to qualify as a liquidating trust under the Internal Revenue Code and the regulations promulgated thereunder, specifically Treasury Regulation Section 301.7701-4(d), and as such is a "grantor trust" for federal income tax purposes with the Beneficiaries treated as grantors and owners of the Class 5 Trust Estate.  In particular:

(i)   The Class 5 Trust is organized for the primary purpose of liquidating the assets of the Class 5 Trust Estate, with no objective to conduct a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Class 5 Trust.  The Class 5 Trust will not be deemed a successor of the Debtors; and

7

(ii)     The Class 5 Trust provides that the Beneficiaries of the Class 5 Trust will be treated as the grantors of the Class 5 Trust and deemed owners of the assets of the Class 5 Trust Estate.  This Agreement requires the Class 5 Trustee to file returns for the Class 5 Trust as a grantor trust pursuant to Treas. Reg. §1.671-4(a); and

(iii)     This Agreement provides for consistent valuations of the transferred property by the Class 5 Trustee and the Beneficiaries, and those valuations will be used for all federal income tax purposes; and

(iv)     All of the Class 5 Trust's income is to be treated as subject to tax on a current basis to the Beneficiaries who will be responsible for payment of any tax due; and

(v)     This Class 5 Trust contains a fixed or determinable termination date that is not more than five years from the date of creation of the Class 5 Trust and that is reasonable based on all the facts and circumstances; and

(vi)     The investment powers of the Class 5 Trustee, other than those reasonably necessary to maintain the value of the assets of the Class 5 Trust Estate and to further the liquidating purpose of the Class 5 Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills; and

(vii)     The Class 5 Trustee is required to distribute at least once per twelve-month period to the Beneficiaries the Class 5 Trust's net income plus all net proceeds from the sale of the assets of the Class 5 Trust Estate, except that the Class 5 Trustee may retain an amount of net proceeds or net income reasonably necessary to maintain the value of the assets of the Class 5 Trust Estate or to meet claims and contingent liabilities (including Disputed Claims).

3.     <u>Beneficial Interests.</u>

3.1     <u>Creation of Beneficial Interests</u>. Beneficial Interests in the Class 5 Trust will be held by the Beneficiaries as provided in the Plan.  Beneficial Interests in the Class 5 Trust will not be evidenced by any certificate or other instrument or document.  The Beneficial Interests will be uncertificated.

3.2     <u>Sharing of Proceeds</u>. All Beneficial Interests in the Class 5 Trust will rank equally as to priority of Distributions from the Class 5 Trust with respect to the Class 5 Trust Estate and will share ratably in the payment of all Class 5 Trust Expenses; *provided that* in accordance with the Plan, each Non-Newhall Beneficiary will receive its Pro Rata Share of $1,000,000 and each Newhall Beneficiary will receive its Pro Rata Share of $9,000,000.

3.3     No Transfer or Exchange. Beneficial Interests in the Class 5 Trust are non-transferable and non-assignable other than to successors in interest or by will, the laws of descent and Distribution, or by operation of law ("Permitted Transfer").

3.4     Absolute Owners. The Class 5 Trustee may deem and treat the persons who are Beneficiaries (as determined in accordance with the Plan) as the absolute owners of the Beneficial Interests in the Class 5 Trust for the purpose of receiving Distributions and payments thereof or on account thereof and for all other purposes whatsoever. Unless the Class 5 Trustee receives actual written notice of a Permitted Transfer from the duly authorized transferee not less than thirty (30) days prior to a Distribution made pursuant to the terms of this Agreement, and subject to the applicable provisions of Bankruptcy Rule 3001(e), the Class 5 Trustee will have no duty or obligation to make or direct any Distributions or payments to such transferee of a Permitted Transfer.

3.5     Means of Payment. Cash payable to the Beneficiaries pursuant to Section 6 hereof will be paid by checks drawn on an account maintained by the Class 5 Trust.

4.     Delivery and Acceptance of Class 5 Trust Estate.

4.1     Conveyance by Debtors. On the Effective Date, the Class 5 Trust Estate will be transferred to, and fully vest in, the Class 5 Trust, free and clear of all claims, liens, encumbrances and other liabilities, including all Claims and Interests in the Debtors, as further specified in the Plan and the Confirmation Order. At any time and from time to time after the date hereof at the Class 5 Trustee's request and without further consideration, the Debtors or the Reorganized Debtors will execute and deliver such other instruments of sale, transfer, conveyance, assignment and confirmation, and will cooperate and take such other actions as the Class 5 Trustee may deem reasonably necessary or desirable in order to more effectively transfer, convey and assign all rights, title and interests in and to the Class 5 Trust Estate to the Class 5 Trust.

4.2     Acceptance of Conveyance. The Class 5 Trustee is hereby directed to, and the Class 5 Trustee agrees that it will:

(a)     accept delivery from the Debtors of the Class 5 Trust Estate on behalf of the Class 5 Trust;

(b)     take such other action as may be required of the Class 5 Trust hereunder, including the receipt and acceptance as part of the Class 5 Trust Estate of any property or rights, including, without limitation, notes and other negotiable instruments, which the Class 5 Trustee may receive in connection with or in consideration of the Class 5 Trust Estate; and

(c)     comply with all applicable tax reporting and tax payment obligations of a Class 5 Trustee under a trust pursuant to Subchapter J of the Internal Revenue Code and all applicable state and local income tax statutes.

5.     Administration of Class 5 Trust Estate.

9

5.1     Powers of the Class 5 Trustee.    During the Class 5 Trustee's administration of the Class 5 Trust, and subject to all the other provisions of this Agreement and the Plan, the Class 5 Trustee is authorized to perform those acts and has those powers necessary to accomplish the purposes of the Class 5 Trust, without further authorization from the Bankruptcy Court, subject only to oversight by the Class 5 Trust Advisory Board as specifically set forth herein, including the following:

(a)     to receive and hold all assets of the Class 5 Trust Estate and to have exclusive possession and control thereof as permissible under applicable law;

(b)     to enter into, perform and exercise rights under contracts binding upon the Class 5 Trust (but not upon the Class 5 Trustee in its respective individual or corporate capacities) which are reasonably incident to the administration of the Class 5 Trust and which the Class 5 Trustee, in the exercise of its business judgment, reasonably believes to be in the best interests of the Class 5 Trust;

(c)     to establish and maintain accounts at banks and other financial institutions, in a clearly specified fiduciary capacity, into which all cash and property of the Class 5 Trust may be deposited, and draw checks or make withdrawals from such accounts, and to pay or distribute such amounts of the Class 5 Trust Estate as permitted or required under this Agreement;

(d)     to employ attorneys, accountants, appraisers, property managers, brokers, realtors, expert witnesses, insurance adjusters or other persons whose services may be necessary or advisable in the sole judgment of the Class 5 Trustee, to advise or assist it in the discharge of its duties as Class 5 Trustee, or otherwise in the exercise of any powers vested in the Class 5 Trustee, and to pay from the Class 5 Trust Estate reasonable compensation to such attorneys, accountants, appraisers, property managers, brokers, realtors, expert witnesses, insurance adjusters or other persons;

(e)     to pay any and all Class 5 Trust Expenses that are necessary expenses attributable or relating to the management, maintenance, operation, preservation or liquidation of the Class 5 Trust Estate;

(f)     to sue or be sued in connection with any matter arising from or related to the Plan or this Agreement that affects in any way the rights or obligations of the Class 5 Trust, the Class 5 Trustee or the Beneficiaries;

(g)     to represent the interests of the Beneficiaries with respect to any matters relating to this Agreement or the Class 5 Trust affecting the rights of such Beneficiaries;

NY 239664150v3

(h)     to act as representative of the Class 5 Trust Estate and to investigate, initiate, prosecute, settle or compromise any and all objections to Claims in Classes 5(a) - (u);

(i)     to file all applicable tax reports and tax returns and to pay all applicable tax obligations of a liquidating trust agreement; and

(j)     to do any and all other things, not in violation of any other terms of this Agreement, which, in the reasonable business judgment of the Class 5 Trustee, are necessary or appropriate for the proper liquidation, management, investment and Distribution of the assets of the Class 5 Trust Estate in accordance with the provisions of this Agreement and the Plan.

5.2     Prosecution or Settlement of Claim Objections. The Class 5 Trust has the sole power and authority to file and prosecute any claim objections or other legal proceedings challenging any alleged Claims in Classes 5(a) - (u) to the extent not settled or resolved prior to the Effective Date or pursuant to the Plan. The Class 5 Trustee will have the authority to settle any and all objections to Claims in Classes 5(a) - (u) without the need for approval by the Bankruptcy Court; *provided that* such settlements have been approved by a majority of the Class 5 Trust Advisory Board.

5.3     Limitations on Class 5 Trustee: Investments.

5.3.1     No Trade or Business. The Class 5 Trustee will carry out the purposes of the Class 5 Trust and the directions contained herein and will not at any time enter into or engage in any business (except as may be consistent with the limited purposes of the Class 5 Trust), including, without limitation, the purchase of any assets or property (other than such assets or property as are necessary to carry out the purposes of Section 2, Section 7, and Section 5.3.2 hereof), on behalf of the Class 5 Trust or the Beneficiaries. The Class 5 Trustee is directed to take all reasonable and necessary actions to commence legal proceedings to pursue any and all objections to Claims in Classes 5(a) - (u), to make timely Distributions of the Class 5 Trust Proceeds and to otherwise not unduly prolong the duration of the Class 5 Trust.

5.3.2     Investments of Cash. All Cash held by the Class 5 Trust will be invested by the Class 5 Trustee, in consultation with the Class 5 Trust Advisory Board, in only (a) direct obligations of, or obligations guaranteed by, the United States; (b) obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States, as an agency or instrumentality thereof; (c) AAA rated tax-free securities issued by municipalities or state governments or agencies; or (d) such other obligations or instruments as may from time to time be approved for such investments by Final Order of the Bankruptcy Court; *provided, however,* that the Class 5 Trustee may, to the extent it deems necessary, deposit monies in demand deposits (including money market funds) at any commercial bank, trust company or other financial institution organized under the laws of the United States or any state thereof which has, at the time of such deposit, a capital stock and surplus aggregating at least $500,000,000. The investment powers of the Class 5 Trustee will be limited to powers to invest in demand and time deposits, such as short-term certificates of

11

deposit, in banks or other savings institutions, or other temporary, liquid investments such as U.S. Treasury Bills; *provided, however,* that the scope of any such investments will be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS ruling, other IRS pronouncements or otherwise. Such investments will mature in such amounts and at such times as may be deemed necessary by the Class 5 Trustee, in consultation with the Class 5 Trust Advisory Board, to provide funds when needed to make Distributions and payments as required by the Plan.

5.4     Transferee Liabilities. If any liability is asserted against the Class 5 Trust as transferee of the Class 5 Trust Estate on account of any claimed liability of or through the Debtors, except as otherwise provided in the Plan, the Class 5 Trustee may use such part of the Class 5 Trust Estate as may be necessary in contesting any such claimed liability and in payment, compromise, settlement and discharge thereof on terms reasonably satisfactory to the Class 5 Trustee. In no event will the Class 5 Trustee be required or obligated to use its own property, funds or assets for any such purposes.

5.5     Administration of Class 5 Trust. In administering the Class 5 Trust, the Class 5 Trustee, subject to the express limitations contained herein, is authorized and directed to do and perform all such acts, to execute and deliver such deeds, bills of sale, instruments of conveyance, and other documents as it may deem necessary or advisable to carry out the purposes of the Class 5 Trust.

5.6     Payment of U.S. Trustee's Fees. The Class 5 Trust will be liable for the payment of any fees payable to the Office of the United States Trustee on account of Distributions made by the Class 5 Trust.

5.7     Fiscal Year. The Class 5 Trust's fiscal year will end on December 31 of each year, unless the Class 5 Trustee deems it advisable to establish some other date on which the fiscal year of the Class 5 Trust will end.

5.8     Reports. The Class 5 Trustee will prepare, deliver and file, as the case may be, reports as follows:

(a)     Prepare and file unaudited interim financial reports as may be required by regulatory authorities, applicable laws, rules or regulations or as the Class 5 Trustee deems advisable during the fiscal year; and

(b)     Prepare, file and mail, within the time required by applicable law or regulation, necessary income tax information, tax returns or reports to the Beneficiaries and applicable taxing authorities.

5.9     Compensation of the Class 5 Trustee. The Class 5 Trustee will be entitled to receive reasonable compensation for services rendered on behalf of the Class 5 Trust, as approved by the Class 5 Trust Advisory Board. The Class 5 Trust will reimburse the Class 5 Trustee for its actual reasonable out-of-pocket expense including, including, without limitation,

12

necessary travel, lodging, postage, telephone and facsimile charges upon receipt of periodic billings. All compensation and other amounts payable to the Class 5 Trustee will be paid from the Class 5 Trust only.

      5.10   <u>Termination</u>. The duties, responsibilities and powers of the Class 5 Trustee will terminate on the date that the Class 5 Trust is dissolved under applicable law in accordance with this Agreement, the Plan, by an order of the Bankruptcy Court or by entry of a final decree closing the Chapter 11 Cases.

      5.11   <u>No Bond</u>. The Class 5 Trustee will serve without a bond.

      6.   <u>Source of Payments: Distributions To The Beneficiaries</u>.

      6.1   <u>Distributions from Class 5 Trust Estate</u>. All Distributions to be made hereunder to the Beneficiaries will be made only from the assets, income and proceeds of the Class 5 Trust Estate and only to the extent that the Class 5 Trustee has received sufficient assets, income or proceeds of the Class 5 Trust Estate to make such Distributions in accordance with the Plan and the terms of this Section 6. Each Beneficiary will look solely to the assets, income and proceeds of the Class 5 Trust Estate, and not to the Class 5 Trustee in its personal, individual or corporate capacity for Distribution to such Beneficiary as herein provided.

      6.2   <u>Frequency and Amounts of Cash Payments</u>. As often as the Class 5 Trustee in its reasonable discretion and judgment deems appropriate, after consultation with the Class 5 Trust Advisory Board, the Class 5 Trustee will transfer and pay, or cause to be transferred and paid, to the Beneficiaries (subject to the provisions of Section 3 hereof) such aggregate amount of cash, if any, held in the Class 5 Trust, less such amounts as otherwise might be needed to pay the expenses, debts, charges, liabilities and obligations of the Class 5 Trust. The aggregate amounts required to be distributed to the Beneficiaries at various intervals will be determined by the Class 5 Trustee, in consultation with the Class 5 Trust Advisory Board, in accordance with the Plan, and the Class 5 Trustee's determination will be final and conclusive on all persons, in the absence of gross negligence or willful misconduct on the part of the Class 5 Trustee, and will not be reviewed by the Court and, only if funds are available, will be paid at least once per twelve (12) month period commencing with the Effective Date. In determining the amount of any such Distribution, the Class 5 Trustee may rely and will be fully protected in relying upon the advice and opinion of independent public accountants or of counsel to the Class 5 Trustee.

      6.3   <u>Establishment of the Claim Accounts</u>.

    (a)   On the Effective Date of the Plan, the Debtors will make available to the Class 5 Trustee a list of all Beneficiaries, the addresses of all Beneficiaries as of the Effective Date, and the designation of each such Beneficiary as the Holder of an Allowed or Disputed Claim (the "<u>Claims List</u>"). The Class 5 Trustee will be entitled to rely upon the Claims List in calculating and making Distributions from the Class 5 Trust Estate as provided herein; *provided, however,* that the Claims List will be adjusted from time to time by the Class 5 Trustee, as provided in Section 6.3 of this Agreement and will be adjusted based upon updated information from the

13

Class 5 Trustee as to the Holders of any Allowed or Disputed Unsecured Claims. The Class 5 Trustee also will revise the Claims List from time to time upon receipt of notice from a Beneficiary stating that such Beneficial Interest has been transferred according to a Permitted Transfer, that the new holder has complied with any applicable provisions of Bankruptcy Rule 3001(e) (and providing evidence thereof), and setting forth the name and address of such new Beneficiary; *provided, however,* that the Class 5 Trustee will not be required to revise such Claims List during the thirty (30) day period preceding the date of any Distribution made hereunder and in accordance with the Plan. The Class 5 Trustee will establish the revised Claims List that is to be used in conjunction with the Distribution not less than fourteen (14) days prior to the date of such Distribution.

(b)     Upon receipt of or access to the Claims List, the Class 5 Trustee will establish on the Class 5 Trust's books and records an account representing each Allowed Claim or Disputed Claim as set forth on the Claims List (each, a "Claim Account"). It is expressly understood that the establishment of the Claim Accounts by the Class 5 Trustee or its agents is solely for administrative convenience, and that amounts allocable to such Claim Accounts need not be segregated and may be commingled for investment purposes as specified herein.

6.4     Allocation of Distributions from Class 5 Trust Estate. With respect to each Distribution made to the Beneficiaries pursuant to the terms of this Agreement and the Plan, the Class 5 Trustee will allocate to each Claim Account a Pro Rata Share of the Distribution and will reallocate to each Claim Account Pro Rata Shares of such Distribution previously allocated to any Claim Account on account of a Claim or portion thereof which has been Disallowed as provided in the Plan, in each case by multiplying the total amount of such Distribution by a fraction, the numerator of which is the amount of such Claim Account and the denominator of which is the total amount of Allowed and Disputed Claims as set forth on the Claims List (after reducing by the amount disallowed the amount of each Claim Account from which amounts have been disallowed). With respect to each Distribution made pursuant hereto, the Class 5 Trustee will distribute specified amounts to the Beneficiaries in accordance with the allocations determined in accordance with this Section 6.4, Section 3.2 and the Plan. Allocations of the Distribution relating to Disputed Claims will be retained in the Class 5 Trust by the Class 5 Trustee as part of the Class 5 Trust Estate pending resolution of the Disputed Claims and further Distributions as provided for herein.

6.5     Distributions of Property Allocated to Disputed Claims. At such time as the Debtors or the Class 5 Trustee, as applicable, compromise, settle or resolve all or any portion of a Disputed Claim, by Final Order or otherwise (a "Resolved Claim"), the Class 5 Trustee will take the following actions with regard to the Distribution allocated to the Claim Account established for that Resolved Claim (the "Disputed Claim Distribution Amount"): (a) distribute to the holder of the Resolved Claim that portion of the Disputed Claim Distribution Amount to which the Holder of the Resolved Claim is entitled, if any, based upon the Allowed Amount; and (b) reallocate to all other Claim Accounts, pursuant to this Section 6.5, that portion of the Disputed Claim Distribution Amount to which the Holder of the Resolved Claim is no longer entitled, if any. Upon the final resolution of any Disputed Claim and the subsequent Distribution or reallocation of the Disputed Claim Distribution Amount as herein provided, the

Class 5 Trustee will adjust the Claims List to reflect the actions taken pursuant to this Section 6.5.

### 6.6 Unclaimed Property

6.6.1 <u>Escrow of Unclaimed Property</u>. The Class 5 Trustee (or, at the option of the Class 5 Trustee, the Distribution Agent) will hold any proceeds of the Creditor Class 5 Trust constituting Unclaimed Property (and all interest, dividends, and other Distributions thereon) for the benefit of the Holders of Claims entitled thereto under the terms of this Agreement and the Plan. If any Distribution to any Holder is returned to the Class 5 Trustee as undeliverable, no further Distributions will be made to such Holder. All entities or Persons receiving undeliverable Cash will not be entitled to any interest or other accruals of any kind. Nothing contained in this Agreement or the Plan will require the Class 5 Trust, the Class 5 Trustee or the Class 5 Trust Advisory Board to attempt to locate any Holder of an Allowed Claim.

6.6.2 <u>Distribution of Unclaimed Property</u>. At the end of one hundred and twenty (120) days following the date that any Cash or other property becomes Unclaimed Property, the Holder of the Allowed Claim theretofore entitled to such Unclaimed Property held pursuant to this Section 6.6 will be deemed to have forfeited such property, whereupon all right, title and interest in and to such property will be available for Distribution to all other Holders of Allowed Claims and whereupon such Holder will be forever barred from asserting any such Claim against the Class 5 Trust, the Class 5 Trustee or the Class 5 Trust Advisory Board unless the Holder of an Allowed Claim entitled to Unclaimed Property makes a request in writing to the Distribution Agent for such property (which request must set forth the Distribution Address for such Holder) prior to the expiration of such period. If no such notice is received, any consideration held for Distribution on account of such Allowed Claim will revert to the Class 5 Trust for the benefit of the other Beneficiaries in accordance with this Agreement and the Plan.

6.6.3 <u>Time Bar to Cash Payments</u>. Checks issued by the Class 5 Trust on account of Allowed Claims will be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. Requests for reissuance of any check must be made directly to the Class 5 Trustee by the Holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check must be made within one hundred and twenty (120) days from and after the date of issuance of such check. After such date, all Claims in respect of voided checks will be discharged and forever barred and the Class 5 Trust will retain all monies related thereto for the benefit of the other Beneficiaries of the Class 5 Trust in accordance with this Agreement and the Plan.

### 6.7 Fractional Distributions. 
The Class 5 Trustee will not be required to make any Distribution in an amount of less than $25.00 unless a request therefor is made in writing to the Distribution Agent. If no request is made as provided in the preceding sentence, all such Distributions will be treated as Unclaimed Property pursuant to the Plan. Whenever any payment of a fraction of a dollar by the Reorganized Debtors under the Plan would be required,

NY 239664150v3

the actual payment or Distribution will reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

6.8    Final Distribution. Upon the final collection of all of the assets, rights and interests comprising the Class 5 Trust Estate, and in any event prior to the dissolution (as provided for in Section 6.9 hereof), the Class 5 Trustee will prepare a final accounting of any and all monies remaining in any accounts maintained by the Class 5 Trustee on behalf of the Class 5 Trust, or otherwise remaining in the Class 5 Trust Estate (the "Final Cash"). Once the amount of the Final Cash has been determined, the Class 5 Trustee will deduct and pay from the Final Cash any and all remaining permitted costs, expenses and liabilities of the Class 5 Trust. The Class 5 Trustee will then allocate pro rata to the Claim Account of each Beneficiary the net remaining amount of Final Cash (the "Final Distribution"), and the Class 5 Trustee will distribute the Final Distribution to the Beneficiaries. To the extent that there are any remaining monies, such monies will be donated to a charity selected by the Class 5 Trustee, after consultation with the Class 5 Trust Advisory Board.

6.9    Dissolution of the Class 5 Trust. The Class 5 Trust will terminate five (5) years after the Effective Date, with the ability to extend the term upon the discretion of the Class 5 Trustee, after consultation with the Class 5 Trust Advisory Board and entry of an order of the Bankruptcy Court; provided, however, within six (6) months prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Class 5 Trust for a finite period if it is necessary to the liquidating purpose thereof. Multiple extensions may be obtained so long as Bankruptcy Court approval is obtained within six (6) months prior to the expiration of such extended term; provided, however, that, prior to requesting any such extension, the Class 5 Trustee must receive an opinion of counsel or a favorable ruling from the IRS that any further extension would not adversely affect the status of the trust as a grantor trust for federal income tax purposes. Upon termination of the Class 5 Trust, all Beneficial Interests in the Class 5 Trust will be extinguished, the legal existence of the Class 5 Trust will terminate, and all assets (if any) held by the Class 5 Trust on such date will vest in the Reorganized Debtors free and clear of all claims, liens, encumbrances and other liabilities, in each case without further action of the Bankruptcy Court or any other court, administrative body or other agency. The Class 5 Trustee may cause to be filed with any applicable governmental or other regulatory authority such certificate of dissolution or cancellation and any other certificates and documents as the Class 5 Trustee, after consultation with the Class 5 Trust Advisory Board, deems necessary to reflect the termination of the legal existence of the Class 5 Trust, and may take any other action it deems necessary or desirable to reflect the transfer of all assets (if any) held by the Class 5 Trust upon termination to the Reorganized Debtors.

6.10    Class 5 Trust Expenses. All Class 5 Trust Expenses will be charged against and paid from the Class 5 Trust Proceeds, as appropriate. The Class 5 Trustee will pay such Class 5 Trust Expenses as and when due and payable. Counsel and any other professionals retained by the Class 5 Trustee, Class 5 Trust Advisory Board or Class 5 Trust will submit periodic statements for services rendered and costs incurred to the Class 5 Trustee and the Class 5 Trust Advisory Board for review and approval. The Class 5 Trustee or Class 5 Trust Advisory Board (based on a vote of the majority of the Class 5 Trust Advisory Board) will have thirty (30) days to object to any such statement. In the event that such objection is received by

16

the relevant professional and cannot be promptly resolved by such professional and the Class 5 Trustee or the Class 5 Trust Advisory Board, as applicable, the dispute will be submitted by the Class 5 Trustee or Class 5 Trust Advisory Board, as applicable, to the Bankruptcy Court for adjudication. The Bankruptcy Court will retain jurisdiction to adjudicate any such objection. In the event that no objection is raised to a statement within the thirty (30) day period, such statement will be promptly paid by the Class 5 Trustee, in accordance with this Agreement and the Plan.

7.      Other Duties of the Class 5 Trustee.

7.1      Management of Class 5 Trust Estate. With respect to the assets of the Class 5 Trust Estate, the Class 5 Trustee may, if sufficient funds are available, purchase and maintain in existence such insurance as the Class 5 Trustee deems reasonable and necessary or appropriate from time to time to protect the Class 5 Trust, the Class 5 Trustee, the Class 5 Trust Advisory Board and the Beneficial Interests in the assets of the Class 5 Trust Estate from any potential claims or liabilities relating thereto or the Distribution thereof.

7.2      No Implied Duties. The Class 5 Trustee will not manage, control, use, sell, dispose, collect or otherwise deal with the Class 5 Trust Estate or otherwise take any action hereunder except as expressly provided herein, and no implied duties or obligations whatsoever of the Class 5 Trustee will be read into this Agreement.

8.      Concerning the Class 5 Trustee.

8.1      Acceptance by Class 5 Trustee. The Class 5 Trustee accepts the Class 5 Trust hereby created for the benefit of the Beneficiaries and agrees to act as Class 5 Trustee of the Class 5 Trust pursuant to the terms of this Agreement. The Class 5 Trustee will have and exercise the rights and powers herein granted and will be charged solely with the performance of the duties herein declared on the part of the Class 5 Trustee. The Class 5 Trustee also agrees to receive and disburse all monies actually received by him constituting part of the Class 5 Trust Estate pursuant to the terms of this Agreement and the Plan.

8.2      Discretionary Submission of Questions. Subject to the provisions of this Section 8, the Class 5 Trustee, in its sole discretion and reasonable business judgment, may, but is not required to, submit to the Court, from time to time, any question or questions with respect to which the Class 5 Trustee may desire to have explicit approval of the Court for the taking of any specific action proposed to be taken by the Class 5 Trustee with respect to the Class 5 Trust Estate, or any part thereof and the administration and Distribution of the Class 5 Trust Estate. The written authorization of the Court set forth in a Final Order will constitute approval by the court of the proposed action to be taken by the Class 5 Trustee. All costs and expenses incurred by the Class 5 Trustee in the exercise of any right, power, or authority conferred by this Section 8.2 will be costs and reasonable expenses of the Class 5 Trust Estate.

8.3      Resignation of Class 5 Trustee.

8.3.1 <u>Resignation</u>. The Class 5 Trustee may resign and be discharged from any future obligations and liabilities hereunder by giving written notice thereof to the Court and the Class 5 Trust Advisory Board at least thirty (30) days prior to the effective date of such resignation. Such resignation will become effective on the day specified in such notice.

8.3.2 <u>Appointment of a Successor Class 5 Trustee</u>. If, at any time, the Class 5 Trustee gives notice of its intent to resign pursuant to Section 8.3.1 hereof or becomes incapable of acting, the Class 5 Trust Advisory Board will chose a successor Class 5 Trustee to act under this Agreement and will give notice thereof to the Court.

8.4 <u>Acceptance of Appointment by Successor Class 5 Trustee</u>. Any successor Class 5 Trustee appointed hereunder will execute an instrument accepting such appointment hereunder in the form determined by the Class 5 Trust Advisory Board and will deliver counterparts thereof to the Court. Thereupon, such successor Class 5 Trustee will, without any further act, become vested with all of the rights, powers and duties of its predecessor hereunder with like effect as if originally named herein.

9. <u>Class 5 Trust Advisory Board</u>.

9.1 <u>Role of the Class 5 Trust Advisory Board</u>

(a) The Class 5 Trust Advisory Board will be responsible for overseeing the Class 5 Trustee's administration of the Class 5 Trust in compliance with the Plan and this Agreement, subject to the terms of this Agreement and the Plan and bylaws of the Class 5 Trust Advisory Board.

(b) The Class 5 Trust Advisory Board may retain professionals as necessary, in accordance with this Agreement.

(c) The Class 5 Trust Advisory Board has authority to engage in any and all conduct not specifically delineated within this Agreement that is reasonable and necessary to the operation and administration of the Class 5 Trust (the "<u>Residual Authority</u>"). The Class 5 Trust Advisory Board hereby specifically delegates such Residual Authority to the Class 5 Trustee.

9.2 <u>Class 5 Trust Advisory Board Members</u>

(a) The members of the Class 5 Trust Advisory Board (the "<u>Class 5 Trust Advisory Board Members</u>" and each such, a "<u>Class 5 Trust Advisory Board Member</u>") will be three (3) members appointed by the Committee.

(b) The initial Class 5 Trust Advisory Board Members designated by the Committee are Jeff Myers (Oakridge Landscape, Inc.), John Burgeson (John Burgeson Contractors) and Jim Frankian (R.T. Frankian & Associates).

NY 239664150v3

(c)     If, for any reason, any Class 5 Trust Advisory Board Members designated by the Committee ceases to be a Class 5 Trust Advisory Board Member, such designee, if available, may appoint a successor to fill the vacancy. Otherwise, the remaining Class 5 Trust Advisory Board Members designated by the Committee may appoint a successor to fill the vacancy. If no such replacement Class 5 Trust Advisory Board Member is appointed, the Class 5 Trustee will appoint a Person to fill the vacancy.

9.3     <u>Duties of the Class 5 Trust Advisory Board</u>. The Class 5 Trust Advisory Board will:

(a)     receive and review the reports of the Class 5 Trustee and consult with the Class 5 Trustee on any matters related to the Class 5 Trust, as requested by the Class 5 Trustee;

(b)     review and approve, in accordance with their reasonable business judgment:

(i)     the budget for the Class 5 Trust and any proposed changes, thereto;

(ii)    any amendment of this Agreement;

(iii)   any post-hoc ratification of the Class 5 Trustee's action;

(iv)    the selection of a successor Class 5 Trustee, in the event the Class 5 Trustee is removed, resigns or is otherwise incapacitated; and

(v)     the initiation or settlement of any litigation involving more than $1,000,000 in settlement amount.

9.4     <u>Class 5 Trust Advisory Board Bylaws</u>. The Class 5 Trust Advisory Board will adopt its own bylaws within thirty (30) days after the Effective Date; *provided, however,* that such bylaws will contain provisions consistent with this Agreement and the Plan.

9.5     <u>Board Voting Requirements</u>

9.5.1   <u>Majority Vote Requirement</u>

The Class 5 Trust Advisory Board will be deemed to have consented to a proposed action or inaction if two (2) of the three (3) Class 5 Trust Advisory Board Members have not objected to such action or inaction after being provided with the following notice: (a) ten (10) days notice of such action or inaction by facsimile, electronic mail or overnight delivery (plus three (3) days delivery if such notice is made by regular mail); or (b) three (3) business days telephonic notice of such action or inaction (if the Class 5 Trustee, in its discretion, believes that telephonic notice is appropriate under the circumstances). With respect to any matter directly or indirectly involving any Class 5 Trust Advisory Board Member(s), such Class 5 Trust Advisory

Board Member(s) will (a) recuse himself or herself from any decision regarding such matter and (b) in the event of a tie vote among the remaining Class 5 Trust Advisory Board Members, the Class 5 Trustee will cast the deciding vote with regard to the matter for which the Class 5 Trust Advisory Board Member has recused himself or herself. The Class 5 Trust Advisory Board may take any action authorized by the Plan or this Agreement upon the affirmative vote of any two (2) Class 5 Trust Advisory Board Members.

### 9.5.2   Unanimous Vote Requirement

"Unanimous Vote" means the affirmative vote of all Class 5 Trust Advisory Board Members at the time of any such vote. The following actions will require the Unanimous Vote of the Class 5 Trust Advisory Board:

    (a)     Any request to the Bankruptcy Court to remove the Class 5 Trustee;

    (b)     The selection of a successor Class 5 Trustee, in the event the Class 5 Trustee is removed, resigns, or is otherwise incapacitated; and

    (c)     The amendment of this Agreement.

9.6   Reporting. The Class 5 Trust Advisory Board will (a) receive from the Class 5 Trustee such reports, as it deems reasonable, but in no event less frequently than every three (3) months, and (b) conduct regular conferences, whether in person or telephonically, with the Class 5 Trustee no less than once per thirty (30) day period unless otherwise agreed.

9.7   Retention and Compensation of Professionals. Subject to the provisions of this Agreement, the Class 5 Trust Advisory Board may retain professionals. The Class 5 Trustee may commit the Class 5 Trust Estate to, and the Class 5 Trust Estate will, pay such professionals reasonable compensation for services rendered thereto and reasonable expenses incurred therefor.

9.8   Reimbursement. The Class 5 Trust Estate will reimburse the Class 5 Trust Advisory Board Members and their professionals for the actual reasonable out-of-pocket expenses incurred by them, including, without limitation, necessary travel, lodging, postage, telephone and facsimile charges upon receipt of periodic billings.

### 10.   Liability of Class 5 Trustee and Class 5 Trust Advisory Board.

10.1   No Recourse and Limitation on Liability. No recourse will ever be had, directly or indirectly, against the Class 5 Trustee, the Class 5 Trust Advisory Board, or, as applicable, their respective members, officers, directors, employees, professionals, representatives, agents, successors, heirs or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Class 5 Trust, the Class 5 Trustee or the Class 5 Trust Advisory Board under this Agreement, the Plan or by reason of the creation of any indebtedness by the Class 5 Trust, the Class 5 Trustee or the Class 5 Trust Advisory Board under this Agreement or the Plan for any

purpose authorized by this Agreement or the Plan. All such liabilities, covenants, and agreements of the Class 5 Trust, the Class 5 Trustee, the Class 5 Trust Advisory Board, as applicable, their respective members, officers, directors, professionals, employees, representatives, agents, successors, heirs or assigns, whether in writing or otherwise, under this Agreement or the Plan will be enforceable only against, and will be satisfied only out of, the assets of the Class 5 Trust or such part thereof as will, under the terms of any such agreement, be liable therefor, or will be evidence only of a right of payment out of the income and proceeds of the assets of the Class 5 Trust, as the case may be. Every undertaking, contract, covenant or agreement entered into in writing by the Class 5 Trust, the Class 5 Trustee or the Class 5 Trust Advisory Board will provide expressly against the personal liability of the Class 5 Trustee or the Class 5 Trust Advisory Board, including each of its members.

The Class 5 Trust, the Class 5 Trustee, the Class 5 Trust Advisory Board and, as applicable, their respective members, officers, directors, employees, professionals, representatives, agents, successors, heirs or assigns will not be liable for any act they may do, or omit to do hereunder in good faith and in the exercise of their respective business judgment, and the fact that such act or omission was advised, directed or approved by an attorney or other professional acting as advisor to the Class 5 Trust, the Class 5 Trustee or the Class 5 Trust Advisory Board will be conclusive evidence of such good faith business judgment; *provided, however,* that this Section 10.1 will not apply to any gross negligence or willful misconduct by the Class 5 Trust, the Class 5 Trustee, the Class 5 Trust Advisory Board or, as applicable, their respective members, officers, directors, employees, professionals, representatives, agents, successors, heirs or assigns.

10.2 <u>Discretion of Class 5 Trustee and Class 5 Trust Advisory Board</u>. The Class 5 Trustee and the Class 5 Trust Advisory Board, subject to any limitations and restrictions expressed and imposed by this Agreement and the Plan, may act freely under all or any of the rights, powers and authority conferred hereby, in all matters concerning the Class 5 Trust Estate, after forming their reasonable business judgment based upon the circumstances of any particular question or situation as to the best course to pursue, without the necessity of obtaining the consent or permission or authorization of the Beneficiaries, the Debtors, the Reorganized Debtors, the Court, or of any official or officer (other than the Class 5 Trust Advisory Board as required hereunder with respect to certain actions to be undertaken by the Class 5 Trustee); and the rights, powers and authority conferred on the Class 5 Trustee and the Class 5 Trust Advisory Board by this Agreement are conferred in contemplation of such freedom of reasonable business judgment and action within the limitations and restrictions so expressed and imposed; *provided, however,* that the Class 5 Trustee and Class 5 Trust Advisory Board will not be liable for any error or exercise of judgment, unless it is proved that such Class 5 Trustee and Class 5 Trust Advisory Board was grossly negligent or acted in a manner which constituted willful misconduct.

10.3 <u>Reliance by Class 5 Trustee, Class 5 Trust and Class 5 Trust Advisory Board.</u>

10.3.1 <u>Reliance on Documents</u>. The Class 5 Trust, the Class 5 Trustee and the Class 5 Trust Advisory Board may rely, and will be protected in acting or

refraining from acting, upon any certificates, opinions, statements, instruments or reports believed by it to be genuine and to have been signed or presented by the proper Person or Persons.

10.3.2 <u>Retention of Professionals</u>. The Class 5 Trustee or the Class 5 Trust Advisory Board may consult with legal counsel and with independent public accountants and other experts. The Class 5 Trustee and the Class 5 Trust Advisory Board will not be liable for any action taken or suffered by it or omitted to be taken by it without gross negligence or willful misconduct in reliance on any opinion or certification of such accountants or other professional or in accordance with the advice of such counsel or experts, *provided that* such accountants, counsel and experts were selected and retained with reasonable care.

10.3.3 <u>Reliance on Class 5 Trustee and Class 5 Trust Advisory Board</u>. No Person dealing with the Class 5 Trustee or the Class 5 Trust Advisory Board will be obligated to see to the application of any monies, securities, or other property paid or delivered to them or to inquire into the expediency or propriety of any transaction or the right, power, or authority of the Class 5 Trustee or Class 5 Trust Advisory Board to enter into or consummate the same upon such terms as the Class 5 Trustee or Class 5 Trust Advisory Board may deem advisable. Persons dealing with the Class 5 Trustee or Class 5 Trust Advisory Board can only look to the Class 5 Trust Estate to satisfy any liability incurred by the Class 5 Trustee or Class 5 Trust Advisory Board to such persons in carrying out the terms of this Agreement, and, except as otherwise expressly provided herein, the Class 5 Trustee and the members of the Class 5 Trust Advisory Board will have no personal, individual or corporate obligation to satisfy any such liability.

10.4 <u>Exculpation; Indemnification.</u>

10.4.1 <u>Exculpation</u>. From and after the Effective Date, the Class 5 Trustee, the Class 5 Trust Advisory Board and, as applicable, their respective directors, officers, members, employees, attorneys, accountants, professionals, representatives, agents, successors, heirs and assigns will be and hereby are exculpated by all Persons and Entities, including without limitation, Holders of Claims and other parties in interest, from any and all Claims, Causes of Action and other assertions of liability arising out of the discharge of the powers and duties conferred upon such parties pursuant to or in furtherance of this Agreement, the Plan, any order of the Bankruptcy Court, applicable law or otherwise, except only for actions taken or not taken, from and after the Effective Date only to the extent determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct or fraud.

No Holder of a Claim or other party-in-interest will have or be permitted to pursue any Claim or Cause of Action against the Class 5 Trustee, the Class 5 Trust Advisory Board or, as applicable, their respective directors, officers, members, employees, attorneys, accountants, professionals, representatives, agents, successors, heirs or assigns for making payments in accordance with this Agreement or the Plan or for implementing the provisions of this Agreement or the Plan. Any act taken or not taken, in the case of the Class 5 Trust Advisory Board, with the approval of the Bankruptcy Court or, in the case of the Class 5

NY 239664150v3

Trustee, with the approval of the Class 5 Trust Advisory Board, will be conclusively deemed not to constitute gross negligence or willful misconduct.

10.4.2 <u>Indemnification of Class 5 Trustee, Class 5 Trust Advisory Board and Agents</u>. The Class 5 Trust hereby indemnifies to the full extent of the Class 5 Trust Estate any Person or entity who was or is a party, or is threatened to be made a party to any threatened, pending, or completed action, suit or proceeding, whether civil, criminal, administrative or investigative by reason of the fact that such person or entity is or was the Class 5 Trustee, the Class 5 Trust Advisory Board or any member, director, officer, employee, member, representative, attorney, accountant, professional, agent, successor, heir or assign, as applicable, of the Class 5 Trustee or Class 5 Trust Advisory Board, from and against any and all expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such Person or entity in connection with such action, suit or proceeding, including appeals thereof if such Person or entity acted without gross negligence and willful misconduct in the exercise and performance of any power or duties of such Person or entity in accordance with this Agreement.

10.4.3 <u>Payment of Expenses</u>. Expenses (including attorneys' fees) incurred in defending any action, suit or proceeding referred to in Section 10.4 may be paid by the Class 5 Trust in advance of the final disposition of such action, suit or proceeding, upon an undertaking by the Class 5 Trustee, Class 5 Trust Advisory Board or any officer, director, employee, member, representative, attorney, accountant, professional, agent, successor, heir or assign of the Class 5 Trustee or Class 5 Trust Advisory Board to repay such amount if it is ultimately determined that the Class 5 Trustee, Class 5 Trust Advisory Board or such Person or entity is not entitled to be indemnified.

10.4.4 <u>Insurance</u>. The Class 5 Trust may maintain insurance during its existence and after its termination, at its expense, to protect itself and the Class 5 Trustee, the Class 5 Trust Advisory Board and their respective directors, officers, employees, members, attorneys, accountant, professional, representatives, agents, successors, heirs or assigns of and from any liability, whether or not the Class 5 Trust would have the legal power to directly indemnify the Class 5 Trustee, the Class 5 Trust Advisory Board or their respective directors, officers, members, employees, attorneys, accountants, professionals, representatives, agents, successors, heirs or assigns of the Class 5 Trust against such liability.

11. <u>Miscellaneous.</u>

11.1 <u>Title to Trust Estate</u>. No Beneficiary will have title to any part of the Class 5 Trust Estate.

11.2 <u>Notices</u>. Unless otherwise expressly specified or permitted by the terms of the Plan or this Agreement, all notices will be in writing and delivered by registered or certified mail, return receipt requested, by hand delivery, by facsimile transmission (and confirmed by mail) or by electronic mail, in any such case addressed as follows:

If to the Class 5 Trustee:        [_____]

If to the Debtors:
[ _____ ]
[ _____ ]
[ _____ ]
[ _____ ]
[ _____ ]
[ _____ ]

[ _____ ]

If to the Class 5 Trust Advisory Board:
[ _____ ]
[ _____ ]
[ _____ ]

[ _____ ]

and if to any Beneficiary, addressed to its latest mailing address reflected on the Claims List.

11.3    Severability. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction will, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof and any such prohibition or unenforceability in any jurisdiction will not invalidate or render unenforceable such provision in any other jurisdiction.

11.4    Counterparts. This Agreement may be executed in multiple counterparts, each of which will constitute an original, but all of which together will constitute one and the same instrument.  Signature pages may be delivered via facsimile or electronic mail ("pdf" copy) and such signature pages will be deemed original signature pages.

11.5    Binding Agreement. All covenants and agreements contained herein will be binding upon, and inure to the benefit of the Class 5 Trustee and its respective successors and assigns and any successor Class 5 Trustee provided for in Sections 8.3.2 and 8.4, its respective successors and assigns, and the Beneficiaries, and their respective personal representatives, successors and assigns.  Any request, notice, direction, consent, waiver or other instrument or action by any party hereto or any Beneficiary will bind their respective heirs, personal representatives, successors and assigns.

11.6    No Personal Liability of Beneficiaries. The Beneficiaries will not incur any personal liability through their ownership or possession of their Beneficial Interests, except for taxes imposed on the Beneficiaries pursuant to applicable provisions of federal, state or local law with respect to the receipt of such Beneficial Interests or Distributions from or transactions of the Class 5 Trust and other charges specified herein.  Liabilities of the Class 5 Trust are to be satisfied in all events (including the exhaustion of the Class 5 Trust Estate) exclusively from the Class 5 Trust Estate and such liabilities are not to attach to or be paid from any amounts distributed to the Beneficiaries, regardless of the time at which such Distribution took place, or from the assets of the Beneficiaries.

NY 239664150v3

11.7    Headings. The headings of the various Sections herein are for convenience of reference only and will not define or limit any of the terms or provisions hereof.

11.8    Construction. Except where the context otherwise requires, words importing the masculine gender will include the feminine and the neuter, if appropriate; words importing the singular number will include the plural number and *vice versa*; and words importing persons will include partnerships, associations, and corporations.

11.9    Governing Law. This Agreement, including all matters of construction, validity and performance hereof will in all respects be governed by, and construed and interpreted in accordance with the internal laws of the State of Delaware.

11.10    Construction with the Plan. The Plan is hereby incorporated fully by reference and is made a part hereof for all purposes. In the event of any inconsistency or conflict between the terms, conditions, definitions and provisions of this Agreement and the terms, conditions and provisions of the Plan, the terms, conditions, definitions and provisions of the Plan will control.

11.11    Subject to Court's Jurisdiction. The Court will retain jurisdiction over this Class 5 Trust, the Class 5 Trust Estate, the Class 5 Trustee, the Class 5 Trust Advisory Board and the Debtors to issue any and all orders and to take other actions necessary to the implementation of this Agreement, such jurisdiction to include, without limitation, the jurisdiction contemplated by Section 1142 of the Bankruptcy Code.

11.12    Intention of the Parties. The Debtors, the Beneficiaries and the Class 5 Trustee hereby express their intent to create and maintain the Class 5 Trust as a liquidating trust for federal income tax purposes in accordance with Treasury Regulation Section 301.7701-4(d) and as a "grantor trust" subject to the provisions of Subchapter J of the Internal Revenue Code, and the Class 5 Trustee further represents that the Class 5 Trust will not: (a) receive any assets of a going business; (b) receive and will not retain cash in excess of a reasonable amount to meet claims and contingent liabilities, determined in the reasonable discretion of the Class 5 Trustee, after consultation with the Class 5 Trust Advisory Board, in accordance with the provisions of Sections 5 and 6 hereof, and (c) receive general or limited partnership interests or the unlisted stock of any single issuer that represents 80 percent or more of the stock of such issuer.

11.13    Valuation of Assets. As soon as practicable after the Effective Date, the Class 5 Trust (to the extent that the Class 5 Trustee deems it necessary or appropriate in its sole discretion) will conduct a good faith valuation of the assets of the Class 5 Trust Estate, and will make such valuation available to the Beneficiaries upon request. The valuation will be used consistently by all parties for all federal income tax purposes.

11.14    Requirement of Undertaking. The Class 5 Trust, the Class 5 Trustee or the Class 5 Trust Advisory Board may request any court of competent jurisdiction to require, and any such court may in its discretion require, in any suit for the enforcement of any right or remedy under this Plan, or in any suit against the Class 5 Trust, the Class 5 Trustee or the

Class 5 Trust Advisory Board for any act taken or omitted by the Class 5 Trust, the Class 5 Trustee or the Class 5 Trust Advisory Board, that the filing party litigant in such suit undertake to pay the costs of such suit, and such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant.

11.15 <u>Books and Records</u>. The Class 5 Trustee will maintain, with respect to the Class 5 Trust and the Beneficiaries, books and records relating to the assets and income of the Class 5 Trust and the payment of expenses of and liabilities of, claims against or assumed by the Class 5 Trust in such detail and for such period of time as the Class 5 Trustee determines, in its sole discretion, may be necessary to make a full and proper accounting in respect thereof in accordance with this Agreement and to comply with applicable law. Except as otherwise provided herein or in the Plan, nothing in this Agreement required the Class 5 Trust, the Class 5 Trustee or the Class 5 Trust Advisory Board to file any accounting or seek approval of any court with respect to the administration of the Class 5 Trust, or as a condition for making any payment or Distribution out of the Class 5 Trust. Subject to all applicable privileges, Beneficiaries will have the right, in addition to any other rights they may have pursuant to this Agreement, under the Plan or otherwise, upon twenty (20) days' prior written notice delivered to the Class 5 Trustee, to request a reasonable inspection (as determine by the Class 5 Trustee) of such books and records, *provided that,* if so requested, such Beneficiary will have entered into a confidentiality agreement satisfactory in form and substance to the Class 5 Trustee and make such other arrangements as requested by the Class 5 Trustee.

26

IN WITNESS WHEREOF, the parties have executed to have hereunto caused this Agreement to be duly executed, as of the day and year first written above.

**CALIFORNIA LAND COMPANY**

By: _____
Name: _____
Title: _____


**FRIENDSWOOD DEVELOPMENT COMPANY, LLC**

By: _____
Name: _____
Title: _____

**KINGS WOOD DEVELOPMENT, L.C.**

By: _____
Name: _____
Title: _____

**LANDSOURCE COMMUNITIES DEVELOPMENT LLC**

By: _____
Name: _____
Title: _____

27

**LANDSOURCE COMMUNITIES DEVELOPMENT SUB LLC**

By: _____
Name:_____
Title:_____


**LANDSOURCE HOLDING COMPANY, LLC**

By: _____
Name:_____
Title:_____

**LENNAR BRESSI RANCH VENTURE, LLC**

By: _____
Name:_____
Title:_____

**LENNAR LAND PARTNERS II**

By: _____
Name:_____
Title:_____

**LENNAR MARE ISLAND, LLC**

By: _____
Name:_____
Title:_____

**LENNAR MOORPARK, LLC**

By: _____
Name:_____
Title:_____

**LENNAR STEVENSON HOLDINGS, L.L.C.**

By: _____
Name:_____
Title:_____

**LNR-LENNAR WASHINGTON SQUARE, LLC**

By: _____
Name:_____
Title:_____

**LSC ASSOCIATES, LLC**

By: _____
Name:_____
Title:_____

**NWHL GP LLC**

By: _____
Name:_____
Title:_____

NY 239664150v3

**THE NEWHALL LAND AND FARMING COMPANY (a California Limited Partnership)**

By: _____
Name:_____
Title:_____

**THE NEWHALL LAND AND FARMING COMPANY**

By: _____
Name:_____
Title:_____

**SOUTHWEST COMMUNITIES DEVELOPMENT LLC**

By: _____
Name:_____
Title:_____

**STEVENSON RANCH VENTURE LLC**

By: _____
Name:_____
Title:_____

**TOURNAMENT PLAYERS CLUB AT VALENCIA, LLC**

By: _____
Name:_____
Title:_____

NY 239664150v3

**VALENCIA CORPORATION**

By: _____

Name: _____

Title: _____

**VALENCIA REALTY COMPANY**

By: _____

Name: _____

Title: _____

**LITIGATION TRUSTEE:**

By: _____

Name: _____

Title: _____

**Exhibit 24**

**Creditor Litigation Trust Agreement**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-------------------------------------------------------------------x
|  | : |  |
| *In re* | : | Chapter 11 |
|  | : |  |
| LANDSOURCE COMMUNITIES | : | Case No. 08-11111 (KJC) |
| DEVELOPMENT LLC, *et al.*,[1] | : |  |
|  | : | (Jointly Administered) |
| Debtors. | : |  |
-------------------------------------------------------------------x

---

## CREDITOR LITIGATION TRUST AGREEMENT
## (FOR CLASSES 3(A) - (U), 4(A) - (U) AND 5(A) - (U) / AVOIDANCE ACTIONS AND
## APPRAISER CAUSES OF ACTION ONLY)

### Dated: _____, 2009

---

[1] The Debtors are as follows: California Land Company; Friendswood Development Company LLC; Kings Wood Development Company, L.C.; LandSource Communities Development LLC; LandSource Communities Development Sub LLC; LandSource Holding Company, LLC; Lennar Bressi Ranch Venture, LLC; Lennar Land Partners II; Lennar Mare Island, LLC; Lennar Moorpark, LLC; Lennar Stevenson Holdings, L.L.C.; LNR-Lennar Washington Square, LLC; LSC Associates, LLC; NWHL GP LLC; The Newhall Land and Farming Company (A California Limited Partnership); The Newhall Land and Farming Company; Southwest Communities Development LLC; Stevenson Ranch Venture LLC; Tournament Players Club at Valencia, LLC; Valencia Corporation; and Valencia Realty Company.

# TABLE OF CONTENTS

1. Definitions: ........................................................................................................... 5
   1.1 Terms Defined Above ...................................................................................... 5
   1.2 Additional Defined Terms .............................................................................. 5
2. Authority of and Certain Directions to Litigation Trustee .......................... 7
   2.1 Creation of Creditor Litigation Trust ............................................................ 7
   2.2 Property in the Creditor Litigation Trust ...................................................... 7
   2.3 Purpose of Creditor Litigation Trust ............................................................. 7
3. Beneficial Interests. ............................................................................................ 9
   3.1 Creation of Beneficial Interests .................................................................... 9
   3.2 Sharing of Proceeds ....................................................................................... 9
   3.3 No Transfer or Exchange ............................................................................... 9
   3.4 Absolute Owners ........................................................................................... 9
   3.5 Means of Payment ......................................................................................... 9
4. Delivery and Acceptance of Creditor Litigation Trust Estate. ..................... 9
   4.1 Conveyance by Debtors ................................................................................. 9
   4.2 Acceptance of Conveyance .......................................................................... 10
5. Administration of Creditor Litigation Trust Estate ..................................... 10
   5.1 Powers of the Litigation Trustee ................................................................. 10
   5.2 Prosecution or Settlement of Avoidance Actions ....................................... 12
   5.3 Prosecution or Settlement of Appraiser Causes of Action ......................... 12
   5.4 Limitations on Litigation Trustee: Investments ......................................... 12
       5.4.1 No Trade or Business ......................................................................... 12
       5.4.2 Investments of Cash .......................................................................... 13
   5.5 Transferee Liabilities ................................................................................. 13
   5.6 Administration of Trust ............................................................................... 13
   5.7 Payment of U.S. Trustee's Fees .................................................................. 14
   5.8 Fiscal Year .................................................................................................. 14
   5.9 Reports ........................................................................................................ 14
   5.10 Compensation of the Litigation Trustee ..................................................... 14
   5.11 Termination ................................................................................................. 14
   5.12 No Bond ...................................................................................................... 14
6. Source of Payments: Distributions To The Beneficiaries ............................ 14
   6.1 Distributions from Creditor Litigation Trust Estate ................................... 14
   6.2 Frequency and Amounts of Cash Payments ................................................ 14
   6.3 Establishment of the Claim Accounts .......................................................... 15
   6.4 Allocation of Distributions from Creditor Litigation Trust Estate ............ 15
   6.5 Distributions of Property Allocated to Disputed Claims ............................ 16
   6.6 Unclaimed Property ..................................................................................... 16

*CHI 58457170v1 July 18, 2009*

      6.6.1   Escrow of Unclaimed Property ........................................................ 16
      6.6.2   Distribution of Unclaimed Property .............................................. 16
      6.6.3   Time Bar to Cash Payments ........................................................... 17

   6.7     Fractional Distributions ........................................................................ 17
   6.8     Final Distribution ................................................................................. 17
   6.9     Dissolution of the Creditor Litigation Trust ........................................ 17
   6.10    Creditor Litigation Trust Expenses ...................................................... 18

7.       Other Duties of the Litigation Trustee. ...................................................... 18

   7.1     Management of Creditor Litigation Trust Estate ................................. 18
   7.2     No Implied Duties ................................................................................ 19

8.       Concerning the Litigation Trustee. .............................................................. 19

   8.1     Acceptance by Litigation Trustee ........................................................ 19
   8.2     Discretionary Submission of Questions ............................................... 19
   8.3     Resignation of Litigation Trustee. ....................................................... 19

      8.3.1   Resignation ..................................................................................... 19
      8.3.2   Appointment of a Successor Litigation Trustee ............................. 19

   8.4     Acceptance of Appointment by Successor Litigation Trustee ............... 19

9.       Creditor Litigation Trust Advisory Board .................................................. 20

   9.1     Role of the Creditor Litigation Trust Advisory Board ......................... 20
   9.2     Creditor Litigation Trust Advisory Board Members ............................ 20
   9.3     Duties of the Creditor Litigation Trust Advisory Board ...................... 21
   9.4     Creditor Litigation Trust Advisory Board Bylaws .............................. 21
   9.5     Board Voting Requirements .................................................................. 21

      9.5.1   Majority Vote Requirement ............................................................ 21
      9.5.2   Unanimous Vote Requirement ........................................................ 22

   9.6     Reporting .............................................................................................. 22
   9.7     Retention and Compensation of Professionals ..................................... 22
   9.8     Reimbursement ..................................................................................... 22

10.     Liability of Litigation Trustee and Creditor Litigation Trust Advisory Board............. 23

   10.1    No Recourse and Limitation on Liability ............................................. 23
   10.2    Discretion of Litigation Trustee and Creditor Litigation Trust Advisory Board.......... 23
   10.3    Reliance by Litigation Trustee, Creditor Litigation Trust and Creditor Litigation Trust
        Advisory Board. ................................................................................... 24

      10.3.1 Reliance on Documents ................................................................. 24
      10.3.2 Retention of Professionals ............................................................ 24
      10.3.3 Reliance on Litigation Trustee and Creditor Litigation Trust Advisory Board........ 24

   10.4    Exculpation; Indemnification. .............................................................. 24

      10.4.1 Exculpation .................................................................................. 25

2

10.4.2 Indemnification of Litigation Trustee, Creditor Litigation Trust Advisory Board and Agents ............................................................................................................... 25

10.4.3 Payment of Expenses ............................................................................................... 25

10.4.4 Insurance ................................................................................................................. 26

11. Miscellaneous. ..................................................................................................................... 26

11.1 Title to Trust Estate ............................................................................................................. 26

11.2 Notices ................................................................................................................................. 26

11.3 Severability ......................................................................................................................... 27

11.4 Counterparts ....................................................................................................................... 27

11.5 Binding Agreement ............................................................................................................. 27

11.6 No Personal Liability of Beneficiaries ............................................................................. 27

11.7 Headings .............................................................................................................................. 27

11.8 Construction ........................................................................................................................ 27

11.9 Governing Law .................................................................................................................... 28

11.10 Construction with the Plan ................................................................................................ 28

11.11 Subject to Court's Jurisdiction .......................................................................................... 28

11.12 Intention of the Parties ...................................................................................................... 28

11.13 Valuation of Assets ............................................................................................................ 28

11.14 Requirement of Undertaking ............................................................................................. 28

11.15 Books and Records ............................................................................................................. 29

CHI 58457170v1 July 18, 2009

## CREDITOR LITIGATION TRUST AGREEMENT
## (FOR CLASSES 3(A) - (U),  4 (A) - (U) AND 5(A) - (U) /
## AVOIDANCE ACTIONS AND APPRAISER CAUSES OF ACTION ONLY)

THIS CREDITOR LITIGATION TRUST AGREEMENT ("Agreement") is dated as of [_____], 2009, by and among California Land Company; Friendswood Development Company LLC; Kings Wood Development Company, L.C.; LandSource Communities Development LLC; LandSource Communities Development Sub LLC; LandSource Holding Company, LLC; Lennar Bressi Ranch Venture, LLC; Lennar Land Partners II; Lennar Mare Island, LLC; Lennar Moorpark, LLC; Lennar Stevenson Holdings, L.L.C.; LNR-Lennar Washington Square, LLC; LSC Associates, LLC; NWHL GP LLC; The Newhall Land and Farming Company (A California Limited Partnership); The Newhall Land and Farming Company; Southwest Communities Development LLC; Stevenson Ranch Venture LLC; Tournament Players Club at Valencia, LLC; Valencia Corporation; and Valencia Realty Company (collectively, the "Debtors") and KDW Restructuring & Liquidation Services LLC, not in its individual capacity, but solely as Litigation Trustee hereunder (the "Litigation Trustee"), in accordance with the Second Amended Joint Chapter 11 Plans of Reorganization for LandSource Communities Development LLC and each of its Affiliated Debtors Proposed by Barclays Bank PLC (the "Plan Proponent"), as Administrative Agent, Under the Super-Priority Debtor-In-Possession First Lien Credit Agreement, as Modified, dated [_____, 2009] (as amended, modified or supplemented from time to time, the "Plan").  Any capitalized terms used, but not defined, herein will have those meanings assigned to such terms in the Plan.

## RECITALS:

WHEREAS, the Debtors filed voluntary petitions commencing their respective cases (the "Chapter 11 Cases") under Chapter 11 of the Bankruptcy Code ("Bankruptcy Code") on June 8, 2008 in the United States Bankruptcy Court for the District of Delaware ("Court") and such Chapter 11 Cases are jointly administered under Case Number 08-11111;

WHEREAS, the Plan Proponent filed the Plan, and such Plan contemplates that a trust will be created for the benefit of the Holders of Allowed First Lien Deficiency Claims, Allowed Second Lien Claims and Allowed Unsecured Claims solely for purposes of (a) pursuing the Avoidance Actions and Appraiser Causes of Action (or the right to pursue such Appraiser Causes of Action, subject to Article IX.D of the Plan), (b) receiving the proceeds from the Avoidance Actions and Appraiser Causes of Action and (c) distributing such proceeds (net of any expenses) to the Holders of Allowed First Lien Deficiency Claims, Allowed Second Lien Claims and Allowed Unsecured Claims in accordance with the Plan (the "Creditor Litigation Trust");

WHEREAS, the Plan was confirmed by the Court pursuant to that certain Order entered on [_____, 2009] (the "Confirmation Order");

WHEREAS, all conditions to consummation of the Plan have been met (or waived) as of the date of execution of this Agreement;

4

WHEREAS, the Debtors and the Holders of Allowed First Lien Deficiency Claims, Allowed Second Lien Claims and Allowed Unsecured Claims (collectively, the "Beneficiaries") desire to create and fund the Creditor Litigation Trust, as contemplated by the Plan, pursuant to this Agreement;

WHEREAS, the Beneficiaries desire to exchange their Allowed Claims under the Plan for Beneficial Interests (as defined herein) in the Creditor Litigation Trust, which will consist of twenty-one (21) subtrusts, each subtrust corresponding to each of the Debtors' Estates;

WHEREAS, Beneficiaries that are creditors of each of the Debtors will share pro rata in the proceeds, expenses and Distributions of each corresponding subtrust; and

WHEREAS, all references to the Creditor Litigation Trust in the ensuing provisions of this Agreement will be deemed to be a reference to specific subtrusts to the extent of the respective interests of the Beneficiaries in the Creditor Litigation Trust Estate.

## AGREEMENTS:

NOW THEREFORE, for and in consideration of the premises, and the mutual promises and agreements contained herein and in the Plan, the receipt and sufficiency of which are hereby expressly acknowledged, the Plan Proponent and Litigation Trustee hereby agree as follows:

1.  Definitions:

1.1  Terms Defined Above. As used in this Agreement, each of the terms "Agreement," "Bankruptcy Code," "Beneficiaries," "Chapter 11 Cases," "Court," "Confirmation Order," "Creditor Litigation Trust," "Debtors," "Plan," "Plan Proponent" and "Litigation Trustee" will have the meanings hereinabove set forth.

1.2  Additional Defined Terms. As used herein, the following terms will have the meanings set forth below, unless the context otherwise requires:

(a)  "Beneficial Interest" means the rights and interests of each of the Beneficiaries in and to the Creditor Litigation Trust Estate as described in Section 3 herein.

(b)  "Claim Account" has the meaning ascribed to such term in Section 6.3(b) of this Agreement.

(c)  "Claims List" has the meaning ascribed to such term in Section 6.3(a) of this Agreement.

(d)  "Creditor Litigation Trust Advisory Board" means that certain five (5) member advisory board relating to the Creditor Litigation Trust which members will be appointed as follows: (a) three (3) members will be appointed by

the Committee, (b) one (1) member will be appointed by the Second Lien Administrative Agent and (c) one (1) member will be appointed by the Plan Proponent, as described in Section 9 of this Agreement.

(e)     "Creditor Litigation Trust Advisory Board Member" and "Creditor Litigation Trust Advisory Board Members" have the meanings ascribed to such terms in Section 9.2(a) of this Agreement.

(f)     "Creditor Litigation Trust Estate" means any and all Avoidance Actions and Appraiser Causes of Action (or the right to pursue such Appraiser Causes of Action, subject to Article I.X.D of the Plan), subject to Section 5.3 of this Agreement, all of which will be irrevocably assigned, transferred and conveyed to the Creditor Litigation Trust, free and clear of all claims, liens, encumbrances and other liabilities, including all Claims against and Interests in the Debtors, in accordance with the Plan and as of the Effective Date.

(g)     "Creditor Litigation Trust Expenses" means all costs, expenses and obligations incurred by the Litigation Trustee, the Creditor Litigation Trust, the Creditor Litigation Trust Advisory Board and their respective members, officers, directors, employees, professionals, representatives, agents, successors, heirs and assigns in administering the Creditor Litigation Trust or in any manner connected, incidental or related thereto, including, but not limited to, the fees and expenses of any professionals retained by the Litigation Trustee, the Creditor Litigation Trust or the Creditor Litigation Trustee Advisory Board, including its members, to assist in carrying out its duties pursuant to this Agreement and the Plan.

(h)     "Creditor Litigation Trust Proceeds" means the actual consideration, if any, received by the Creditor Litigation Trust as a result of any judgment, settlement or compromise of any of the Avoidance Actions and the Appraiser Causes of Action and *less* the Creditor Litigation Trust Expenses.

(i)     "Disputed Claim Distribution Amount" has the meaning ascribed to such term in Section 6.5 of this Agreement.

(j)     "Final Cash" has the meaning ascribed to such term in Section 6.8 of this Agreement.

(k)     "Final Distribution" has the meaning ascribed to such term in Section 6.8 of this Agreement.

(l)     "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended from time to time.

(m)     "Permitted Transfer" has the meaning ascribed to such term in Section 3.3 of this Agreement.

6

(n) "Resolved Claim" has the meaning ascribed to such term in Section 6.5 of this Agreement.

(o) "Residual Authority" has the meaning ascribed to such term in Section 9.1(c) of this Agreement.

(p) "Unanimous Vote" has the meaning ascribed to such term in Section 9.5.2 of this Agreement.

(q) The terms "Litigation Trustee," "Creditor Litigation Trust Advisory Board Member," "representative," "employer" or "agent" as used herein, where applicable, include the heirs, successors, executors, administrators, personal representatives or estates of such Persons or entities.

2. Authority of and Certain Directions to Litigation Trustee: Declaration of Trust.

2.1 Creation of Creditor Litigation Trust. Pursuant to Article IX.A of the Plan and the Confirmation Order, and effective as of the Effective Date of the Plan, the Beneficiaries and the Debtors hereby create the Creditor Litigation Trust for the benefit of the Beneficiaries. On the Effective Date, the Debtors will fund the Creditor Litigation Trust with $50,000, which amount may only be used to pay the reasonable fees and expenses incurred by the Creditor Litigation Trust, the Litigation Trustee or the Creditor Litigation Trust Advisory Board, including its members, in administering the Creditor Litigation Trust and which amount will be the sole source of funding (other than recoveries on account of liquidation of the Creditor Litigation Trust Estate) for the Creditor Litigation Trust.

2.2 Property in the Creditor Litigation Trust. The Creditor Litigation Trust will hold the legal title to all property at any time constituting a part of the Creditor Litigation Trust Estate and will hold such property in trust to be administered and disposed of by it pursuant to the terms of this Agreement and the Plan for the benefit of the Beneficiaries. The Litigation Trustee is authorized to make disbursements and payments from the Creditor Litigation Trust Estate in accordance with the provisions of Sections 5 and 6 of this Agreement and pursuant to the Plan.

2.3 Purpose of Creditor Litigation Trust. This Creditor Litigation Trust is organized for the sole purposes of (a) commencing, administering, compromising, settling or otherwise disposing of any adversary or other legal proceedings relating to the Creditor Litigation Trust Estate and (b) distributing the Creditor Litigation Trust Proceeds, with no objective to engage in the conduct of a trade or business. In accordance with such express and limited purposes, as of the Effective Date, the Litigation Trustee is hereby authorized and directed to (w) take any and all steps necessary to maintain the Creditor Litigation Trust as a liquidating trust for federal income tax purposes in accordance with Treasury Regulation Section 301.7701-4(d) and as a "grantor trust" subject to the provisions of Subchapter J of the Internal Revenue Code unless otherwise required; (x) take all reasonable and necessary actions to conserve and protect the Creditor Litigation Trust Estate; (y) commence, administer,

7

compromise, settle or otherwise dispose of, as appropriate, the Creditor Litigation Trust Estate; and (z) distribute the Creditor Litigation Trust Proceeds to the Beneficiaries, in as prompt, efficient and orderly a fashion as possible and in accordance with the Plan and the provisions of Section 6 hereof. The Creditor Litigation Trust is intended to qualify as a liquidating trust under the Internal Revenue Code and the regulations promulgated thereunder, specifically Treasury Regulation Section 301.7701-4(d), and as such is a "grantor trust" for federal income tax purposes with the Beneficiaries treated as grantors and owners of the Creditor Litigation Trust Estate. In particular:

(i)     The Creditor Litigation Trust is organized for the primary purpose of liquidating the assets of the Creditor Litigation Trust Estate, with no objective to conduct a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Creditor Litigation Trust. The Creditor Litigation Trust will not be deemed a successor of the Debtors; and

(ii)    The Creditor Litigation Trust provides that the Beneficiaries of the Creditor Litigation Trust will be treated as the grantors of the Creditor Litigation Trust and deemed owners of the assets of the Creditor Litigation Trust Estate. This Agreement requires the Litigation Trustee to file returns for the Creditor Litigation Trust as a grantor trust pursuant to Treas. Reg. §1.671-4(a); and

(iii)   This Agreement provides for consistent valuations of the transferred property by the Litigation Trustee and the Beneficiaries, and those valuations will be used for all federal income tax purposes; and

(iv)    All of the Creditor Litigation Trust's income is to be treated as subject to tax on a current basis to the Beneficiaries who will be responsible for payment of any tax due; and

(v)     This Creditor Litigation Trust contains a fixed or determinable termination date that is not more than five years from the date of creation of the Creditor Litigation Trust and that is reasonable based on all the facts and circumstances; and

(vi)    The investment powers of the Litigation Trustee, other than those reasonably necessary to maintain the value of the assets of the Creditor Litigation Trust Estate and to further the liquidating purpose of the Creditor Litigation Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills; and

(vii)   The Litigation Trustee is required to distribute at least once per twelve-month period to the Beneficiaries the Creditor Litigation

8

Trust's net income plus all net proceeds from the sale of the assets of the Creditor Litigation Trust Estate, except that the Litigation Trustee may retain an amount of net proceeds or net income reasonably necessary to maintain the value of the assets of the Creditor Litigation Trust Estate or to meet claims and contingent liabilities (including Disputed Claims).

3. <u>Beneficial Interests.</u>

3.1 <u>Creation of Beneficial Interests.</u> Beneficial Interests in the Creditor Litigation Trust will be held by the Beneficiaries as provided in the Plan. Beneficial Interests in the Creditor Litigation Trust will not be evidenced by any certificate or other instrument or document. The Beneficial Interests will be uncertificated.

3.2 <u>Sharing of Proceeds.</u> All Beneficial Interests in the Creditor Litigation Trust will rank equally as to priority of Distributions from the Creditor Litigation Trust with respect to the Creditor Litigation Trust Estate and will share ratably in the payment of all Creditor Litigation Trust Expenses; *provided that* in accordance with the Plan, the Litigation Trustee acknowledges that fifty percent (50%) of the First Lien Creditor Trust Proceeds are for the account of the Class 5 Turnover Trust, and to the extent received by the Litigation Trustee will be for the account of and paid over to the Class 5 Turnover Trust consistent with Article V.I of the Plan; and *provided further that* Holders of Allowed Unsecured Claims will not receive Distributions in excess of one hundred percent (100%) of the Allowed Amount of their respective Claims (which Allowed Amount will not include interest).

3.3 <u>No Transfer or Exchange.</u> Beneficial Interests in the Creditor Litigation Trust are non-transferable and non-assignable other than to successors in interest or by will, the laws of descent and Distribution, or by operation of law ("<u>Permitted Transfer</u>").

3.4 <u>Absolute Owners.</u> The Litigation Trustee may deem and treat the persons who are Beneficiaries (as determined in accordance with the Plan) as the absolute owners of the Beneficial Interests in the Creditor Litigation Trust for the purpose of receiving Distributions and payments thereof or on account thereof and for all other purposes whatsoever. Unless the Litigation Trustee receives actual written notice of a Permitted Transfer from the duly authorized transferee not less than thirty (30) days prior to a Distribution made pursuant to the terms of this Agreement, and subject to the applicable provisions of Bankruptcy Rule 3001(e), the Litigation Trustee will have no duty or obligation to make or direct any Distributions or payments to such transferee of a Permitted Transfer.

3.5 <u>Means of Payment.</u> Cash payable to the Beneficiaries pursuant to Section 6 hereof will be paid by checks drawn on an account maintained by the Creditor Litigation Trust.

4. <u>Delivery and Acceptance of Creditor Litigation Trust Estate.</u>

4.1 <u>Conveyance by Debtors.</u> On the Effective Date, the Creditor Litigation Trust Estate will be transferred to, and fully vest in, the Creditor Litigation Trust, free

and clear of all claims, liens, encumbrances and other liabilities, including all Claims and Interests in the Debtors, as further specified in the Plan and the Confirmation Order. At any time and from time to time after the date hereof at the Litigation Trustee's request and without further consideration, the Debtors or the Reorganized Debtors will execute and deliver such other instruments of sale, transfer, conveyance, assignment and confirmation, and will cooperate and take such other actions as the Litigation Trustee may deem reasonably necessary or desirable in order to more effectively transfer, convey and assign all rights, title and interests in and to the Creditor Litigation Trust Estate to the Creditor Litigation Trust.

4.2    Acceptance of Conveyance. The Litigation Trustee is hereby directed to, and the Litigation Trustee agrees that it will:

(a)    accept delivery from the Debtors of the Creditor Litigation Trust Estate on behalf of the Creditor Litigation Trust;

(b)    take such other action as may be required of the Creditor Litigation Trust hereunder, including the receipt and acceptance as part of the Creditor Litigation Trust Estate of any property or rights, including, without limitation, notes, other negotiable instruments, Causes of Action, and other choses in action, which the Litigation Trustee may receive in connection with or in consideration of the Creditor Litigation Trust Estate; and

(c)    comply with all applicable tax reporting and tax payment obligations of a Litigation Trustee under a trust pursuant to Subchapter J of the Internal Revenue Code and all applicable state and local income tax statutes.

5.    Administration of Creditor Litigation Trust Estate.

5.1    Powers of the Litigation Trustee. During the Litigation Trustee's administration of the Creditor Litigation Trust, and subject to all the other provisions of this Agreement and the Plan, the Litigation Trustee is authorized to perform those acts and has those powers necessary to accomplish the purposes of the Creditor Litigation Trust, without further authorization from the Bankruptcy Court, subject only to oversight by the Creditor Litigation Trust Advisory Board as specifically set forth herein, including the following:

(a)    to receive and hold all assets of the Creditor Litigation Trust Estate and to have exclusive possession and control thereof as permissible under applicable law;

(b)    to enter into, perform and exercise rights under contracts binding upon the Creditor Litigation Trust (but not upon the Litigation Trustee in its respective individual or corporate capacities) which are reasonably incident to the administration of the Creditor Litigation Trust and which the Litigation Trustee, in the exercise of its business judgment, reasonably believes to be in the best interests of the Creditor Litigation Trust;

10

(c)　　to establish and maintain accounts at banks and other financial institutions, in a clearly specified fiduciary capacity, into which all cash and property of the Creditor Litigation Trust may be deposited, and draw checks or make withdrawals from such accounts, and to pay or distribute such amounts of the Creditor Litigation Trust Estate as permitted or required under this Agreement;

(d)　　to employ attorneys, accountants, appraisers, property managers, brokers, realtors, expert witnesses, insurance adjusters or other persons whose services may be necessary or advisable in the sole judgment of the Litigation Trustee, to advise or assist it in the discharge of its duties as Litigation Trustee, or otherwise in the exercise of any powers vested in the Litigation Trustee, and to pay from the Creditor Litigation Trust Estate reasonable compensation to such attorneys, accountants, appraisers, property managers, brokers, realtors, expert witnesses, insurance adjusters or other persons;

(e)　　to pay any and all Creditor Litigation Trust Expenses that are necessary expenses attributable or relating to the management, maintenance, operation, preservation or liquidation of the Creditor Litigation Trust Estate;

(f)　　to sue or be sued in connection with any matter arising from or related to the Plan or this Agreement that affects in any way the rights or obligations of the Creditor Litigation Trust, the Litigation Trustee or the Beneficiaries;

(g)　　to represent the interests of the Beneficiaries with respect to any matters relating to this Agreement or the Creditor Litigation Trust affecting the rights of such Beneficiaries;

(h)　　to act as representative of the Creditor Litigation Trust Estate and to investigate, initiate, prosecute, settle or compromise any and all of the Avoidance Actions and Appraiser Causes of Action;

(i)　　to settle any and all Avoidance Actions and Appraiser Causes of Action without the need for approval by the Bankruptcy Court; *provided that* such settlements have been approved by a majority of the Creditor Litigation Trust Advisory Board;

(j)　　to file all applicable tax reports and tax returns and to pay all applicable tax obligations of a liquidating trust agreement; and

(k)　　to do any and all other things, not in violation of any other terms of this Agreement, which, in the reasonable business judgment of the Litigation Trustee, are necessary or appropriate for the proper liquidation, management, investment and Distribution of the assets of the Creditor Litigation Trust Estate in accordance with the provisions of this Agreement and the Plan.

*CHI 58457170v1 July 18, 2009*

5.2     <u>Prosecution or Settlement of Avoidance Actions</u>. The Creditor Litigation Trust has the sole power and authority to commence adversary proceedings or other legal proceedings to pursue the Avoidance Actions to the extent not settled or resolved prior to the Effective Date or pursuant to the Plan. Any Creditor Litigation Trust Proceeds recovered through any such proceeding will be deposited into the Creditor Litigation Trust and be distributed by the Litigation Trustee in accordance with the provisions of this Agreement and the Plan.

5.3     <u>Prosecution or Settlement of Appraiser Causes of Action</u>. On the Effective Date and to the extent allowable, the Debtors, the Reorganized Debtors, the Administrative Agent, the First Lien Administrative Agent, the current and former Holders of the DIP Revolver Loan Claims, the current and former Holders of the First Lien Claims, the Second Lien Administrative Agent and the current and former Holders of Second Lien Claims will be deemed to have assigned to the Creditor Litigation Trust any and all rights to commence adversary proceedings or other legal proceedings to pursue the Appraiser Causes of Action. To the extent that the Appraiser Causes of Action cannot be assigned to the Creditor Litigation Trust, the Debtors, the Reorganized Debtors, the Administrative Agent, the First Lien Administrative Agent, the current and former Holders of the DIP Revolver Loan Claims, the current and former Holders of the First Lien Claims, the Second Lien Administrative Agent and the current and former Holders of Second Lien Claims will be deemed to have assigned to the Creditor Litigation Trust the right to commence any adversary proceedings or other legal proceedings to pursue the Appraiser Causes of Action, on their respective behalves, and after payment of any reasonable fees and expenses incurred in prosecuting such Appraiser Causes of Action, any net proceeds recovered on account of the Appraiser Causes of Action will be assigned to the Creditor Litigation Trust and be treated as Creditor Litigation Trust Proceeds. Any Creditor Litigation Trust Proceeds recovered as a result of the Appraiser Causes of Action will be deposited into the Creditor Litigation Trust and be distributed by the Litigation Trustee in accordance with the provisions of this Agreement and the Plan.

[LANGUAGE REDACTED]

To the extent that the Debtors, the Reorganized Debtors, the Administrative Agent, the First Lien Administrative Agent, the current and former Holders of the DIP Revolver Loan Claims, the current and former Holders of First Lien Claims, the Second Lien Administrative Agent or the current and former Holders of Second Lien Claims incur any damages, fees, costs or expenses, including, without limitation, any attorneys' fees and expenses, the Creditor Litigation Trust will reimburse and indemnify the Debtors, the Reorganized Debtors, the Administrative Agent, the First Lien Administrative Agent, the current and former Holders of DIP Revolver Loan Claims, the current and former Holders of First Lien Claims, the Second Lien Administrative Agent or the current and former Holders of Second Lien Claims, as applicable, for any such damages, costs and expenses.

5.4     <u>Limitations on Litigation Trustee: Investments</u>.

5.4.1   <u>No Trade or Business</u>. The Litigation Trustee will carry out the purposes of the Creditor Litigation Trust and the directions contained herein and will not at

12

any time enter into or engage in any business (except as may be consistent with the limited purposes of the Creditor Litigation Trust), including, without limitation, the purchase of any assets or property (other than such assets or property as are necessary to carry out the purposes of Section 2, Section 7, and Section 5.4.2 hereof), on behalf of the Creditor Litigation Trust or the Beneficiaries. The Litigation Trustee is directed to take all reasonable and necessary actions to commence legal proceedings to pursue the Avoidance Actions and Appraiser Causes of Action, to make timely Distributions of the Creditor Litigation Trust Proceeds and to otherwise not unduly prolong the duration of the Creditor Litigation Trust.

5.4.2 <u>Investments of Cash</u>. All Cash held by the Creditor Litigation Trust will be invested by the Litigation Trustee, in consultation with the Creditor Litigation Trust Advisory Board, in only (a) direct obligations of, or obligations guaranteed by, the United States; (b) obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States, as an agency or instrumentality thereof; (c) AAA rated tax-free securities issued by municipalities or state governments or agencies; or (d) such other obligations or instruments as may from time to time be approved for such investments by Final Order of the Bankruptcy Court; *provided, however,* that the Litigation Trustee may, to the extent it deems necessary, deposit monies in demand deposits (including money market funds) at any commercial bank, trust company or other financial institution organized under the laws of the United States or any state thereof which has, at the time of such deposit, a capital stock and surplus aggregating at least $500,000,000. The investment powers of the Litigation Trustee will be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments such as U.S. Treasury Bills; *provided, however,* that the scope of any such investments will be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS ruling, other IRS pronouncements or otherwise. Such investments will mature in such amounts and at such times as may be deemed necessary by the Litigation Trustee, in consultation with the Creditor Litigation Trust Advisory Board, to provide funds when needed to make Distributions and payments as required by the Plan.

5.5 <u>Transferee Liabilities</u>. If any liability is asserted against the Creditor Litigation Trust as transferee of the Creditor Litigation Trust Estate on account of any claimed liability of or through the Debtors, except as otherwise provided in the Plan, the Litigation Trustee may use such part of the Creditor Litigation Trust Estate as may be necessary in contesting any such claimed liability and in payment, compromise, settlement and discharge thereof on terms reasonably satisfactory to the Litigation Trustee. In no event will the Litigation Trustee be required or obligated to use its own property, funds or assets for any such purposes.

5.6 <u>Administration of Trust</u>. In administering the Creditor Litigation Trust, the Litigation Trustee, subject to the express limitations contained herein, is authorized and directed to do and perform all such acts, to execute and deliver such deeds, bills of sale, instruments of conveyance, and other documents as it may deem necessary or advisable to carry out the purposes of the Creditor Litigation Trust.

5.7 Payment of U.S. Trustee's Fees. The Creditor Litigation Trust will be liable for the payment of any fees payable to the Office of the United States Trustee on account of Distributions made by the Creditor Litigation Trust.

5.8 Fiscal Year. The Creditor Litigation Trust's fiscal year will end on December 31 of each year, unless the Litigation Trustee deems it advisable to establish some other date on which the fiscal year of the Creditor Litigation Trust will end.

5.9 Reports. The Litigation Trustee will prepare, deliver and file, as the case may be, reports as follows:

(a) Prepare and file unaudited interim financial reports as may be required by regulatory authorities, applicable laws, rules or regulations or as the Litigation Trustee deems advisable during the fiscal year; and

(b) Prepare, file and mail, within the time required by applicable law or regulation, necessary income tax information, tax returns or reports to the Beneficiaries and applicable taxing authorities.

5.10 Compensation of the Litigation Trustee. The Litigation Trustee will be entitled to receive reasonable compensation for services rendered on behalf of the Creditor Litigation Trust, as approved by the Creditor Litigation Trust Advisory Board. The Creditor Litigation Trust will reimburse the Litigation Trustee for its actual reasonable out-of-pocket expense including, including, without limitation, necessary travel, lodging, postage, telephone and facsimile charges upon receipt of periodic billings. All compensation and other amounts payable to the Litigation Trustee will be paid from the Creditor Litigation Trust only.

5.11 Termination. The duties, responsibilities and powers of the Litigation Trustee will terminate on the date that the Creditor Litigation Trust is dissolved under applicable law in accordance with this Agreement, the Plan, by an order of the Bankruptcy Court or by entry of a final decree closing the Chapter 11 Cases.

5.12 No Bond. The Litigation Trustee will serve without a bond.

6. Source of Payments: Distributions To The Beneficiaries.

6.1 Distributions from Creditor Litigation Trust Estate. All Distributions to be made hereunder to the Beneficiaries will be made only from the assets, income and proceeds of the Creditor Litigation Trust Estate and only to the extent that the Litigation Trustee has received sufficient assets, income or proceeds of the Creditor Litigation Trust Estate to make such Distributions in accordance with the Plan and the terms of this Section 6. Each Beneficiary will look solely to the assets, income and proceeds of the Creditor Litigation Trust Estate, and not to the Litigation Trustee in its personal, individual or corporate capacity for Distribution to such Beneficiary as herein provided.

6.2 Frequency and Amounts of Cash Payments. As often as the Litigation Trustee in its reasonable discretion and judgment deems appropriate, after consultation

14

with the Creditor Litigation Trust Advisory Board, the Litigation Trustee will transfer and pay, or cause to be transferred and paid, to the Beneficiaries (subject to the provisions of Section 3 hereof) such aggregate amount of cash, if any, held in the Creditor Litigation Trust, less such amounts as otherwise might be needed to pay the expenses, debts, charges, liabilities and obligations of the Creditor Litigation Trust. The aggregate amounts required to be distributed to the Beneficiaries at various intervals will be determined by the Litigation Trustee, in consultation with the Creditor Litigation Trust Advisory Board, in accordance with the Plan, and the Litigation Trustee's determination will be final and conclusive on all Persons, in the absence of gross negligence or willful misconduct on the part of the Litigation Trustee, and will not be reviewed by the Court and, only if funds are available, will be paid at least once per twelve (12) month period commencing with the Effective Date. In determining the amount of any such Distribution, the Litigation Trustee may rely and will be fully protected in relying upon the advice and opinion of independent public accountants or of counsel to the Litigation Trustee.

6.3    Establishment of the Claim Accounts.

(a)    On the Effective Date of the Plan, the Debtors will make available to the Litigation Trustee a list of all Beneficiaries, the addresses of all Beneficiaries as of the Effective Date, and the designation of each such Beneficiary as the Holder of an Allowed or Disputed Claim (the "Claims List"). The Litigation Trustee will be entitled to rely upon the Claims List in calculating and making Distributions from the Creditor Litigation Trust Estate as provided herein; *provided, however,* that the Claims List will be adjusted from time to time by the Litigation Trustee, as provided in Section 6.3 of this Agreement and will be adjusted based upon updated information from the Class 5 Trustee as to the Holders of any Allowed or Disputed Unsecured Claims. The Litigation Trustee also will revise the Claims List from time to time upon receipt of notice from a Beneficiary stating that such Beneficial Interest has been transferred according to a Permitted Transfer, that the new holder has complied with any applicable provisions of Bankruptcy Rule 3001(e) (and providing evidence thereof), and setting forth the name and address of such new Beneficiary; *provided, however,* that the Litigation Trustee will not be required to revise such Claims List during the thirty (30) day period preceding the date of any Distribution made hereunder and in accordance with the Plan. The Litigation Trustee will establish the revised Claims List that is to be used in conjunction with the Distribution not less than fourteen (14) days prior to the date of such Distribution.

(b)    Upon receipt of or access to the Claims List, the Litigation Trustee will establish on the Creditor Litigation Trust's books and records an account representing each Allowed Claim or Disputed Claim as set forth on the Claims List (each, a "Claim Account"). It is expressly understood that the establishment of the Claim Accounts by the Litigation Trustee or its agents is solely for administrative convenience, and that amounts allocable to such Claim Accounts need not be segregated and may be commingled for investment purposes as specified herein.

6.4    Allocation of Distributions from Creditor Litigation Trust Estate.

With respect to each Distribution made to the Beneficiaries pursuant to the terms of this Agreement and the Plan, the Litigation Trustee will allocate to each Claim Account a Pro Rata Share of the Distribution and will reallocate to each Claim Account Pro Rata Shares of such

Distribution previously allocated to any Claim Account on account of a Claim or portion thereof which has been Disallowed as provided in the Plan, in each case by multiplying the total amount of such Distribution by a fraction, the numerator of which is the amount of such Claim Account and the denominator of which is the total amount of Allowed and Disputed Claims as set forth on the Claims List (after reducing by the amount disallowed the amount of each Claim Account from which amounts have been disallowed). With respect to each Distribution made pursuant hereto, the Litigation Trustee will distribute specified amounts to the Beneficiaries in accordance with the allocations determined in accordance with this Section 6.4, Section 3.2 and the Plan. Allocations of the Distribution relating to Disputed Claims will be retained in the Creditor Litigation Trust by the Litigation Trustee as part of the Creditor Litigation Trust Estate pending resolution of the Disputed Claims and further Distributions as provided for herein.

6.5     Distributions of Property Allocated to Disputed Claims. At such time as the Debtors or the Class 5 Trustee, as applicable, compromise, settle or resolve all or any portion of a Disputed Claim, by Final Order or otherwise (a "Resolved Claim"), the Litigation Trustee will take the following actions with regard to the Distribution allocated to the Claim Account established for that Resolved Claim (the "Disputed Claim Distribution Amount"): (a) distribute to the holder of the Resolved Claim that portion of the Disputed Claim Distribution Amount to which the Holder of the Resolved Claim is entitled, if any, based upon the Allowed Amount; and (b) reallocate, to all other Claim Accounts, pursuant to this Section 6.5, that portion of the Disputed Claim Distribution Amount to which the Holder of the Resolved Claim is no longer entitled, if any. Upon the final resolution of any Disputed Claim and the subsequent Distribution or reallocation of the Disputed Claim Distribution Amount as herein provided, the Litigation Trustee will adjust the Claims List to reflect the actions taken pursuant to this Section 6.5.

6.6     Unclaimed Property

6.6.1     Escrow of Unclaimed Property. The Litigation Trustee (or, at the option of the Litigation Trustee, the Distribution Agent) will hold any proceeds of the Creditor Litigation Trust constituting Unclaimed Property (and all interest, dividends, and other Distributions thereon) for the benefit of the Holders of Claims entitled thereto under the terms of this Agreement and the Plan. If any Distribution to any Holder is returned to the Litigation Trustee as undeliverable, no further Distributions will be made to such Holder. All entities or Persons receiving undeliverable Cash will not be entitled to any interest or other accruals of any kind. Nothing contained in this Agreement or the Plan will require the Creditor Litigation Trust, the Litigation Trustee or the Creditor Litigation Trust Advisory Board to attempt to locate any Holder of an Allowed Claim.

6.6.2     Distribution of Unclaimed Property. At the end of one hundred and twenty (120) days following the date that any Cash or other property becomes Unclaimed Property, the Holder of the Allowed Claim theretofore entitled to such Unclaimed Property held pursuant to this Section 6.6 will be deemed to have forfeited such property, whereupon all right, title and interest in and to such property will be available for Distribution to all other Holders of Allowed Claims and whereupon such Holder will be forever barred from asserting any such Claim against the Creditor Litigation Trust, the Litigation Trustee or the

16

Creditor Litigation Trust Advisory Board unless the Holder of an Allowed Claim entitled to Unclaimed Property makes a request in writing to the Distribution Agent for such property (which request must set forth the Distribution Address for such Holder) prior to the expiration of such period. If no such notice is received, any consideration held for Distribution on account of such Allowed Claim will revert to the Creditor Litigation Trust for the benefit of the other Beneficiaries in accordance with this Agreement and the Plan.

      6.6.3   <u>Time Bar to Cash Payments</u>. Checks issued by the Creditor Litigation Trust on account of Allowed Claims will be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. Requests for reissuance of any check must be made directly to the Litigation Trustee by the Holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check must be made within one hundred and twenty (120) days from and after the date of issuance of such check. After such date, all Claims in respect of voided checks will be discharged and forever barred and the Creditor Litigation Trust will retain all monies related thereto for the benefit of the other Beneficiaries of the Creditor Litigation Trust in accordance with this Agreement and the Plan.

      6.7    <u>Fractional Distributions</u>. The Litigation Trustee will not be required to make any Distribution in an amount of less than $25.00 unless a request therefor is made in writing to the Distribution Agent. If no request is made as provided in the preceding sentence, all such Distributions will be treated as Unclaimed Property pursuant to the Plan. Whenever any payment of a fraction of a dollar by the Reorganized Debtors under the Plan would be required, the actual payment or Distribution will reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

      6.8    <u>Final Distribution</u>. Upon the final collection of all of the assets, rights and interests comprising the Creditor Litigation Trust Estate, and in any event prior to the dissolution (as provided for in Section 6.9 hereof), the Litigation Trustee will prepare a final accounting of any and all monies remaining in any accounts maintained by the Litigation Trustee on behalf of the Creditor Litigation Trust, or otherwise remaining in the Creditor Litigation Trust Estate (the "<u>Final Cash</u>"). Once the amount of the Final Cash has been determined, the Litigation Trustee will deduct and pay from the Final Cash any and all remaining permitted costs, expenses and liabilities of the Creditor Litigation Trust. The Litigation Trustee will then allocate pro rata to the Claim Account of each Beneficiary the net remaining amount of Final Cash (the "<u>Final Distribution</u>"), and the Litigation Trustee will distribute the Final Distribution to the Beneficiaries. To the extent that there are any remaining monies, such monies will be donated to a charity selected by the Litigation Trustee, after consultation with the Creditor Litigation Trust Advisory Board.

      6.9    <u>Dissolution of the Creditor Litigation Trust</u>. The Creditor Litigation Trust will terminate five (5) years after the Effective Date, with the ability to extend the term upon the discretion of the Litigation Trustee, after consultation with the Creditor Litigation Trust Advisory Board and entry of an order of the Bankruptcy Court; *provided, however,* within six (6) months prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Creditor Litigation Trust for a finite period if it is

*CHI 58457170v1 July 18, 2009*

necessary to the liquidating purpose thereof. Multiple extensions may be obtained so long as Bankruptcy Court approval is obtained within six (6) months prior to the expiration of such extended term; *provided, however,* that, prior to requesting any such extension, the Litigation Trustee must receive an opinion of counsel or a favorable ruling from the IRS that any further extension would not adversely affect the status of the trust as a grantor trust for federal income tax purposes. Upon termination of the Creditor Litigation Trust, all Beneficial Interests in the Creditor Litigation Trust will be extinguished, the legal existence of the Creditor Litigation Trust will terminate, and all assets (if any) held by the Creditor Litigation Trust on such date will vest in the Reorganized Debtors free and clear of all claims, liens, encumbrances and other liabilities, in each case without further action of the Bankruptcy Court or any other court, administrative body or other agency. The Litigation Trustee may cause to be filed with any applicable governmental or other regulatory authority such certificate of dissolution or cancellation and any other certificates and documents as the Litigation Trustee, after consultation with the Creditor Litigation Trust Advisory Board, deems necessary to reflect the termination of the legal existence of the Creditor Litigation Trust, and may take any other action it deems necessary or desirable to reflect the transfer of all assets (if any) held by the Creditor Litigation Trust upon termination to the Reorganized Debtors.

6.10    Creditor Litigation Trust Expenses. All Creditor Litigation Trust Expenses will be charged against and paid from the Creditor Litigation Trust Proceeds, as appropriate. The Litigation Trustee will pay such Creditor Litigation Trust Expenses as and when due and payable. Counsel and any other professionals retained by the Litigation Trustee, Creditor Litigation Trust Advisory Board or Creditor Litigation Trust will submit periodic statements for services rendered and costs incurred to the Litigation Trustee and the Creditor Litigation Trust Advisory Board for review and approval. The Litigation Trustee or Creditor Litigation Trust Advisory Board (based on a vote of the majority of the Creditor Litigation Trust Advisory Board) will have thirty (30) days to object to any such statement. In the event that such objection is received by the relevant professional and cannot be promptly resolved by such professional and the Litigation Trustee or the Creditor Litigation Trust Advisory Board, as applicable, the dispute will be submitted by the Litigation Trustee or Creditor Litigation Trust Advisory Board, as applicable, to the Bankruptcy Court for adjudication. The Bankruptcy Court will retain jurisdiction to adjudicate any such objection. In the event that no objection is raised to a statement within the thirty (30) day period, such statement will be promptly paid by the Litigation Trustee, in accordance with this Agreement and the Plan.

7.    Other Duties of the Litigation Trustee.

7.1    Management of Creditor Litigation Trust Estate. With respect to the assets of the Creditor Litigation Trust Estate, the Litigation Trustee may, if sufficient funds are available, purchase and maintain in existence such insurance as the Litigation Trustee deems reasonable and necessary or appropriate from time to time to protect the Creditor Litigation Trust, the Litigation Trustee, the Creditor Litigation Trust Advisory Board and the Beneficial Interests in the assets of the Creditor Litigation Trust Estate from any potential claims or liabilities relating thereto or the Distribution thereof.

18

7.2 <u>No Implied Duties</u>. The Litigation Trustee will not manage, control, use, sell, dispose, collect or otherwise deal with the Creditor Litigation Trust Estate or otherwise take any action hereunder except as expressly provided herein, and no implied duties or obligations whatsoever of the Litigation Trustee will be read into this Agreement.

8. <u>Concerning the Litigation Trustee.</u>

8.1 <u>Acceptance by Litigation Trustee</u>. The Litigation Trustee accepts the Creditor Litigation Trust hereby created for the benefit of the Beneficiaries and agrees to act as Litigation Trustee of the Creditor Litigation Trust pursuant to the terms of this Agreement. The Litigation Trustee will have and exercise the rights and powers herein granted and will be charged solely with the performance of the duties herein declared on the part of the Litigation Trustee. The Litigation Trustee also agrees to receive and disburse all monies actually received by him constituting part of the Creditor Litigation Trust Estate pursuant to the terms of this Agreement and the Plan.

8.2 <u>Discretionary Submission of Questions</u>. Subject to the provisions of this Section 8, the Litigation Trustee, in its sole discretion and reasonable business judgment, may, but is not be required to, submit to the Court, from time to time, any question or questions with respect to which the Litigation Trustee may desire to have explicit approval of the Court for the taking of any specific action proposed to be taken by the Litigation Trustee with respect to the Creditor Litigation Trust Estate, or any part thereof and the administration and Distribution of the Creditor Litigation Trust Estate. The written authorization of the Court set forth in a Final Order will constitute approval by the court of the proposed action to be taken by the Litigation Trustee. All costs and expenses incurred by the Litigation Trustee in the exercise of any right, power, or authority conferred by this Section 8.2 will be costs and reasonable expenses of the Creditor Litigation Trust Estate.

8.3 <u>Resignation of Litigation Trustee.</u>

8.3.1 <u>Resignation</u>. The Litigation Trustee may resign and be discharged from any future obligations and liabilities hereunder by giving written notice thereof to the Court and the Creditor Litigation Trust Advisory Board at least thirty (30) days prior to the effective date of such resignation. Such resignation will become effective on the day specified in such notice.

8.3.2 <u>Appointment of a Successor Litigation Trustee</u>. If, at any time, the Litigation Trustee gives notice of its intent to resign pursuant to Section 8.3.1 hereof or becomes incapable of acting, the Creditor Litigation Trust Advisory Board will chose a successor Litigation Trustee to act under this Agreement and will give notice thereof to the Court.

8.4 <u>Acceptance of Appointment by Successor Litigation Trustee</u>. Any successor Litigation Trustee appointed hereunder will execute an instrument accepting such appointment hereunder in the form determined by the Creditor Litigation Trust Advisory Board and will deliver counterparts thereof to the Court. Thereupon, such successor Litigation Trustee

19

will, without any further act, become vested with all of the rights, powers and duties of its predecessor hereunder with like effect as if originally named herein.

9.      Creditor Litigation Trust Advisory Board.

9.1      Role of the Creditor Litigation Trust Advisory Board

(a)      The Creditor Litigation Trust Advisory Board will be responsible for overseeing the Litigation Trustee's administration of the Creditor Litigation Trust in compliance with the Plan and this Agreement, subject to the terms of this Agreement and the Plan and bylaws of the Creditor Litigation Trust Advisory Board.

(b)      The Creditor Litigation Trust Advisory Board may retain professionals as necessary, in accordance with this Agreement.

(c)      The Creditor Litigation Trust Advisory Board has authority to engage in any and all conduct not specifically delineated within this Agreement that is reasonable and necessary to the operation and administration of the Creditor Litigation Trust (the "Residual Authority"). The Creditor Litigation Trust Advisory Board hereby specifically delegates such Residual Authority to the Litigation Trustee.

9.2      Creditor Litigation Trust Advisory Board Members

(a)      The members of the Creditor Litigation Trust Advisory Board (the "Creditor Litigation Trust Advisory Board Members" and each such, a "Creditor Litigation Trust Advisory Board Member") will be as follows: (i) three (3) members appointed by the Committee, (ii) one (1) member appointed by the Second Lien Administrative Agent and (iii) one (1) member appointed by the Plan Proponent.

(b)      The initial Creditor Litigation Trust Advisory Board Members designated by the Committee are Jeff Myers (Oakridge Landscape, Inc.), John Burgeson (John Burgeson Contractors) and Jim Frankian (R.T. Frankian & Associates). The initial Creditor Litigation Trust Advisory Board Members to be designated by the Plan Proponent and the Second Lien Administrative Agent have not yet been determined. Therefore, the Litigation Trustee is to appoint such Creditor Litigation Trust Advisory Board Members on the Effective Date; *provided that* such Creditor Litigation Trust Advisory Board Members may be replaced, at the option of the Plan Proponent or Second Lien Administrative Agent, as applicable, and at any time, with another Person selected by the Plan Proponent or the Second Lien Administrative Agent, as applicable.

(c)      If, for any reason, any Creditor Litigation Trust Advisory Board Members designated by the Committee ceases to be a Creditor Litigation Trust Advisory Board Member, such designee, if available, may appoint a successor to

20

fill the vacancy. Otherwise, the remaining Creditor Litigation Trust Advisory Board Members designated by the Committee may appoint a successor to fill the vacancy. If no such replacement Creditor Litigation Trust Advisory Board Member is appointed, the Litigation Trustee will appoint a Person to fill the vacancy.

(d) If, for any reason, any Creditor Litigation Trust Advisory Board Member designated by the Plan Proponent or the Second Lien Administrative Agent ceases to be a Creditor Litigation Trust Advisory Board Member, such designee, as applicable and if available, may appoint their respective successor to fill the vacancy. If no such replacement Creditor Litigation Trust Advisory Board Member is appointed, the Litigation Trustee will appoint a Person to fill the vacancy.

9.3     <u>Duties of the Creditor Litigation Trust Advisory Board</u>. The Creditor Litigation Trust Advisory Board will:

(a) receive and review the reports of the Litigation Trustee and consult with the Litigation Trustee on any matters related to the Creditor Litigation Trust, as requested by the Litigation Trustee;

(b) review and approve, in accordance with their reasonable business judgment:

(i) the budget for the Creditor Litigation Trust and any proposed changes, thereto;

(ii) any amendment of this Agreement;

(iii) any post-hoc ratification of the Litigation Trustee's action;

(iv) the selection of a successor Litigation Trustee, in the event the Litigation Trustee is removed, resigns or is otherwise incapacitated; and

(v) the initiation or settlement of any litigation involving more than $1,000,000 in settlement amount.

9.4     <u>Creditor Litigation Trust Advisory Board Bylaws</u>. The Creditor Litigation Trust Advisory Board will adopt its own bylaws within thirty (30) days after the Effective Date; *provided, however,* that such bylaws will contain provisions consistent with this Agreement and the Plan.

9.5     <u>Board Voting Requirements</u>

9.5.1     <u>Majority Vote Requirement</u>

*CHI 58457170v1 July 18, 2009*

The Creditor Litigation Trust Advisory Board will be deemed to have consented to a proposed action or inaction if three (3) of the five (5) Creditor Litigation Trust Advisory Board Members have not objected to such action or inaction after being provided with the following notice: (a) ten (10) days notice of such action or inaction by facsimile, electronic mail or overnight delivery (plus three (3) days delivery if such notice is made by regular mail); or (b) three (3) business days telephonic notice of such action or inaction (if the Litigation Trustee, in its discretion, believes that telephonic notice is appropriate under the circumstances). With respect to any matter directly or indirectly involving any Creditor Litigation Trust Advisory Board Member(s), such Creditor Litigation Trust Advisory Board Member(s) will (a) recuse himself or herself from any decision regarding such matter and (b) in the event of a tie vote among the remaining Creditor Litigation Trust Advisory Board Members, the Litigation Trustee will cast the deciding vote with regard to the matter for which the Creditor Litigation Trust Advisory Board Member has recused himself or herself. The Creditor Litigation Trust Advisory Board may take any action authorized by the Plan or this Agreement upon the affirmative vote of any three (3) Creditor Litigation Trust Advisory Board Members.

### 9.5.2   Unanimous Vote Requirement

"Unanimous Vote" means the affirmative vote of all Creditor Litigation Trust Advisory Board Members at the time of any such vote. The following actions will require the Unanimous Vote of the Creditor Litigation Trust Advisory Board:

(a)     Any request to the Bankruptcy Court to remove the Litigation Trustee;

(b)     The selection of a successor Litigation Trustee, in the event the Litigation Trustee is removed, resigns, or is otherwise incapacitated; and

(c)     The amendment of this Agreement.

9.6     Reporting. The Creditor Litigation Trust Advisory Board will (a) receive from the Litigation Trustee such reports, as it deems reasonable, but in no event less frequently than every three (3) months, including, without limitation, reports on the commencement and prosecution of Avoidance Actions and Appraiser Causes of Action and the proceeds of liquidation of the Creditor Litigation Trust Assets, and (b) conduct regular conferences, whether in person or telephonically, with the Litigation Trustee no less than once per thirty (30) day period unless otherwise agreed.

9.7     Retention and Compensation of Professionals. Subject to the provisions of this Agreement, the Creditor Litigation Trust Advisory Board may retain professionals. The Litigation Trustee may commit the Creditor Litigation Trust Estate to, and the Creditor Litigation Trust Estate will, pay such professionals reasonable compensation for services rendered thereto and reasonable expenses incurred therefor.

9.8     Reimbursement. The Creditor Litigation Trust Estate will reimburse the Creditor Litigation Trust Advisory Board Members and their professionals for the actual reasonable out-of-pocket expenses incurred by them, including, without limitation,

CHI 58457170v1 July 18, 2009

necessary travel, lodging, postage, telephone and facsimile charges upon receipt of periodic billings.

10.    Liability of Litigation Trustee and Creditor Litigation Trust Advisory Board.

10.1    No Recourse and Limitation on Liability. No recourse will ever be had, directly or indirectly, against the Litigation Trustee, the Creditor Litigation Trust Advisory Board, or, as applicable, their respective members, officers, directors, employees, professionals, representatives, agents, successors, heirs or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Creditor Litigation Trust, the Litigation Trustee or the Creditor Litigation Trust Advisory Board under this Agreement, the Plan or by reason of the creation of any indebtedness by the Creditor Litigation Trust, the Litigation Trustee or the Creditor Litigation Trust Advisory Board under this Agreement or the Plan for any purpose authorized by this Agreement or the Plan.  All such liabilities, covenants, and agreements of the Creditor Litigation Trust, the Litigation Trustee, the Creditor Litigation Trust Advisory Board, as applicable, their respective members, officers, directors, professionals, employees, representatives, agents, successors, heirs or assigns, whether in writing or otherwise, under this Agreement or the Plan will be enforceable only against, and will be satisfied only out of, the assets of the Creditor Litigation Trust or such part thereof as will, under the terms of any such agreement, be liable therefor, or will be evidence only of a right of payment out of the income and proceeds of the assets of the Creditor Litigation Trust, as the case may be.  Every undertaking, contract, covenant or agreement entered into in writing by the Creditor Litigation Trust, the Litigation Trustee or the Creditor Litigation Trust Advisory Board will provide expressly against the personal liability of the Litigation Trustee or the Creditor Litigation Trust Advisory Board, including each of its members.

The Creditor Litigation Trust, the Litigation Trustee, the Creditor Litigation Trust Advisory Board and, as applicable, their respective members, officers, directors, employees, professionals, representatives, agents, successors, heirs or assigns will not be liable for any act they may do, or omit to do hereunder in good faith and in the exercise of their respective business judgment, and the fact that such act or omission was advised, directed or approved by an attorney or other professional acting as advisor to the Creditor Litigation Trust, the Litigation Trustee or the Creditor Litigation Trust Advisory Board will be conclusive evidence of such good faith business judgment; *provided, however,* that this Section 10.1 will not apply to any gross negligence or willful misconduct by the Creditor Litigation Trust, the Litigation Trustee, the Creditor Litigation Trust Advisory Board or, as applicable, their respective members, officers, directors, employees, professionals, representatives, agents, successors, heirs or assigns.

10.2    Discretion of Litigation Trustee and Creditor Litigation Trust Advisory Board. The Litigation Trustee and the Creditor Litigation Trust Advisory Board, subject to any limitations and restrictions expressed and imposed by this Agreement and the Plan, may act freely under all or any of the rights, powers and authority conferred hereby, in all matters concerning the Creditor Litigation Trust Estate, after forming their reasonable business judgment based upon the circumstances of any particular question or situation as to the best

23

course to pursue, without the necessity of obtaining the consent or permission or authorization of the Beneficiaries, the Debtors, the Reorganized Debtors, the Court, or of any official or officer (other than the Creditor Litigation Trust Advisory Board as required hereunder with respect to certain actions to be undertaken by the Litigation Trustee); and the rights, powers and authority conferred on the Litigation Trustee and the Creditor Litigation Trust Advisory Board by this Agreement are conferred in contemplation of such freedom of reasonable business judgment and action within the limitations and restrictions so expressed and imposed; *provided, however,* that the Litigation Trustee and Creditor Litigation Trust Advisory Board will not be liable for any error or exercise of judgment, unless it is proved that such Litigation Trustee and Creditor Litigation Trust Advisory Board was grossly negligent or acted in a manner which constituted willful misconduct.

10.3 <u>Reliance by Litigation Trustee, Creditor Litigation Trust and Creditor Litigation Trust Advisory Board.</u>

10.3.1 <u>Reliance on Documents</u>. The Creditor Litigation Trust, the Litigation Trustee and the Creditor Litigation Trust Advisory Board may rely, and will be protected in acting or refraining from acting, upon any certificates, opinions, statements, instruments or reports believed by it to be genuine and to have been signed or presented by the proper Person or Persons.

10.3.2 <u>Retention of Professionals</u>. The Litigation Trustee or the Creditor Litigation Trust Advisory Board may consult with legal counsel and with independent public accountants and other experts. The Litigation Trustee and the Creditor Litigation Trust Advisory Board will not be liable for any action taken or suffered by it or omitted to be taken by it without gross negligence or willful misconduct in reliance on any opinion or certification of such accountants or other professional or in accordance with the advice of such counsel or experts, *provided that* such accountants, counsel and experts were selected and retained with reasonable care.

10.3.3 <u>Reliance on Litigation Trustee and Creditor Litigation Trust Advisory Board</u>. No Person dealing with the Litigation Trustee or the Creditor Litigation Trust Advisory Board will be obligated to see to the application of any monies, securities, or other property paid or delivered to them or to inquire into the expediency or propriety of any transaction or the right, power, or authority of the Litigation Trustee or Creditor Litigation Trust Advisory Board to enter into or consummate the same upon such terms as the Litigation Trustee or Creditor Litigation Trust Advisory Board may deem advisable. Persons dealing with the Litigation Trustee or Creditor Litigation Trust Advisory Board can only look to the Creditor Litigation Trust Estate to satisfy any liability incurred by the Litigation Trustee or Creditor Litigation Trust Advisory Board to such persons in carrying out the terms of this Agreement, and, except as otherwise expressly provided herein, the Litigation Trustee and the members of the Creditor Litigation Trust Advisory Board will have no personal, individual or corporate obligation to satisfy any such liability.

10.4 <u>Exculpation; Indemnification.</u>

24

10.4.1 _Exculpation_. From and after the Effective Date, the Litigation Trustee, the Creditor Litigation Trust Advisory Board and, as applicable, their respective directors, officers, members, employees, attorneys, accountants, professionals, representatives, agents, successors, heirs and assigns will be and hereby are exculpated by all Persons and Entities, including without limitation, Holders of Claims and other parties in interest, from any and all Claims, Causes of Action and other assertions of liability arising out of the discharge of the powers and duties conferred upon such parties pursuant to or in furtherance of this Agreement, the Plan, any order of the Bankruptcy Court, applicable law or otherwise, except only for actions taken or not taken, from and after the Effective Date only to the extent determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct or fraud.

No Holder of a Claim or other party-in-interest will have or be permitted to pursue any Claim or Cause of Action against the Litigation Trustee, the Creditor Litigation Trust Advisory Board or, as applicable, their respective directors, officers, members, employees, attorneys, accountants, professionals, representatives, agents, successors, heirs or assigns for making payments in accordance with this Agreement or the Plan or for implementing the provisions of this Agreement or the Plan. Any act taken or not taken, in the case of the Creditor Litigation Trust Advisory Board, with the approval of the Bankruptcy Court or, in the case of the Litigation Trustee, with the approval of the Creditor Litigation Trust Advisory Board, will be conclusively deemed not to constitute gross negligence or willful misconduct.

10.4.2 _Indemnification of Litigation Trustee, Creditor Litigation Trust Advisory Board and Agents_. The Creditor Litigation Trust hereby indemnifies to the full extent of the Creditor Litigation Trust Estate any Person or entity who was or is a party, or is threatened to be made a party to any threatened, pending, or completed action, suit or proceeding, whether civil, criminal, administrative or investigative by reason of the fact that such person or entity is or was the Litigation Trustee, the Creditor Litigation Trust Advisory Board or any member, director, officer, employee, member, representative, attorney, accountant, professional, agent, successor, heir or assign, as applicable, of the Litigation Trustee or Creditor Litigation Trust Advisory Board, from and against any and all expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such Person or entity in connection with such action, suit or proceeding, including appeals thereof if such Person or entity acted without gross negligence and willful misconduct in the exercise and performance of any power or duties of such Person or entity in accordance with this Agreement.

10.4.3 _Payment of Expenses_. Expenses (including attorneys' fees) incurred in defending any action, suit or proceeding referred to in Section 10.4 may be paid by the Creditor Litigation Trust in advance of the final disposition of such action, suit or proceeding, upon an undertaking by the Litigation Trustee, Creditor Litigation Trust Advisory Board or any officer, director, employee, member, representative, attorney, accountant, professional, agent, successor, heir or assign of the Litigation Trustee or Creditor Litigation Trust Advisory Board to repay such amount if it is ultimately determined that the Litigation Trustee, Creditor Litigation Trust Advisory Board or such Person or entity is not entitled to be indemnified.

25

10.4.4 Insurance. The Creditor Litigation Trust may maintain insurance during its existence and after its termination, at its expense, to protect itself and the Litigation Trustee, the Creditor Litigation Trust Advisory Board and their respective directors, officers, employees, members, attorneys, accountant, professional, representatives, agents, successors, heirs or assigns of and from any liability, whether or not the Creditor Litigation Trust would have the legal power to directly indemnify the Litigation Trustee, the Creditor Litigation Trust Advisory Board or their respective directors, officers, members, employees, attorneys, accountants, professionals, representatives, agents, successors, heirs or assigns of the Creditor Litigation Trust against such liability.

11. Miscellaneous.

11.1 Title to Trust Estate. No Beneficiary will have title to any part of the Creditor Litigation Trust Estate.

11.2 Notices. Unless otherwise expressly specified or permitted by the terms of the Plan or this Agreement, all notices will be in writing and delivered by registered or certified mail, return receipt requested, by hand delivery, by facsimile transmission (and confirmed by mail) or by electronic mail, in any such case addressed as follows:

If to the Litigation Trustee:  [_____]
[_____]
[_____]
[_____]

If to the Debtors:  [_____]
[_____]
[_____]
[_____]

If to the Plan Proponent:

Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166
Facsimile:  (212) 801-6400
Attn:  Bruce Zirinsky
zirinskyb@gtlaw.com

Nathan Haynes
haynesn@gtlaw.com

If to the Second Lien Administrative Agent:

Paul, Weiss, Rifkind, Wharton and Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Attention:

26

If to the Creditor Litigation Trust Advisory Board:

[_____]
[_____]
[_____]
[_____]

and if to any Beneficiary, addressed to its latest mailing address reflected on the Claims List.

11.3    Severability. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction will, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof and any such prohibition or unenforceability in any jurisdiction will not invalidate or render unenforceable such provision in any other jurisdiction.

11.4    Counterparts. This Agreement may be executed in multiple counterparts, each of which will constitute an original, but all of which together will constitute one and the same instrument. Signature pages may be delivered via facsimile or electronic mail ("pdf" copy) and such signature pages will be deemed original signature pages.

11.5    Binding Agreement. All covenants and agreements contained herein will be binding upon, and inure to the benefit of the Litigation Trustee and its respective successors and assigns and any successor Litigation Trustee provided for in Sections 8.3.2 and 8.4, its respective successors and assigns, and the Beneficiaries, and their respective personal representatives, successors and assigns. Any request, notice, direction, consent, waiver or other instrument or action by any party hereto or any Beneficiary will bind their respective heirs, personal representatives, successors and assigns.

11.6    No Personal Liability of Beneficiaries. The Beneficiaries will not incur any personal liability through their ownership or possession of their Beneficial Interests, except for taxes imposed on the Beneficiaries pursuant to applicable provisions of federal, state or local law with respect to the receipt of such Beneficial Interests or Distributions from or transactions of the Creditor Litigation Trust and other charges specified herein. Liabilities of the Creditor Litigation Trust are to be satisfied in all events (including the exhaustion of the Creditor Litigation Trust Estate) exclusively from the Creditor Litigation Trust Estate and such liabilities are not to attach to or be paid from any amounts distributed to the Beneficiaries, regardless of the time at which such Distribution took place, or from the assets of the Beneficiaries.

11.7    Headings. The headings of the various Sections herein are for convenience of reference only and will not define or limit any of the terms or provisions hereof.

11.8    Construction. Except where the context otherwise requires, words importing the masculine gender will include the feminine and the neuter, if appropriate; words importing the singular number will include the plural number and *vice versa*; and words importing persons will include partnerships, associations, and corporations.

27

11.9     Governing Law. This Agreement, including all matters of construction, validity and performance hereof will in all respects be governed by, and construed and interpreted in accordance with the internal laws of the State of Delaware.

11.10     Construction with the Plan. The Plan is hereby incorporated fully by reference and is made a part hereof for all purposes. In the event of any inconsistency or conflict between the terms, conditions, definitions and provisions of this Agreement and the terms, conditions and provisions of the Plan, the terms, conditions, definitions and provisions of the Plan will control.

11.11     Subject to Court's Jurisdiction. The Court will retain jurisdiction over this Creditor Litigation Trust, the Creditor Litigation Trust Estate, the Litigation Trustee, the Creditor Litigation Trust Advisory Board and the Debtors to issue any and all orders and to take other actions necessary to the implementation of this Agreement, such jurisdiction to include, without limitation, the jurisdiction contemplated by Section 1142 of the Bankruptcy Code.

11.12     Intention of the Parties. The Debtors, the Beneficiaries and the Litigation Trustee hereby express their intent to create and maintain the Creditor Litigation Trust as a liquidating trust for federal income tax purposes in accordance with Treasury Regulation Section 301.7701-4(d) and as a "grantor trust" subject to the provisions of Subchapter J of the Internal Revenue Code, and the Litigation Trustee further represents that the Creditor Litigation Trust will not: (a) receive any assets of a going business; (b) receive and will not retain cash in excess of a reasonable amount to meet claims and contingent liabilities, determined in the reasonable discretion of the Litigation Trustee, after consultation with the Creditor Litigation Trust Advisory Board, in accordance with the provisions of Sections 5 and 6 hereof, and (c) receive general or limited partnership interests or the unlisted stock of any single issuer that represents 80 percent or more of the stock of such issuer.

11.13     Valuation of Assets. As soon as practicable after the Effective Date, the Creditor Litigation Trust (to the extent that the Litigation Trustee deems it necessary or appropriate in its sole discretion) will conduct a good faith valuation of the assets of the Creditor Litigation Trust Estate, and will make such valuation available to the Beneficiaries upon request. The valuation will be used consistently by all parties for all federal income tax purposes.

11.14     Requirement of Undertaking. The Creditor Litigation Trust, the Litigation Trustee or the Creditor Litigation Trust Advisory Board may request any court of competent jurisdiction to require, and any such court may in its discretion require, in any suit for the enforcement of any right or remedy under this Plan, or in any suit against the Creditor Litigation Trust, the Litigation Trustee or the Creditor Litigation Trust Advisory Board for any act taken or omitted by the Creditor Litigation Trust, the Litigation Trustee or the Creditor Litigation Trust Advisory Board, that the filing party litigant in such suit undertake to pay the costs of such suit, and such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant.

28

11.15 <u>Books and Records</u>. The Litigation Trustee will maintain, with respect to the Creditor Litigation Trust and the Beneficiaries, books and records relating to the assets and income of the Creditor Litigation Trust and the payment of expenses of and liabilities of, claims against or assumed by the Creditor Litigation Trust in such detail and for such period of time as the Litigation Trustee determines, in its sole discretion, may be necessary to make a full and proper accounting in respect thereof in accordance with this Agreement and to comply with applicable law. Except as otherwise provided herein or in the Plan, nothing in this Agreement required the Creditor Litigation Trust, the Litigation Trustee or the Creditor Litigation Trust Advisory Board to file any accounting or seek approval of any court with respect to the administration of the Creditor Litigation Trust, or as a condition for making any payment or Distribution out of the Creditor Litigation Trust. Subject to all applicable privileges, Beneficiaries will have the right, in addition to any other rights they may have pursuant to this Agreement, under the Plan or otherwise, upon twenty (20) days' prior written notice delivered to the Litigation Trustee, to request a reasonable inspection (as determine by the Litigation Trustee) of such books and records, *provided that,* if so requested, such Beneficiary will have entered into a confidentiality agreement satisfactory in form and substance to the Litigation Trustee and make such other arrangements as requested by the Litigation Trustee.

CHI 58457170v1 July 18, 2009

IN WITNESS WHEREOF, the parties have executed to have hereunto caused this Agreement to be duly executed, as of the day and year first written above.

**CALIFORNIA LAND COMPANY**

By: _____
Name:_____
Title:_____


**FRIENDSWOOD DEVELOPMENT COMPANY, LLC**

By: _____
Name:_____
Title:_____

**KINGS WOOD DEVELOPMENT, L.C.**

By: _____
Name:_____
Title:_____

**LANDSOURCE COMMUNITIES DEVELOPMENT LLC**

By: _____
Name:_____
Title:_____

CHI 58457170v1 July 18, 2009

**LANDSOURCE COMMUNITIES DEVELOPMENT SUB LLC**

By: _____
Name:_____
Title:_____


**LANDSOURCE HOLDING COMPANY, LLC**

By: _____
Name:_____
Title:_____

**LENNAR BRESSI RANCH VENTURE, LLC**

By: _____
Name:_____
Title:_____

**LENNAR LAND PARTNERS II**

By: _____
Name:_____
Title:_____

**LENNAR MARE ISLAND, LLC**

By: _____
Name:_____
Title:_____

*CHI 58457170v1 July 18, 2009*

**LENNAR MOORPARK, LLC**

By: _____
Name: _____
Title: _____

**LENNAR STEVENSON HOLDINGS, L.L.C.**

By: _____
Name: _____
Title: _____

**LNR-LENNAR WASHINGTON SQUARE, LLC**

By: _____
Name: _____
Title: _____

**LSC ASSOCIATES, LLC**

By: _____
Name: _____
Title: _____

**NWHL GP LLC**

By: _____
Name: _____
Title: _____

CHI 58457170v1 July 18, 2009

**THE NEWHALL LAND AND FARMING COMPANY (a California Limited Partnership)**

By: _____
Name:_____
Title:_____

**THE NEWHALL LAND AND FARMING COMPANY**

By: _____
Name:_____
Title:_____

**SOUTHWEST COMMUNITIES DEVELOPMENT LLC**

By: _____
Name:_____
Title:_____

**STEVENSON RANCH VENTURE LLC**

By: _____
Name:_____
Title:_____

**TOURNAMENT PLAYERS CLUB AT VALENCIA, LLC**

By: _____
Name:_____
Title:_____

33

**VALENCIA CORPORATION**

By: _____
Name:_____
Title:_____

**VALENCIA REALTY COMPANY**

By: _____
Name:_____
Title:_____

**LITIGATION TRUSTEE:**

By: _____
Name:_____
Title:_____

*CHI 58457170v1 July 18, 2009*