IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
*In re*                                                        :        Chapter 11
                                                               :
LANDSOURCE COMMUNITIES                                         :
DEVELOPMENT LLC et al.,                                        :        Case No. 08-11111 (KJC)
                                                               :
           Reorganized Debtors.                     :        (Jointly Administered)
                                                               :
                                                               :        **Hearing Date: March 3, 2010 at 2:00 p.m. (ET)**
---------------------------------------------------------------x        **Obj. Deadline: February 16, 2010 at 4:00 p.m. (ET)**

### ELEVENTH OMNIBUS OBJECTION (SUBSTANTIVE) OF LANDSOURCE COMMUNITIES DEVELOPMENT LLC TO THE ADMINISTRATIVE EXPENSES ASSERTED BY MW HOUSING PARTNERS III, L.P. AND LNR LAND PARTNERS SUB, LLC

> **PLEASE CAREFULLY REVIEW THIS OBJECTION TO DETERMINE WHETHER THIS OBJECTION AFFECTS YOUR CLAIMS**

LandSource Communities Development LLC ("*LandSource*") hereby objects (the "*Objection*") to (i) the administrative expense asserted by MW Housing Partners III, L.P. ("*MWHP*") against LandSource's estate on or about September 16, 2009, as reflected in proof of administrative expense number 1176 (the "*MWHP Claim*"),[1] and (ii) the administrative expense asserted by LNR Land Partners Sub, LLC ("*LNR Land Partners*") against LandSource's estate on or about September 18, 2009, as reflected in proof of administrative expense number 1234 (the "*LNR Land Partners Claim*"[2] and, together with the MWHP Claim, the "*Claims*").[3]

---

[1] A copy of the MWHP Claim is attached hereto as Exhibit "A."

[2] A copy of the LNR Land Partners Claim is attached hereto as Exhibit "B."

[3] Pursuant to Rule 3007-(1)(e) of the Local Rules of Bankruptcy Practice and Procedure of he United States Bankruptyc Court for the District of Delaware, a chart summarizing the Objection as it relates to the Claims is attached hereto as Exhibit "C."

LandSource requests that the Court disallow the MWHP Claim and the LNR Land Partners Claim and in support thereof, respectfully represents as follows:

## I. JURISDICTION

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. FACTUAL BACKGROUND

2. On June 8, 2008 (the "*Commencement Date*"), LandSource and certain of its affiliates and subsidiaries (collectively, the "*Debtors*") commenced voluntary cases under chapter 11 of the Bankruptcy Code.

3. On the Commencement Date, LandSource was a Delaware limited liability company operating under that certain Second Amended and Restated Limited Liability Company Agreement, dated as of February 27, 2007 (the "*LLC Agreement*"). A copy of the LLC Agreement is annexed hereto as Exhibit "C." LandSource's membership interests were held by (i) Lennar Homes of California, Inc. ("*Lennar Homes*"), a subsidiary of Lennar Corporation; (ii) LNR NWHL Holdings, Inc. and LNR Land Partners, each of which is a wholly-owned subsidiary of LNR Property Corporation; and (iii) MWHP, an entity formed as part of a joint venture among Weyerhauser Realty Investors, Inc., MacFarlane Partners, LLC, and the California Public Employees' Retirement System.

4. On June 2, 2009, Barclays Bank PLC, as administrative agent under the Debtors' prepetition first lien and postpetition credit agreements, filed the *Second Amended Joint Chapter 11 Plans of Reorganization for LandSource Communities Development LLC and Each of Its Affiliated Debtors Proposed by Barclays Bank PLC, as Administrative Agent Under the*

*Super-Priority Debtor-in-Possession First Lien Credit Agreement* (the *"Plan"*). On July 20, 2009, the Court entered its *Findings of Fact, Conclusions of Law, and Order Under 11 U.S.C. 1129(a) and (b) and Fed. R. Bankr. P. 3020 Confirming the Second Amended Joint Chapter 11 Plans of Reorganization for LandSource Communities Development LLC and Each of Its Affiliated Debtors Proposed by Barclays Bank PLC, as Administrative Agent Under the Super-Priority Debtor-in-Possession First Lien Credit Agreement* (the **"Confirmation Order"**). The Plan went effective on July 31, 2009 and, as such, LandSource is no longer a chapter 11 debtor, but is now a reorganized entity.

5. The LLC Agreement was terminated and superseded by new organizational documents for LandSource as a result of confirmation and the effectiveness of the Plan.

6. Pursuant to paragraph 28 of the Confirmation Order, the deadline for filing administrative expenses against the respective estates of Debtors, with certain limited exceptions, was sixty (60) days after the date of the Confirmation Order. The Confirmation Order was dated as of July 20, 2009, and accordingly the deadline for filing administrative expenses against the Debtors' estates was September 18, 2009.

A. **The Managing Member and the Development Management Services**

7. Section 10.15(a) of the LLC Agreement provided that LandSource would have a *"Managing Member,"* which would provide a broad range of operational services specified in Exhibit 10.15(b) of the LLC Agreement (the *"Development Management Services"*). In return for the provision of those services, the LLC Agreement provided that the Managing Member would receive *"Development Management Fees"* at the rate of $700,000 a

month from September 27, 2007 through December 31, 2009, subject to an adjustment thereafter based upon LandSource's revenues during that period.

8. Section 10.1(a) of the LLC Agreement jointly designated LNR Land Partners and Lennar Homes as LandSource's Managing Member. In practice, prior to the Commencement Date, LNR Land Partners was responsible for providing Development Management Services relating to any land owned by the Debtors for commercial development, and Lennar Homes was responsible for providing Development Management Services relating to any land owned by the Debtors for residential development. In addition, Lennar Homes provided to the Debtors other services relating to the general operations of the Debtors, including treasury services, financial reporting services, construction management, and insurance services. Prior to the Commencement Date, each month LNR Land Partners and Lennar Homes allocated $233,333 of the Development Management Fees to LNR Land Partners and $466,667 of the Development Management Fees to Lennar Homes.

9. At some point prior to the Commencement Date, LNR Land Partners ceased providing Development Management Services to LandSource and the other Debtors. LNR Land Partners did not provide any Development Management Services to LandSource after the Commencement Date, and it does not allege to have done so in the LNR Land Partners Claim.

B. **The Land Bank Management Services**

10. At the time of MWHP's admission as a member in LandSource in February 2007, MWHP contributed real estate and approximately $370 million of cash to LandSource Holding Company, LLC, a wholly-owned subsidiary of LandSource ("*LandSource Holding*"). The real estate contributed by MWHP was comprised of approximately 3,900

homesites that were subject to land banking arrangements between MWHP, on the one hand, and Lennar Homes and certain of its affiliates (collectively, the "*Lennar Entities*"), on the other. Generally speaking, subject to certain modifications made at the time of MWHP's admission, LandSource Holding assumed MWHP's rights and responsibilities in connection with such land banking arrangements.

11. At the same time, MWHP was designated as LandSource's "*Land Bank Managing Member*" pursuant to section 10.16(a) of the LLC Agreement, which obligated MWHP to provide "*Land Bank Management Services*" to LandSource and the other Debtors, as set forth in Exhibit 10.16(a) of the LLC Agreement, with respect to the properties MWHP contributed and certain properties thereafter acquired. MWHP's principal duties in its capacity as the Land Bank Managing Member were to verify and authorize payments to the Lennar Entities under certain development agreements covering the properties, pursuant to which a Lennar Entity was to act as general contractor for the development and construction of homesites, and to authorize purchases of properties by the Lennar Entities pursuant to option agreements between LandSource Holding and the Lennar Entities.

12. In exchange for providing the Land Bank Management Services, section 10.16(a) of the LLC Agreement entitled MWHP to a fee of 0.5% of the gross revenues from the subject properties. In late 2007 and early 2008, the Lennar Entities stopped taking down properties under their option agreements with LandSource Holding. In addition, when the Debtors entered into the prepetition forebearance period with their first and second lien lenders in early 2008, they stopped making any payments to affiliates. Accordingly, MWHP ceased providing Land Bank Management Services to the Debtors prior to the Commencement Date.

MWHP did not provide any Land Bank Management Services after the Commencement Date, and it does not allege in the MWHP Claim to have done so.

C. **The Claims**

13. Each of the Claims asserts an entitlement to compensation contemplated by the LLC Agreement as an administrative expense against LandSource's estate.

14. In the LNR Land Partners Claim, LNR Land Partners asserts an administrative expense in the amount of $10,333,333, which represents the entire $700,000 monthly Development Management Fees from the Commencement Date through LandSource's emergence from chapter 11. LNR Land Partners asserts that it is due such an amount notwithstanding that prior to the Commencement Date LNR Land Partners never received a monthly fee equal to the full amount of the Development Management Fees and notwithstanding that after the Commencement Date LNR Land Partners performed *no* services for or on behalf of any of the Debtors.

15. In the MWHP Claim, MWHP likewise asserts an administrative expense for postpetition services it did not perform. MWHP asserts that it is owed the amount of $1,190,266, a figure it simply arrives at by estimating the monthly Land Bank Management Fees during the Debtors' chapter 11 cases at $85,019 a month, without any explanation or supporting documents.

16. Neither of the Claims alleges that any postpetition services were provided to or on behalf of LandSource or any of the other Debtors, and neither of the Claims alleges that the claimant provided any benefit to LandSource's estate.

## III. ARGUMENT

17. By this Objection, LandSource objects to the Claims and seeks entry of an order disallowing and expunging the Claims on the basis that neither Claim demonstrates that the requirements of section 503(b) of the Bankruptcy Code governing the allowance of administrative expense claims have been satisfied.

18. Section 503 of the Bankruptcy Code expressly defines what constitutes an administrative expense. Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, administrative expenses are narrowly defined to include "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, and commissions for services rendered after the commencement of the case." In accordance with section 507(a)(1) of the Bankruptcy Code, only allowed administrative expense claims are entitled to receive first priority in the distribution of assets of the debtor's estate.

19. Courts narrowly construe what constitute priority claims such as administrative expenses because they "affect two important bankruptcy concerns: minimizing administrative costs during Chapter 11 to preserve the debtor's scarce resources and thus encourage rehabilitation ... and obtaining maximum and equitable distribution of estate assets to creditors." *In re Unidigital, Inc.*, 262 B.R. 283, 288 (Bankr. D. Del. 2001) (citations omitted). "If a claim does not comport with the language and underlying purpose of § 503 ... the claim must fail." *In re Continental Airlines, Inc.*, 148 B.R. 207, 211 (D. Del. 1992) (quoting *In re Jartran, Inc.*, 752 F.2d 584, 586 (7th Cir. 1984)); *In re Molnar Bros.*, 200 B.R. 555, 558 (Bankr. D.N.J. 1996).

20. Consequently, courts have established strict criteria for determining whether a claim is entitled to administrative expense status.[4] The seminal case of *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950 (1st Cir. 1976), sets forth the test upon which courts in this circuit and elsewhere generally rely. To qualify for administrative priority, a claimant must demonstrate, by a preponderance of the evidence, that the expense (1) arose from a *postpetition transaction* with the debtor in possession *and* (2) provided an *actual benefit to the estate* that was necessary to preserve the value of the estate's assets.[5]

21. In the instant case, it is clear that neither LNR Land Partners nor MWHP has satisfied either prong of the *Mammoth Mart* test.

22. First, both of the Claims arise out of a *prepetition* contract among LandSource's equity holders. Not only is LandSource not a party to the prepetition LLC Agreement, but LandSource did not enter into any postpetition agreements, and LandSource did not take any postpetition actions, that could possibly give rise to an administrative expense against LandSource's estate. Indeed, neither LNR Land Partners nor MWHP even asserts that either of the Claims arises out of any postpetition agreements or actions of LandSource. Moreover, neither LNR Land Partners nor MWHP engaged in any postpetition actions with or on behalf of LandSource – each of their Claims is simply based upon the language of a prepetition contract among LandSource's equity holders under which they performed *no services* postpetition. Neither of the Claims asserts that any postpetition services were provided.

---

[4] *See, e.g., In re Interstate Grocery Distribs Sys, Inc.*, 267 B.R. 907, 913 (Bankr. D.N.J. 2001); *In re The Grand Union Company*, 266 B.R. 621, 625 (Bankr. D.N.J. 2001); *In re Lease-A-Fleet, Inc.*, 140 B.R. 840, 844-45 (Bankr. E.D. Pa. 1992).

[5] *Mammoth Mart*, 536 F.2d 950 (emphasis added); *see, e.g., In re O'Brien Env'l Energy Inc.*, 181 F.3d 527 (3d Cir. 1999) (*citing Mammoth Mart* test); *see also Microsoft Corp v. DAK Indus, Inc. (In re DAK Indus, Inc.)*, 66 F.3d 1091, 1094 (9th Cir 1995); *General Am. Transp Corp v. Martin*, 1 F.3d 1130, 1133 (10th Cir. 1993); *In re Jartran, Inc.*, 732 F.2d at 587; *Unidigital*, 262 B.R. at 288; *Pinnacle Brands*, 259 B.R. at 51.

23. Second, neither LNR Land Partners nor MWHP has demonstrated – nor can it demonstrate – that it provided any actual benefit to LandSource's estate. The Claims not only fail to include any evidence whatsoever of postpetition services provided to the estate, but they fail to even *allege* that LandSource received the benefit of any postpetition services. Of course, this is because each party stopped providing any services to LandSource before the Commencement Date. The Claims should therefore be disallowed in their entirety because they fail to allege – much less prove – that the well-established elements of an administrative expense are satisfied here.

24. This Objection is limited to the grounds stated herein. Accordingly, it is without prejudice to the right of LandSource or any other party in interest to object to the Claims on any other ground whatsoever, and LandSource expressly reserves all further substantive and/or procedural objections it may have.

25. Pursuant to Bankruptcy Rule 3007, LNR Land Partners and MWHP have been given at least thirty (30) days' notice of the hearing on this Objection.

### Statement of Compliance with Local Rule 3007-1

26. The undersigned representative of Richards, Layton & Finger, P.A. certifies that he has reviewed the requirements of Rule 3007-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "*Local Rules*") and that the Eleventh Omnibus Objection substantially complies with that Local Rule. To the extent that the Eleventh Omnibus Objection does not comply in all respects with the requirements of Local Rule 3007-1, Richards, Layton & Finger, P.A. believes such deviations are not material and respectfully requests that any such requirement be waived.

## Notice

27. No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided to (i) the United States Trustee for the District of Delaware, (ii) counsel to the Creditors' Trust formed pursuant to the Plan, (iii) MWHP at the address for notices set forth in the MWHP Claim, (iv) LNR Land Partners at the address for notices set forth in the LNR Land Partners Claim, and (vii) each person or entity that has filed a notice of appearance and request for service of documents herein. LandSource submits that no other or further notice need be provided of this Objection.

WHEREFORE LandSource respectfully requests entry of an order (i) disallowing and expunging the Claims and (ii) granting LandSource such other and further relief as is just.

Dated: January 27, 2010
Wilmington, Delaware

Mark D. Collins (No. 2981)
Paul N. Heath (No. 3704)
Andrew C. Irgens (No. 5193)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700

-and-

Marcia L. Goldstein
Debra A. Dandeneau
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

ATTORNEYS FOR REORGANIZED DEBTORS