IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LANDSOURCE COMMUNITIES DEVELOPMENT, LLC, *et al.*, | ) ) ) | Case No. 08-11111 (KJC) |
| | ) | (Jointly Administered) |
| Reorganized Debtors. | ) | |

**Hearing Date: April 7, 2010**
**Response Date: March 26, 2010**

## DECLARATION OF STEVEN D. ZIMMER IN SUPPORT OF THE CLASS 5 TRUST'S OPENING BRIEF TO OBJECTION TO SCOPE CLAIM

I, Steven D. Zimmer, hereby declare that the following is true to the best of my knowledge, information and belief.

1. I am the Executive Vice President of The Newhall Land and Farming, a California Limited Partnership ("Newhall"), a wholly-owned subsidiary of LandSource Communities Development LLC. Newhall and certain of its affiliates (the "Debtors") were debtors in the above-referenced chapter 11 cases and have now successfully reorganized and emerged from chapter 11.

2. I file this declaration in support of the *Class 5 Trust's Opening Brief To Objection To SCOPE's Claim*.

3. Santa Clarita Organization for Planning and the Environment ("SCOPE") filed proof of claim number 925 (the "Claim"). A true and correct copy of the Claim is attached hereto as **Exhibit A**. By way of the Claim, SCOPE asserts a $1,000,000 general unsecured claim, representing the estimated cost of hiring a "civil engineer specializing in water" to prepare

ten years worth of various reports that Newhall allegedly failed to provide SCOPE under a March 2004, "Notice of Settlement and Dismissal of Appeal" ("Settlement"). A true and correct copy of the Settlement is attached hereto as **Exhibit B**.

4. I am informed and believe and thereon allege that on or about June 22, 2009, the Debtors filed their Fifth Omnibus Objection (Substantive) to Claims and included therein an objection to SCOPE's Claim.[1]

5. In response to the Objection, SCOPE wrote a letter to Debtors' counsel, dated July 7, 2009 (the "Response"), wherein it claimed that it had not received sufficient information from Newhall which would satisfy its obligations under the Settlement. A true and correct copy of the Response is attached hereto as **Exhibit C**.

6. In the months after the Objection and Response, Newhall's counsel and SCOPE continued to exchange correspondence and on July 24, 2009, Newhall produced additional, substantive documentation to SCOPE in an effort to finally resolve the dispute. A true and correct copy of the July 24, 2009 letter is attached hereto as **Exhibit D**.

7. In the Response and in all other correspondence, SCOPE contends that Newhall breached the Settlement in two ways: (a) by failing to provide documents required under II.A.2(b) (groundwater reporting) of the Settlement relating to Newhall's groundwater

---

[1] The Objection was based on Newhall's reporting of its agricultural groundwater usage annually in the Santa Clarita Valley Water Reports that are prepared for Castaic Lake Water Agency ("CLWA") and other retail water purveyors in the Santa Clarita Valley. For example, upon request, Newhall provided such information to Ron Bottoroff of the Friends of the Santa Clara River on March 27, 2007. However, Newhall did not receive a written request from SCOPE for such information until its July 7, 2009 letter (referenced above). Newhall, through counsel, responded to SCOPE's July 7, 2009 letter by correspondence dated July 24, 2009 (referenced above).

usage; and (b) by failing to provide documents required under II.A.2(d) (on-going documentation) of the Settlement relating to Newhall's retirement of certain agricultural land.

    A.    **Newhall has Complied With The Reporting Requirements of Section II.A.2(b) of the Settlement.**

    8.    Newhall has fully complied with the reporting requirements under Section II.A.2(b) of the Settlement. That section requires Newhall to provide annual reports to the Los Angeles County Board of Supervisors ("County") that indicate the amount of groundwater it used in Los Angeles County and the specific land upon which that groundwater was historically used for irrigation. Newhall is required to provide that information to others, such as SCOPE, only upon a "written request to Newhall." (See, Settlement, pg. 4 para (b)). SCOPE did not make a written request to Newhall for such information until <u>after</u> Newhall filed its chapter 11 petition on June 8, 2008.

    9.    In the Response, SCOPE requested that Newhall provide it with its annual water reports for the years 2004 through 2008. Attached to Newhall's July 24, 2009 letter, Newhall provided to SCOPE exactly what it wanted – Newhall's Annual Reports for the years 2003 to 2008 (an additional Annual Report was provided even though it was not requested).

    10.    The Annual Reports contained the information required by Section II.A.2(b) in that they listed the amount of groundwater used by Newhall for crops grown in Los Angeles County in the year noted on the report. For instance, the 2007 Annual Report sets forth information regarding the amount of Newhall's groundwater usage for 910 acres of agricultural land in 2007 (representing 205 acres of Alfalfa, 231 acres of Irrigated Pasture, 355 acres of

Vegetables, and 119 acres of Sod).[2] The Annual Reports identified groundwater usage using two calculations -- the "actual" amount of water used by Newhall using Southern California Edison pump test data and the "adjusted" data from the California Irrigation Management Information System or "CIMIS." Both of these calculations were authorized means of determining groundwater usage and are described in the Settlement. The "actual" amount of groundwater usage is set forth in the second to last column entitled, "LA Co. Crop Share of Actual Pumped Water (af/yr)" and the adjusted water information is in the last column entitled "LA Co. Crop Share Using Adjusted CIMIS (af/yr)." Thus, the 2007 Annual Report reflects that Newhall used 5,833 acre-feet per year (afy) using the "actual" pump data or 6,895 (afy) using the "adjusted" methodology for 910 acres of agricultural land in 2007.

11. The additional information required by Section II.A.2(b) of the Settlement -- the specific land upon which that groundwater was historically used for irrigation – was provided to SCOPE in the documents attached hereto as **Exhibit F** and which are described below.

12. A true and correct copy of Newhall's Annual Reports for the years 2003-2008 which were provided to SCOPE on July 24, 2009 are attached hereto as **Exhibit E**.

/ / /

/ / /

/ / /

---

[2] Only those crops that were grown in Los Angeles County had corresponding 'actual' and 'adjusted' water usage information next to them. Therefore, there are no "actual" or "adjusted" water usage information for crops such as citrus, irrigated hay, and Sudan grass on the 2007 Annual Report because such crops are not located in Los Angeles County but rather, in neighboring counties.

51357-003\DOCS_SF:70178.2  4

### B. Newhall has complied with Section II.A.2(d) of the Settlement.

13. Section II.A.2(d) of the Settlement requires Newhall to provide documentation to the County of Los Angeles and other parties, including SCOPE, that identifies the specific portion(s) of irrigated farmland in the County that Newhall proposes to retire from irrigated production in order to make agricultural water available to serve the potable water demands of the residents in any given future Newhall Ranch subdivision located in Los Angeles County. Documentation containing this information is to be provided beginning with the filing of the first subdivision map allowing construction on the specific development. Newhall's obligation to produce this information has not yet been triggered because Newhall has not yet obtained County approval of a subdivision map that would allow it to begin construction.

14. The purpose of the on-going documentation provision of the Settlement is to provide evidence that Newhall had retired sufficient agricultural land in order to make the agricultural water available to serve the residents of the proposed new subdivision without placing any additional demands on the groundwater supply of the Los Angeles basin.

15. Even though Newhall's obligation to produce this information has not yet been triggered (with the exception of some of the reporting information as noted in paragraph 11 above), Newhall provided SCOPE with responsive documentation. On July 24, 2009, Newhall provided to SCOPE three additional sets of documents entitled, "Retired Irrigated Farmland - Landmark Village," "Retired Irrigated Farmland, Mission Village," and "Retired Irrigated Farmland, Homestead." Each of these documents were accompanied by Exhibits A and B which

set forth information regarding: (i) the location of the irrigated agricultural fields to be retired; and (ii) the types of planted crops on such land for the baseline five-year period 1996-2000.

16. Each of the Exhibits A identify by aerial map the exact location of the irrigated fields to be retired and each Exhibit B identifies the types of crops that were grown on the land between 1996 and 2000 (see column entitled, "Types of Planted Crops Retired") and the amount of groundwater used for such crops during that same time frame.

17. A true and correct copy of the "Retired Irrigated Farmland – Landmark Village, et al, and related exhibits A and B attachments are attached hereto as **Exhibit F**.

18. Therefore, Newhall has provided SCOPE with the information and documentation required by Section II.A.2(d) of the Settlement even though it had no legal obligation to do so. Despite Newhall's attempts to cooperate with SCOPE and provide whatever documentation that was requested of it, SCOPE continues to incorrectly argue that Newhall has not fulfilled its reporting and documentation obligations under the Settlement. Attached hereto as **Exhibit G** are true and correct copies of letter from SCOPE dated August 27, 2009; letter from our counsel to SCOPE dated October 28, 2009; and letter from SCOPE dated November 14, 2009.

19. As the above evidence shows, Newhall has fully complied with its obligations under the Settlement. In fact, as further evidence of Newhall's compliance, no other party to the Settlement has ever accused Newhall of committing a breach of any kind or filed a proof of claim in its chapter 11 case asserting a claim for breach of the Settlement.

/ / /

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 25th day of February, 2010.

_____
Steven D. Zimmer