# EXHIBIT D

GATZKE DILLON & BALLANCE LLP
ATTORNEYS & COUNSELORS AT LAW
EMERALD LAKE CORPORATE CENTRE
1525 FARADAY AVENUE, SUITE 150
CARLSBAD, CALIFORNIA 92008
TELEPHONE 760.431.9501
FACSIMILE 760.431.9512

OF COUNSEL
MICHAEL SCOTT GATZKE
ANTHONY T. DITTY

July 24, 2009

David Lutness
Santa Clarita Organization for Planning and the Environment
P.O. Box 1182
Santa Clarita, California 91386

    Re:    *Letter Request for Documentation*

           *United Water Conservation District, et al. v. County of Los Angeles, et al.*
           *(Newhall Ranch)*

Dear Mr. Lutness:

      On behalf of The Newhall Land and Farming Company ("Newhall"), I have been asked to respond to your letter of July 7, 2009. While you ask that we direct any further correspondence to the office of the Santa Clarita Organization for Planning and the Environment ("SCOPE") at the address shown on your letter, we also have copied one of your counsel, John T. Buse, with this letter response. By copy to Mr. Buse, we are responding to SCOPE and all other parties to the referenced litigation.

      At the outset, your letter provides a copy of the "Notice of Settlement and Dismissal of Appeal" filed with the Court of Appeal for the Fifth District on April 1, 2004 ("Notice of Settlement"). The Notice of Settlement, which was signed by me on behalf of Newhall, and your counsel (John T. Buse and Jan Chatten-Brown) on behalf of SCOPE (and others), was in connection with the final settlement and dismissal, with prejudice, of the appeal then pending in the above-referenced Newhall Ranch litigation. As to the Notice of Settlement, we disagree with your letter in two important respects.

      First, in your letter (page 1), you claim that the "court ordered compliance" with the Notice of Settlement; however, that is not what happened. The Notice of Settlement was just that -- it was a notice to the Court of Appeal of the parties' settlement and the Order portion of the Notice of Settlement simply acknowledged the settlement and directed that the appeal be dismissed, with prejudice, and without appeal costs to any party. On April 1, 2004, pursuant to the Notice of Settlement, the Court of Appeal ordered that the appeal be dismissed.

      Second, in your letter (pages 2 and 3), you state that, pursuant to the terms of the Notice of Settlement, if Newhall implements the Newhall Ranch Specific Plan, then "the County and Newhall and its successors in interest . . . were and are obligated" to the specified terms of the Notice of Settlement. The statements are not correct. As you know, pursuant to the terms of the

Notice of Settlement, the County of Los Angeles (County) "is not a party to this settlement, because there are no settlement provisions that require any action to be taken by the County to implement this settlement." (Notice of Settlement, p. 1.) SCOPE's claim that it will "pursue its remedies against the County" should Newhall fail to abide by the Notice of Settlement, therefore, is incorrect because the County is not a party to the Notice of Settlement. In addition, there are no provisions in the Notice of Settlement that binds Newhall's "successors in interest." As noted below, however, Newhall remains committed to the Notice of Settlement and believes it has complied with its terms.

There are two other threshold issues that require clarification. First, in your letter (page 1, first paragraph), you characterize the nature of the Newhall Ranch litigation. We disagree with that characterization, and point out that in 2004, when the parties were negotiating the Notice of Settlement, they were careful to avoid argumentative characterizations of the Newhall Ranch litigation; and, for that reason, there are no such characterizations in the Notice of Settlement.

Second, on page 1, you characterize your letter as a "second" request for documentation required under the Notice of Settlement. We disagree with this statement as well. Your letter is the *first* request for documentation that Newhall has received pursuant to the term of the Notice of Settlement. Later in your letter (pages 2 and 4), you infer that SCOPE sent its first request for documentation arising under the Notice of Settlement when SCOPE filed a claim with the Bankruptcy Court. We do not believe that SCOPE's filing of such a claim will be fairly characterized as making a request for documentation arising under the Notice of Settlement. As a result, we are treating your letter as SCOPE's *first* request for documentation arising under the Notice of Settlement.

As to the substantive portions of your letter, Newhall acknowledges its obligation under the Notice of Settlement. Specifically, you claim that Newhall is not in compliance with two provisions of the Notice of Settlement -- Section II.A.2(b) and Section II.A.2(d). We address each of these provisions below.

**Section II.A.2(b) provision of Notice of Settlement**

Section II.A.2(a) and (b) of the Notice of Settlement provide as follows:

(a) **Groundwater Use/Limitations.** Groundwater historically and presently used for crop irrigation on the Newhall Ranch Specific Plan site and elsewhere in Los Angeles County shall be made available by Newhall, or its assignee, to partially meet the potable water demands of the Newhall Ranch Specific Plan. The amount of groundwater pumped for this purpose shall not exceed 7,038 AFY. Newhall represents that this is the amount of groundwater pumped historically and presently by Newhall in Los Angeles County to support its agricultural operations. and that pumping this amount will not result in a net increase in groundwater use in the Santa Clarita Valley.

>    (b)    **Reporting.** To monitor groundwater use, Newhall, or its assignee, shall provide the County an annual report indicating the amount of groundwater used in Los Angeles County and the specific land upon which that groundwater was historically used for irrigation. After submitting the annual report to the County, Newhall, or its designee, will promptly provide the Appellants with a copy of such report, provided that the Appellants make a written request to Newhall for a copy of such report.

Section II.A.2(b) is the reporting and monitoring requirement for groundwater use on the Newhall Ranch Specific Plan. The reporting/monitoring provision does not yet apply. It applies only when Newhall or its assignee, use groundwater to meet the potable water demand of the Specific Plan; at which time, the amount of groundwater pumped to meet potable demand shall not exceed 7,038 acre-feet per year (afy). When groundwater is used in that manner, Newhall, or its assignee, must provide the County with an annual report indicating the amount of groundwater used in Los Angeles County and the specific land upon which that groundwater was historically used for irrigation. After submitting this annual report to the County, Newhall, or its designee, is to promptly provide SCOPE and other appellants with a copy of such report, provided that they make a written request to Newhall for a copy of such report. Newhall did not receive a written request from SCOPE for a copy of such report until your July 7, 2009 letter; and, in any case, the request is premature under the provisions of the Notice of Settlement.

Nonetheless, for your information, Newhall's agricultural groundwater usage is reported annually in the Santa Clarita Valley Water Reports that are prepared for Castaic Lake Water Agency (CLWA), CLWA Santa Clarita Water Division, Los Angeles County Water Work District 36, Newhall County Water District, and Valencia Water Company. As you know, each annual report is provided to both the County of Los Angeles and the City of Santa Clarita. It is also my understanding that copies are routinely provided to SCOPE and other organizations. (For example, upon request, Newhall provided information in this regard to Ron Bottorff of the Friends of the Santa Clara River on March 27, 2007.)

In addition, because Newhall is processing the tentative map and other permits for Landmark Village, the first subdivision within Newhall Ranch Specific Plan, County staff asked that we provide an annual report indicating the amount of groundwater used in Los Angeles County for irrigation, consistent with the Specific Plan EIR Mitigation Measure 4.11-15. This mitigation measure contains the very same reporting/monitoring provision for groundwater use on the Newhall Ranch Specific Plan. We provided County staff with the requested letter report on April 7, 2009, a copy of which is already attached to your July 7, 2009 letter; as a result, you have been provided with a copy of that letter report. In addition, Newhall has provided annual reports for 2003 through 2008 in response to the County's request for such information in conjunction with Mitigation Measure 4.11-15. This information to the County also included a figure depicting the "Newhall Land Historically Irrigated Agricultural Areas within Los Angeles County." These annual reports and the accompanying figure also are enclosed with this letter.

In your letter (page 4), you acknowledge Newhall's letter report to the County, but claim it "does not comply with the quoted bolded text provision" of the Notice of Settlement. In making that claim, however, you appear to concede that we have more than complied with the reporting/monitoring provision, because the provision that is in "quoted bold text" is *not* the reporting/monitoring provision but rather the *separate* Section II.A.2(d) provision. The applicability of this provision is discussed further below.

**Section II.A.2(d) provision of Notice of Settlement**

Section II.A.2(d) of the Notice of Settlement provides as follows:

> (d) **On-Going Documentation.** Beginning with the filing of the first subdivision map allowing construction on the Specific Plan site and with the filing of each subsequent subdivision map allowing construction, Newhall, or its designee, shall provide documentation to the County of Los Angeles and Appellants identifying the specific portion(s) of irrigated farmland in the County proposed to be retired from irrigated production to make agricultural water available to serve the subdivision. This documentation shall include the location of the irrigated agricultural fields to be retired and the types of planted crops on such land for the baseline five-year period 1996-2000. As a condition of subdivision approval, Newhall, or its designee, shall provide proof to the County that the agricultural land has been retired prior to issuance of building permits for the subdivision. A copy of the information provided to the County shall also be provided to Appellants.

Section II.A.2(d) requires Newhall, or its designee, to provide documentation to the County identifying the specific portion(s) of irrigated farmland in the County of Los Angeles proposed to be retired from irrigated production to make agricultural water available to serve the first subdivision map on the Specific Plan site. This documentation must be provided to the County beginning with the filing of the first subdivision map allowing construction on the Specific Plan site. It also must include the location of the irrigated agricultural fields to be retired and the types of planted crops on such land for the baseline five-year period 1996-2000. A copy of the information provided to the County also must be provided to appellants in the Newhall Ranch litigation, including SCOPE.

Based on Section II.A.2(d), the first subdivision map allowing construction on the Specific Plan site is the filing of a final subdivision map -- the only map allowing construction in the Specific Plan site. As you know, however, there are no such maps in place at this time. Instead, for example, Newhall has begun to process tentative maps for Landmark Village, which is the first subdivision within the Newhall Ranch Specific Plan. As stated in your letter (page 4), the County has not yet completed processing or approval of Landmark Village's tentative map. As a result, the documentation required by Section II.A.2(d) has yet to be provided to the County, which makes sense because we do not yet know if the tentative map will be approved, or if it will be revised during the County's review process. Nonetheless, in light of your request,

Newhall has elected to provide the required documentation to the County, and that documentation is also enclosed with this letter. The documentation consists of the "Retired Irrigated Farmland" write-up, followed by the "Newhall Ranch Irrigated Farmland Proposed to be Retired" graphic, and related spreadsheet for the Landmark Village, Mission Village, and Homestead projects within the Newhall Ranch Specific Plan.

Based on the information provided, we do not believe that SCOPE has *any* legitimate basis for claiming, as it does on page 2 of its letter, that Newhall has "breached" the Notice of Settlement, and to then state that one million dollars is required to "cure" the so-called breach. Suffice it to say that the Notice of Settlement never contemplated that a party would claim a "breach" for not providing information that is otherwise already part of a land use regulatory process that ensures the information will be provided during such proceedings. Because Newhall believes it has complied with the terms of the Section II.A.2(d) of the Notice of Settlement, Newhall's filings with the Bankruptcy Court are also consistent with Newhall's position outlined in this letter.

Finally, we urge you to reconsider your threats (page 5) about pursuing remedies "through appropriate California administrative and judicial proceedings." There was no material breach, and you have no legitimate remedies.

Very truly yours,

Mark J. Dillon
of
Gatzke Dillon & Ballance LLP

MJD:kku

Enclosures

cc: Mark Subbotin
Timothy P. Hogan
H. Lawrence Webb
Robert E. Kalunian
Bruce Zirinsky
Edwin Harron
Debra Dandeneau
Mark D. Collins
John T. Buse