IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | : | Chapter 11 |
|---|---|---|
| In re: | : | |
| | : | Case No. 08-11111 (KJC) |
| LANDSOURCE COMMUNITIES | : | |
| DEVELOPMENT LLC, *et al.*, | : | (Jointly Administered) |
| | : | |
| Debtors. | : | **Objection Deadline: April 19, 2010 at 4:00 p.m. (ET)** |
| | : | **Hearing Date: May 19, 2010 at 3:30 p.m. (ET)** |
| | : | **Refers to Docket Nos. 1905, 1922 and 2185** |

**MOTION OF OLD ROAD VENTURE, LLC PURSUANT TO BANKRUPTCY RULE 3008 AND SECTION 502(j) OF THE BANKRUPTCY CODE FOR RECONSIDERATION OF THE COURT'S ORDER ON DEBTORS' FIFTH OMNIBUS OBJECTION (SUBSTANTIVE) TO CLAIMS**

Old Road Venture, LLC ("Old Road"), by and through its undersigned counsel, hereby files this Motion (the "Motion") Pursuant to Bankruptcy Rule 3008 and Section 502(j) of the Bankruptcy Code for Reconsideration of the Court's Order [Docket No. 2185] on Debtors' Fifth Omnibus Objection (Substantive) to Claims [Docket No. 1905] (the "Fifth Omnibus Objection"). Pursuant to Section 502(j) of title 11 of the United States Code §§ 101, et seq. (the "Bankruptcy Code") and Rule 3008 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), Old Road moves for reconsideration of the reduction of its claim and for reinstatement of its claim in the amount of $662,324.26. In support of its Motion, Old Road states as follows:

## BACKGROUND

1. On June 8, 2008 (the "Petition Date"), the above-captioned debtors (collectively, the "Debtors") filed voluntary petitions for relief under the Bankruptcy Code.

2. Prior to the Petition Date, debtor, The Newhall Land and Farming Company ("Newhall" or "Debtor") and Old Road were parties to a Purchase and Sale Agreement and Escrow Instruction dated February 12, 2003, as subsequently amended (hereinafter referred to as,

2463710

the "Agreement"), for the sale of approximately 11.39 net acres of real property located in the County of Los Angeles, State of California, commonly referred to as Valencia Spectrum, Phase I and more particularly described in the Agreement (the "Property"). A true and correct copy of the Agreement is attached hereto as Exhibit A. As part of the sale, the seller agreed to perform certain post-closing improvements to the Property. See e.g., Agreement at ¶ 6.2, Agreement, Eighth Amendment at ¶ 4a (setting forth Debtor's obligations post-closing) and Agreement, Eighth Amendment, Exhibit A (setting forth the schedule of post-closing work to be completed by Newhall).

3. Further, as part of the sale, Newhall agreed to perform certain improvements to the real estate surrounding the Property as agreed by the parties, as required by certain government agencies, and through their course of dealings.

4. Old Road timely filed a proof of claim in this matter because Newhall breached its obligations relating to the sale and development of the Property and surrounding areas. Old Road timely filed its proof of claim in the amount of $1,128,994.76 (the "Old Road Claim") attributable to monies owed by Newhall because it failed to satisfy its obligations to Old Road. A true and correct copy of the Old Road Claim, claim number 559, is attached hereto as Exhibit B.

5. As set forth in the declaration of Stephen Barnard (the "Barnard Declaration") attached hereto as Exhibit C and the declaration of Yukinori Yoshimura attached hereto as Exhibit D, both of which are incorporated as if fully set forth herein, on or about March 9, 2009, Old Road's agent Nikko Capital Corp. changed its mailing address from 1500 Quail Street, Suite 220, Newport Beach, CA 92660-2751 to 30448 Rancho Viejo Road, Suite 120, San Juan

Capistrano, CA 92675-1513 as part of its business operations. Barnard Declaration at ¶¶ 3-4; Yoshimura Declaration at ¶ 5.

6. Old Road did not anticipate and had no knowledge that Newhall would object to the Old Road Claim. Barnard Declaration at ¶ 5. When it filed the Old Road Claim, Old Road believed that its claim was valid and that Newhall would not move to modify the claim because Newhall had breached its obligations to Old Road. Barnard Declaration at ¶ 5. On June 22, 2009, however, Debtors filed its Fifth Omnibus Objection [Docket No. 1905] and filed corrective exhibits on June 22, 2009 [Docket No. 1906].

7. Debtors included in the Fifth Omnibus Objection an objection to the Old Road Claim. As set forth therein, Debtors sought to modify and reduce the Old Road Claim from $1,128,994.76 to $69,132.54.

8. Old Road was purportedly served with a copy of the Fifth Omnibus Objection upon Yuki Yoshimura c/o Nikko Capital Corp., 1500 Quail Street, Suite 220, Newport Beach, CA 92660-2751, by first-class mail. Docket No. 1972.

9. However, as set forth in the attached declarations, Old Road did not receive a copy of the Fifth Omnibus Objection prior to the hearing. See Barnard Declaration at ¶¶ 6-8; Yoshimura Declaration at ¶ 7. Old Road did not receive a copy of the Fifth Omnibus Objection notwithstanding that Old Road had properly filed a change of address request with the United States Post Office. Barnard Declaration at ¶ 3, ¶ 8; Yoshimura Declaration at ¶ 7.

10. Hence, no objection was filed against the Fifth Omnibus Objection, and the Old Road Claim was modified to $69,132.54 without contest. See Order Granting Debtors' Fifth Omnibus Objection (Substantive) to Claims [Docket No. 2185] and the Notice of Agenda of

Matters Scheduled for Hearing on July 24, 2009 at ¶ 19 [Docket No. 2166] (the "Order"), collectively attached as Exhibit E.

11. Old Road did not receive a copy of the Fifth Omnibus Objection or the Order that would have provided notice of the claim modification. Barnard Declaration at ¶ 3, ¶ 8; Yoshimura Declaration at ¶ 7. Had it been afforded the opportunity to review and respond to the Fifth Omnibus Objection prior to the hearing, Old Road would have filed a timely response establishing the merits of the Old Road Claim before the Court entered the Order modifying the claim. Barnard Declaration at ¶ 8.

12. Old Road first became aware of the modification of its claim on or about December 2, 2009 when it was advised by counsel to the Official Committee of Unsecured Creditors (the "Official Committee") that Debtors had objected to the Old Road Claim and that the claim has been modified. See Barnard Declaration at ¶ 7. Old Road, thereafter, retained the undersigned counsel who, following examination of the docket and underlying facts, filed this Motion.

13. The undersigned counsel has had preliminary discussions with counsel to the Debtors and counsel to the Official Committee regarding the issues, but has to date reached no stipulation on reinstating Old Road's claim. While those discussions will continue, and will hopefully be fruitful, Old Road brings this Motion to (i) preserve the issues, (ii) seek reconsideration of the Court's modification of the Old Road Claim and (iii) seek reinstatement of the Old Road Claim in the amount of $662,324.26.

## STANDARD OF REVIEW

14. Under Bankruptcy Rule 3008, the Bankruptcy Court may, at its discretion, reconsider an order allowing or disallowing a claim against the Debtors' estate. Further, 11

U.S.C. § 502(j) ("section 502(j)") permits an allowed or disallowed claim to be reconsidered according to the equities of the case "for cause." In re Lomas Financial Corp., 212 B.R. 46, 51 (Bankr. D.Del. 1997).

15. Section 502(j) does not define the term "cause" but a motion for reconsideration of a claim modified or disallowed as a result of the claimant's failure to appear or produce evidence is usually decided based on whether the claimant is able to show "excusable neglect." In re Inacom Corp., 2004 WL 2283599 * 2 (D.Del. Oct. 4, 2004) (holding that bankruptcy court should have granted creditor's motion to reconsider the allowance of its claim because creditor made a satisfactory showing of excusable neglect). Additional guidance is provided by Federal Rules of Civil Procedure ("Federal Rules") 60(b), made applicable to bankruptcy cases by Bankruptcy Rule 9024.

16. Rule 9024 states, "Rule 60 Fed. R. Civ. P. applies in cases under the Code except that (1) a motion ... for reconsideration of an order allowing or disallowing a claim against the estate entered without contest is not subject to the one year limitation prescribed in Rule 60(b)." Fed. R. Bankr. P. 9024. Federal Rule 60(b) states, "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect...." Fed. R. Civ. P. 60(b).

17. The term "excusable neglect" is not defined in the Bankruptcy Code, but the United States Supreme Court has held that "excusable" is determined based upon the equities "tak[ing] into account of all relevant circumstances surrounding the party's omission." See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993). Four (4) factors are to be considered in determining "excusable neglect" in the context of bankruptcy

2463710

proceedings. Pioneer Inv. Servs. Co., 507 U.S. at 397. These factors include: (1) the danger of prejudice to the debtor; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within reasonable control of the movant; and (4) whether the movant acted in good faith. Id.

18. The Pioneer factors were adopted and applied by the Third Circuit in In re O'Brien Environmental Energy, Inc., 188 F.3d 116, 125 (3d Cir. 1999); see also, In re Inacom Corp., 2004 WL 2283599 at * 2 (applying the O'Brien factors to reconsider claim).

19. In Pioneer, the Supreme Court recognized an inherent flaw with prior judicial interpretations of the statute that required that movant's failure to comply with a deadline be a result of circumstances "beyond its reasonable control." Id. at 388. Instead, the Supreme Court looked to the common and ordinary meaning of the word "neglect which is 'to give little attention or respect' to a matter, or closer to the point for our purposes, 'to leave undone or unattended to esp[ecially] through carelessness.'" Id. (quoting Webster's Ninth New Collegiate Dictionary, 791 (1983) (emphasis omitted)). Hence, the Supreme Court found the word to encompass both "simple, faultless omissions to act and, more commonly, omission caused by carelessness." Id. Therefore, under Pioneer, inadvertence or negligence may constitute excusable neglect.

## ARGUMENT

20. As set forth below, Old Road's failure to respond to the Fifth Omnibus Objection was the result of excusable neglect. Old Road's meritorious claim is based upon Newhall's failure to satisfy its obligations to Old Road made in connection with the sale of the Property. Pursuant to Rule 3001(f) of the Bankruptcy Rules, the Old Road Claim constitutes *prima facie* evidence of the validity and the amount of the claim. Fed. Bankr. R. 3001(f); see also, Juniper

6

2463710

Dev. Group v. Kahn (In re Hemingway Transp.), 993 F.2d 915, 925 (1st Cir. 1993)("The interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by substantial evidence."). In any event, as discussed herein, Old Road's claim is meritorious and the Court should disregard Debtors' objection because it is not supported by substantial evidence. See Fifth Omnibus Objection, Exhibit B at 7-8 (a copy of which is attached hereto as Exhibit F). Indeed, Debtors' objection is limited to a subjective interpretation of the parties' agreements with no supporting documentation attached. Id.

### A. Newhall breached its obligations to Old Road relating to the sale and development of the Property.

21. Under California law, "[u]nless a contract for the sale of land expressly states otherwise, the seller is under a duty to transfer a good and marketable title to the purchaser." Dennis v. Stanhope, No. B199291, 2008 WL 4560100, at * 7 (Cal. Ct. App. Oct. 14, 2008) (citing Dennis v. Overholtzer, 3 Cal. Rptr. 193 (Cal. Dist. Ct. App. 1960), disapproved on unrelated grounds in Ellis v. Mihelis, 32 Cal. Rptr. 415 (Cal. 1963)).

22. As a condition to the sale of the Property, Newhall agreed to perform certain improvements to the Property and surrounding area. Barnard Declaration at ¶¶ 14-15; Agreement, Eighth Amendment ¶ 4a. Newhall agreed to perform certain post-closing improvements to the Property, such as post-closing grading, storm drain work and installation and relocation of certain utilities. Barnard Declaration at ¶ 14; Agreement, Eighth Amendment at Exhibit A (setting forth a schedule of Newhall's post-closing work). Newhall was to develop real estate surrounding the Property pursuant to agreement of the parties. Barnard Declaration at ¶ 15. Newhall failed to satisfy its obligations to Old Road and as a result, Old Road was required to perform Newhall's work or engage other professionals, such as architects, engineers and trade contractors to perform the work required to be completed by Newhall.

7

1. **Newhall failed to remove an easement granted to the State of California, Department of Transportation ("Caltrans") in breach of the Agreement.**

23. The Agreement provides that Newhall would transfer the Property subject to certain encumbrances, except those that were not specifically approved by Old Road. See e.g., Agreement at Exhibit D and Barnard Declaration at ¶¶ 16-17. During the negotiations for the sale, Newhall provided Old Road with copies of preliminary title reports setting forth title defects. Barnard Declaration at ¶ 16. Soon after receipt of an early preliminary title report, Mr. Barnard objected certain encumbrances to the title, including an easement granted to Caltrans (the "Caltrans Easement"). Id. Following Old Road's objection, Newhall, through its counsel Clifford Chance, represented that the Caltrans Easement would be abandoned or removed by subsequent conveyance when Newhall completed its storm drain work. Id.

24. Newhall, as part of its obligations under the Agreement, was to perform certain storm draining work. Id. This work, originally to be completed pre-closing (Agreement at ¶ 6.1B), became work to be completed by Newhall following closing. Compare, Agreement at 6.1B and Agreement, Eighth Amendment at ¶ 4a. While this work may have (arguably) alleviated the need for Caltrans's easement on the Property, performance of the work alone did not result in the termination of the easement. Because the easement was recorded, it must be removed upon a subsequent filing with the recorder's office. Newhall was required to but failed to remove the Caltrans Easement and the easement remains a cloud on title in breach of the Agreement.

25. Initially, Old Road received a proposal that the cost to remove the easement would be $467,000. See Old Road Claim at Item 2, a copy of which is attached hereto as Exhibit B. Old Road, however, continued to negotiate the price of removal and Old Road had the

Caltrans Easement appraised to determine its value. Barnard Declaration at ¶ 17. The Caltrans Easement was appraised at $100,000 and Caltrans agreed to remove the easement for this price. Barnard Declaration at Id. While Old Road continues to negotiate with Caltrans to remove the easement, Old Road anticipates that it will be out-of-pocket in excess of $103,500 to extinguish the Caltrans Easement. Id.

      **2.    Newhall failed to fulfill its post-closing obligations to perform its underground utilities and site related work.**

26. As part of its post-closing obligations to Old Road, Newhall was required to install and relocate certain utilities. Barnard Declaration ¶¶ 18-20; see e.g., Agreement, Eighth Amendment at ¶ 4a and Exhibit A at Item 13 (Utility Rerouting). As set forth in the Barnard Declaration in greater detail, during the completion of road work, it was determined that a telephone Service Area Interface ("SAI") needed to be relocated. See Barnard Declaration at ¶¶ 19-20. The Debtor was required to perform this work in accordance with its post-closing obligations, but failed to complete the work. As a result, Old Road relocated the SAI at a cost of $41,935.72 and therefore, Old Road maintains that this item is the responsibility of the Debtor. See Old Road Claim at Item No. 1.

27. Newhall was also responsible for all "off-site" street work, including road widening. Barnard Declaration ¶ 21; see e.g., Agreement, Eighth Amendment at ¶ 4a and Exhibit A at Item 22 (Street Improvements). Newhall's master plot plan also indicated the need for such work. See Barnard Declaration at ¶ 21. Newhall failed to complete this work. As such, Old Road demands $60,248.50 for work to create new driveway aprons and radii relating to the road widening project for which Newhall was responsible. See Old Road Claim at Item No. 3.

9
2463710

### 3. Newhall failed to perform its post-closing obligations to perform traffic mitigation work.

28. During the original approval of the parcel map, a section of the work to be performed was certain off-site traffic work that was to be performed by the Debtor. See Barnard Declaration at ¶¶ 22-24; see e.g., Agreement, Eighth Amendment at ¶ 4a and Exhibit A at Item 7 (Utility Coordination/Detour Plan). When the County provided a revised parcel map, the County imposed upon Old Road the requirement for a temporary traffic plan and reconfiguring of intersections adjacent to the Property because the Debtor had, to date, failed to perform its work on the roads that would have alleviated the need for any of the temporary work. See Barnard Declaration at ¶ 23. Accordingly, the work required of Old Road was merely a temporary fix of a condition for which the Debtor was fully responsible. Id. Indeed, by email dated February 22, 2009, from Barbara Fortman, a Debtor representative, to Leonard Lepera, an Old Road representative, it is clear that the temporary work would not have been necessary but for the Debtor's failure to complete the road work in a timely fashion. Id.

29. Under the circumstances, the Debtor is appropriately responsible for the additional traffic mitigation costs including the work and the engineering design associated with it. See Barnard Declaration at ¶ 24. Old Road, therefore, claims $299,750.00 for interim traffic work caused by the Debtor's failure to complete the traffic work that was required by Newhall's master plan. See Old Road Claim at Item No. 7. Old Road also claims $80,500.00 in related engineering costs expended to develop the traffic mitigation plan. See Old Road Claim at Item No. 10.

### 4. Newhall is obligated to pay punch list work in accordance with its post-closing obligations.

30. Newhall was required to perform certain street improvements pursuant to Newhall's master plot plan. See Barnard Declaration at ¶¶ 25-27; see e.g., Agreement, Eighth Amendment at ¶ 4a and Exhibit A at Item 22 (Street Improvements). The Debtor did not object that the repairs were not necessary or that the amounts were unreasonable. Instead, the Debtor's only asserted reason for objecting to the claimed amount was that "Claimant's contractors damaged the sidewalks during construction. Thus, any repairs should be the responsibility of the claimant." See Fifth Omnibus Objection (relevant portion thereof is attached hereto as Exhibit F). Old Road denies that any of its contractors damaged the sidewalks and other items being repaired and asserts that the reasons for the damage were the Debtor's poor workmanship, improper work or its failure to complete work as required by the Agreement. See Barnard Declaration at ¶ 26.

31. Old Road initially sought $30,428.00 from the Debtor as the cost for repairing the Debtor's offsite work. See Old Road Claim at Item No. 9. On or about December 1, 2008, however, Old Road contracted with Seacon Construction, Inc. to perform the repair work. Barnard Declaration at ¶ 27. The revised contract for the requested work specified a price of $7,257.50 rather than the $30,428.00, as originally estimated. Id. Accordingly, Old Road seeks allowance of a claim in the amount of $7,257.50 for this work.

### B. The Order modifying the Old Road Claim should be vacated because Old Road's failure to object prior to the hearing on the Fifth Omnibus Objection is excusable.

32. Upon review of the factors set forth in Pioneer, such evaluation of the circumstances here requires a reinstatement of the Old Road Claim because: (i) the Debtors will not be prejudiced by granting of this Motion; (ii) reconsideration will not have an adverse impact

11

2463710

upon judicial proceedings; (iii) the reason for the delay in responding to the Fifth Omnibus Objection was excusable; and (iv) Old Road has acted in good faith.

### 1. The Debtors will not be prejudiced by granting this Motion.

33. The United States Court of Appeals for the Third Circuit has recognized that "prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence." In re O'Brien Envtl. Energy, Inc., 188 F.3d at127. Relevant factors for analyzing prejudice include: (i) whether the debtor was surprised or caught unaware of the assertion of a claim it had not anticipated; (ii) whether payment of the claim would force the return of funds already paid under a confirmed plan or affect distribution to creditors; (iii) whether payment of the claim would jeopardize the success of the debtor's reorganization; (iv) whether allowance of the claim would negatively impact the debtor (actually or legally); and (v) whether allowance would open the floodgates to other claims. Id. at 126-28.

34. When evaluating these factors, Judge Sleet recently concluded that none of the "prejudice" factors enumerated above served as potential prejudice to the debtor. In re Inacom Corp., 2004 WL 2283599 at * 4. In In re Inacom Corp., like here, the Court was faced with a motion to reconsider the allowance of a creditor's claim. In re Inacom Corp., 2004 WL 2283599 at * 1-2. The creditor, Pro-Tec Services, LLC ("Pro Tec") timely filed its proof of claim with debtor's claims agent. Id. at *1. The claim was stamped as timely received and numbered. Id. The debtor thereafter filed its objection contesting approximately 412 claims spread over 96 pages of exhibits. Id. Included in the objection was an objection to Pro Tec's claim. Id.

35. Unlike the circumstances here, it was undisputed that Inacom's objection was received. In re Inacom Corp., 2004 WL 2283599 at *2. The objection was served on Pro Tec's counsel who did not respond to the objection and the Court then entered an Order disallowing

12

Pro Tec's claim. Id. at *1. Almost three years later, Pro Tec learned from the debtor's claims agent that its claim had been disallowed. In re Inacom Corp., 2004 WL 2283599 at *2. A few months later, in April 2004, Pro Tec filed its Motion for Reconsideration. Id.

36. In considering all of the O'Brien factors, the Court determined that Inacom would not be prejudiced by reconsideration of Pro Tec's claim. In re Inacom Corp., 2004 WL 2283599 at *6. Specifically, the Court stated:

> Inacom was not surprised by, or unaware of, the [Pro Tec] Claim. Inacom is still litigating the value of many of its claims, and still litigating claims objections. Moreover, Inacom has not shown through evidence in the record that it will be adversely impacted if Pro Tec's claim is reconsidered. Finally, Inacom has not alleged that any other creditor whose motion was denied by default has filed a motion for reconsideration. The court therefore, finds that there is no prejudice to Inacom.

In re Inacom Corp., 2004 WL 2283599 at *6.

37. This Court should similarly find no prejudice to the Debtors. With regard to the first factor, the Debtors cannot have been surprised or caught unaware by Old Road's claim. Old Road timely filed its proof of claim and Old Road attached supporting documentation to its proof of claim outlining the basis for the claim. Newhall breached the parties' agreement related to the sale of the Property and following Newhall's breach, Old Road timely filed the Old Road Claim. The claim was stamped as received and numbered by Newhall's claims agent. The Old Road Claim remained on file before it was modified by default on July 24, 2009.

38. The supporting documentation indicates that Old Road would likely succeed on the merits of its claim. The Old Road Claim was the result of a purported breach of the Agreement for the sale of the Property and related improvements between the parties and the Agreement was negotiated at arm's length. Old Road asserts, as argued herein, that Newhall is in breach because Newhall was required 1) to provide the Property in a condition as agreed by

13

Old Road and 2) to perform certain post-closing obligations. See supra, Argument, Section A, 1-4. Old Road's claim is based upon Newhall's failure to satisfy its obligations.

39. The Agreement was the result of substantial negotiations and amendments. While the parties may disagree on the scope of Newhall's obligations, Debtors certainly cannot be surprised by the Old Road Claim because Newhall's own conduct (i.e., Newhall's failure to perform in accordance with the Agreement and perform work as required by its master plan) precipitated the filing of the Old Road Claim.

40. The second factor requires the Court to determine whether the payment of the Old Road Claim would require the return of funds already paid under a confirmed plan. The resolution of the Old Road Claim does not impact the recovery being paid to unsecured creditors because Debtors are still litigating the value of many claims. A review of the docket does not reveal that any claims have been paid or any distributions have been made to unsecured creditors. As a result, allowance of the Old Road Claim will not force the return of funds already paid under a confirmed plan. Moreover, the administration of the estates is ongoing and the Debtors are engaged in ongoing litigation relating to contested claims and adversary proceedings that may bring additional funds into the estates. Therefore, any funds creditors may anticipate receiving continue to be in flux.

41. The third factor is whether payment of the claim would jeopardize the success of the Debtors' reorganization. There is no evidence that allowance of Old Road's claim would jeopardize the Debtors' reorganization. Indeed the plan has been confirmed and the reorganization is complete.

42. With regard to the fourth factor, reinstating the Old Road Claim for the amount demanded herein would not adversely impact the Debtors, actually or legally. The Debtors

14

2463710

invested minimal time in including Old Road into the Fifth Omnibus Objection. If the Old Road Claim is reinstated, the Debtors' legal position is preserved. It may object to the Old Road Claim on any applicable grounds and have a determination of the claim made on the merits. Thus, while there is value in finality in judicial proceedings, the Court of Appeals for the Third Circuit stated that "the cost of enforcing a judgment later vacated and the delay in realizing satisfaction on a claim 'rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default judgment.'" Feliciano v. Reliant Tooling Co., 691 F.2d 653 (3d Cir. 1982) (internal citations omitted). The O'Brien court highlighted the Feliciano decision in noting that "prejudice is not merely the loss of an advantageous position, but must be something more closely tied to the merits of the issue." In re O'Brien Envtl. Energy, Inc., 188 F.3d at 127. In sum, finality in judicial proceedings is not sufficient prejudice to refuse reinstatement of the Old Road Claim.

43. The last factor is whether allowance of the claim would open the floodgates to other future claims. In In re Inacom Corp., while the Bankruptcy Court determined that given the massive number of claims and objections that had already been filed in the case, allowance of reconsideration of the creditor's claim *would* open the floodgates to additional motions for reconsideration, the District Court disagreed, noting that the debtor had not provided evidence that any other creditor had filed a motion for reconsideration. In re Inacom Corp., 2004 WL 2283599 at *6. Similarly, no other creditor has filed a motion to reconsider in this case while the resolution of contested claims is ongoing.

### 2. Reconsideration will not adversely impact judicial proceedings.

44. In the Inacom case, the creditor, Pro Tec, did not file its motion for reconsideration until two years and ten months after the omnibus objection was filed, almost two

years and nine months after the Order was served, and nine months after the Plan was confirmed. Id. The Court determined that the length of delay did not adversely impact the judicial proceedings because the debtor was still litigating disputed claims and distributions to creditors would be based on the outcome of these litigation disputes. In re Inacom Corp., 2004 WL 2283599 at *7. The delay here is almost non-existent as compared to the delay in Inacom. Soon after Old Road was notified that its claim had been modified, Old Road took the necessary steps to retain counsel and investigate the merits of Debtor's modification of the Old Road Claim. Upon further review of its claim, Old Road reviewed Debtors' objection and its own records and reduced its claim accordingly prior to filing this Motion.

45. Further, Debtors are still resolving disputes that may impact distribution of the estates funds. The Debtors and other creditors are engaged ongoing contested claim litigation and Old Road contends that resolution of its claim should take a similar course. Thus, the final distribution of funds to creditors is dependent on the outcome of these proceedings, and Old Road's delay in filing the Motion after becoming aware of the issue will not negatively impact the judicial proceedings.

### 3. The reason for the delay was that the Old Road did not receive notice of Debtor's objection.

46. The concept of excusable neglect anticipates neglect on the party seeking to be excused. Pioneer Inv. Servs. Co., 507 U.S. at 388; In re O'Brien Envtl. Energy, Inc., 188 F.3d at 128; In re Inacom Corp., 2004 WL 2283599 at *7. The cause of the delay cannot be easily traced to Old Road. Old Road did not receive a copy of the Fifth Omnibus Objection prior to the hearing on Debtor's Fifth Omnibus Objection although Debtors may have served a copy upon Old Road at the address listed on its proof of claim. Barnard Declaration at ¶¶ 6-8; Yoshimura Declaration at ¶ 7. Old Road also did not receive a copy of the Order. Barnard Declaration at

2463710

¶ 8; Yoshimura Declaration at ¶ 7. In hindsight, Old Road could have provided notice to the Debtors that it was changing its mailing address after Old Road filed its proof of claim. Old Road, arguably, could be negligent for failing to provide this notice. Old Road, however, had no way of knowing – and did not know – that Debtors would object to the Old Road Claim. Barnard Declaration at ¶ 5. In Inacom Corp., the Court concluded that even though the creditor was responsible for the cause of the delay, such a delay was "excusable" when the creditor's attorney failed to file a timely objection. See In re Inacom Corp., 2004 WL 2283599 at *8. In In re Inacom Corp., counsel to the creditor actually received the objection, read it, but did not timely object. In re Inacom Corp. at *7. At best, the delay in responding to the Fifth Omnibus Objection was based on Old Road's inadvertence in failing to receive actual notice to Debtors' objection. Based on the facts of the case and the equitable nature of excusable neglect, the Court should reconsider Old Road's claim.

**D.      Old Road has acted in good faith at all times.**

47.    Old Road's failure to timely file an objection to the Fifth Omnibus Objection was at best a result of the excusable neglect of Old Road to update its address with the Debtors although it did so with the United States Post Service. See Barnard Declaration at ¶ 3, ¶ 8; Yoshimura Declaration at ¶ 7. Old Road assumed that all mail would be forwarded by the United States Postal Service, but for some unexplained reason this did not happen.

48.    The Supreme Court has recognized in Pioneer that courts may grant relief in cases where the creditor's representatives were negligent. Pioneer Inv. Servs. Co., 507 U.S. at 397. While Old Road may have neglected to advise Debtors of its change of address, Old Road acted diligently when it received notice of the modification of its claim through the counsel to the

17

Official Committee. Under the circumstances, such a failure to respond should constitute excusable neglect and the Old Road Claim should be decided on the merits.

**WHEREFORE**, for the foregoing reasons, Old Road respectfully requests that (i) the Order Granting Debtors' Fifth Omnibus Objection (Substantive) to Claims dated July 24, 2009, be vacated with respect to the modification of Old Road's claim; (ii) that the Old Road Claim be reinstated and allowed in the amount of $662,324.26 and (iii) Old Road be provided other further relief as adequate and just.

Dated: April 1, 2010

**MORRIS JAMES LLP**

_____
Carl N. Kunz, III (DE Bar No. 3201)
Eric J. Monzo (DE Bar No. 5214)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: ckunz@morrisjames.com
emonzo@morrisjames.com

*Attorneys for Old Road Venture, LLC*

2463710