# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | CHAPTER 11 |
| | : | |
| **LANDSOURCE COMMUNITIES**, | : | |
| **DEVELOPMENT LLC, et al.** | : | |
| | : | Case No. 08-11111 (KJC) |
| Debtors | : | (Re: D.I. 1905, 2034, 2096, 2818, 2951) |

# MEMORANDUM[1]

## BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

### Procedural Background and Undisputed Facts

On June 8, 2008, LandSource Communities Development, LLC, and affiliated entities

(including The Newhall Land and Farming Company (A California Limited Partnership)

("Newhall")), each filed a voluntary chapter 11 petition.[2]  In November 2008, Berco Oil

Company North Tapo Lease, LLC ("Berco") filed a proof of claim (claim no. 678) (the "Berco

Claim") in the amount of $800,000 against Newhall's estate.[3]  The Berco Claim arises out of a

---

[1]This Memorandum constitutes the findings of fact and conclusions of law, required by Fed.R.Bankr.P. 7052.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a).  This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(B) and (M).

[2]The related entities that filed chapter 11 petitions are Landsource Communities Development LLC, California Land Company, Friendswood Development Company LLC, Kings Wood Development Company, L.C., LandSource Communities, LandSource Communities Development Sub LLC, LandSource Holding Company, LLC, Lennar Bressi Ranch Venture, LLC, Lennar Land Partners II, Lennar Mare Island, LLC, Lennar Moorpark, LLC, Lennar Stevenson Holdings, LLC, LNR-Lennar Washington Square, LLC, LSC Associates, LLC, NWHL GP LLC, The Newhall Land and Farming Company (A California Limited Partnership), The Newhall Land and Farming Company, Southwest Communities Development LLC, Stevenson Ranch Venture LLC, Tournament Players Club at Valencia , LLC, Valencia Corporation, and Valencia Realty Company (jointly, the "Debtors").

[3]The Berco Claim originally asserted that $200,000 of the claim amount was a priority claim for taxes pursuant to Bankruptcy Code §507(a)(8), but pursuant to the Order Granting Debtors' Fourth Omnibus Objection (Non-Substantive) to Misclassified Claims dated July 24, 2009 (D.I. 2187), the Berco Claim was reclassified as a general unsecured claim.

lease dated August 17, 2005 in which Newhall leased to Berco (the "Lease") the rights to certain minerals, such as oil, gas, and other hydrocarbons, on parcels of land owned by Newhall in Ventura County, California (the "Leased Premises").  Berco alleges that Newhall is obligated to indemnify and reimburse Berco for (i) costs to clean up an oil spill on the Leased Premises caused by a pipe leak that occurred on or about July 28, 2008,[4] and (ii) monies paid for production/property taxes related to the Leased Premises.

On May 19, 2009, Barclays Bank PLC, as administrative agent under the Super-Priority Debtor-In-Possession First Lien Credit Agreement, filed the Second Amended Joint Chapter 11 Plan of Reorganization for LandSource Communities Development LLC and each of its Affiliated Debtors (the "Plan") (D.I. 1685). Pursuant to Article XIII(A) of the Plan and the Second Plan Supplement (D.I. 1895), the Lease was to be assumed as of the Plan's effective date, subject to a cure amount claim of $0.  On July 6, 2009, Berco objected to the cure amount (D.I. 2034) (the "Berco Cure Amount Objection"), claiming that the cure amount owed to Berco under the terms of the Lease was $800,000, *i.e.*, the same amount as the Berco Claim.[5]

On June 23, 2009, the Debtors filed the Fifth Omnibus Objection (Substantive) to Claims (the "Claim Objection") (D.I. 1905), claiming, *inter alia*, that the Berco Claim should be disallowed because (i) the Lease provides that Berco is responsible for the cost to clean up any oil spill or release, and (ii)  Newhall has paid all property taxes that are its responsibility in full and, further, that any share of production/royalty taxes owed by Newhall were withheld from

---

[4]The parties refer to the July 28, 2008 oil spill as the "Environmental Incident."

[5]At the Plan confirmation hearing on July 20, 2009, Berco's counsel advised the Court that the Berco Cure Amount Objection would be resolved post-confirmation.  Tr. 7/20/2009 at 62:4-10 (D.I. 2219).

royalty payments owed by Berco to Newhall and paid by Berco to the taxing authorities.  (*See* D.I. 1905, Ex. D).  On July 13, 2009, Berco filed a response in opposition to the Claim Objection (D.I. 2096).

On July 20, 2009, the Court entered an order confirming the Plan (the "Confirmation Order") (D.I. 2151).  The effective date of the Plan was July 31, 2009.

On October 2, 2009, the Court entered an Agreed Scheduling Order (D.I. 2468) for the Berco "Contested Matter," which was amended by Order dated February 5, 2010 (D.I. 2618), setting deadlines for discovery, mediation, and dispositive motions.[6]  The parties participated in mediation, but were unable to reach an agreement.  On May 28, 2010, Newhall filed a Motion for Summary Judgment with Respect to the Alleged Cure Claim of Berco Oil Company North Tapo Lease, LLC (the "Summary Judgment Motion") (D.I. 2818, 2819).   Berco filed a response opposing the Summary Judgment Motion (D.I. 2950) and filed an evidentiary objection (D.I. 2951)  to the declaration and attached exhibits filed by Newhall in support of the Summary Judgment Motion.

On August 6, 2010, Newhall filed a reply (D.I. 2989) and a response to Berco's evidentiary objection (D.I. 2990).

### Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

---

[6]This Memorandum Opinion addresses the entire "Contested Matter" between the parties: *i.e.,* both the Berco Cure Amount Objection and the Claim Objection.

fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  At the

summary judgment stage, the court's function is not to weigh the evidence and determine the

truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the burden of establishing the absence of a genuine dispute as to

a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  ("[A] party seeking

summary judgment always bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact.").  When the nonmoving party bears

the burden of persuasion at trial, the moving party "may meet its burden . . . by showing that the

nonmoving party's evidence is insufficient to carry that burden."  *Foulk v. Donjon Marine Co.,

Inc.,* 144 F.3d 252, 258 n.5 (3d Cir. 1998) (quoting *Wetzel v. Tucker,* 139 F.3d 380, 383 n.2 (3d

Cir. 1998)).

Once the moving party has carried its initial burden, the opposing party "must do more

than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Summary judgment

cannot be avoided by introducing only "a mere scintilla of evidence," *Sarko v. Penn-Del

Directory Co.,* 968 F.Supp. 1026, 1031 (E.D.Pa. 1997) (citation omitted), *aff'd* 189 F.3d 464 (3d

Cir. 1999), or by relying on "conclusory allegations, improbable inferences and unsupported

speculation." *J.Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245,

1251 (1st Cir.  1996).  "Brash conjecture coupled with earnest hope that something concrete will

4

materialize, is insufficient to block summary judgment." *Id., quoting Dow v. United Bhd. of Carpenters*, 1 F.3d 56, 58 (1st Cir.1993).

Substantive law determines which facts are material; only disputes over facts that might affect the outcome of the suit will preclude summary judgment. *Anderson,* 477 U.S. at 248. Moreover, a dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id. See also Delta Mills, Inc. v. GMAC Comm. Fin., LLC (In re Delta Mills, Inc.)*, 404 B.R. 95, 105 (Bankr. D. Del. 2009) (An issue is genuine "when reasonable minds could disagree on the result."). The Court must resolve all doubts and consider the evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255 ("the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

### Discussion

(1)   Evidentiary Objections to Summary Judgment Motion Exhibits

Newhall supported its Summary Judgment Motion with documents provided through the declaration of Andrew Irgens, an attorney for Newhall (D.I. 2820).  Berco objected to the documents, arguing that (i) the declaration does not set forth adequate facts to find that the declarant has sufficient knowledge about the attached documents to authenticate the documents, (ii) the documents may include statements that are hearsay, and (iii) Newhall did not request the Court to take judicial notice of any documents.

Newhall filed a response to Berco's evidentiary objection (D.I. 2990) which (i) asks the Court to take judicial notice of Exhibits A through M; (ii) disputes Berco's objection to the authenticity of Exhibit N, which is a copy of the Lease, identical to the one attached to Berco's

Claim, and (iii) attaches an affidavit of Cris Perez, Newhall's Regulatory Compliance Manager,

(the "Perez Affidavit") to identify and authenticate the documents marked as Exhibits N through

Z, as well as new exhibits AA, BB and CC.[7]

First, I will overrule Berco's objection to copies of pleadings, orders, and excerpts from

the Plan in this bankruptcy case, which are attached as Exhibits A through M to the Irgens

Affidavit. I will take judicial notice of Exhibits A through M pursuant to Federal Rule of

Evidence 201, which provides in pertinent part:

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either
> (1) generally known within the territorial jurisdiction of the trial court or (2) capable of
> accurate and ready determination by resort to sources whose accuracy cannot reasonably
> be questioned.

Fed.R.Evid. 201(b). *See In re Indian Palms Assoc., Ltd.*, 61 F.3d 197, 205 (3d Cir. 1995) (A

court may take judicial notice of an adjudicative fact under Federal Rule of Evidence 201 that is

not subject to reasonable dispute "as long as it is not unfair to a party to do so and does not

undermine the trial court's fact finding authority.").  It is not unusual for a Court to take judicial

notice of its docket.  *See Meyers v. Herrernan,* 740 F.Supp.2d 637, 640 n.4 (D.Del. 2010) ("The

court may take judicial notice of documents from the docket of a bankruptcy proceeding."),

*Official Comm. Of Asbestos Claimants v. Asbestos Prop. Damage Comm. (In re Federal-Mogul,*

*Inc.),* 330 B.R. 133, 136 (D.Del. 2005) (same), *In re Int'l Wireless Commc'n Holdings, Inc.,* No.

98-2007, 1999 WL 33483582, *2 (Bankr.D.Del. 1999) (The court took judicial notice of the

docket and claims register).

---

[7]Exhibit N is a copy of the Lease.  Exhibits O through Z include correspondence about the Lease,
correspondence and documents about the Environmental Incident, and an affidavit and other business
records regarding tax obligations and  payments.  New Exhibits AA, BB and CC (to which no new
objection was raised) include more business records regarding tax payments to Ventura County and maps
regarding (i) oil and gas seeps, and (ii) oil fields and wells in the Los Angeles Quadrangle.

6

Second, Berco's objection to Exhibits N through Z, based on the declarant's lack of personal knowledge, will also be overruled due to Newhall's substitution of the affidavit of Chris Perez.  Rule 56(c)(4) provides:

> An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c)(4).  In the affidavit, Mr. Perez states that his duties include "coordinating with government agencies regarding energy-related issues and overseeing oil remediation and lease operations."  Perez's affidavit also states that he had direct interactions with Berco regarding the Environmental Incident and was familiar with the documents and correspondence related to the Environmental Incident at the time the documents were originally created and exchanged.  Mr. Perez's affidavit serves to authenticate the documents as required by Fed.R.Evid. 901.  "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. [The Third Circuit Court of Appeals has] repeatedly noted that '[t]he burden of proof for authentication is slight.'" *Lexington Ins. Co. v. Western Penna. Hosp.*, 423 F.3d 318, 328 (3d Cir. 2005) quoting *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 928 (3d Cir.1985).

Finally, I will also overrule Berco's objection based upon possible hearsay within Exhibits N through  Z. The Perez affidavit sufficiently supports a business records exception to hearsay.  Fed.R.Evid. 803(6).  *Syracuse v. Orion Refining Corp. (In re Orion Refining Corp.)*, 397 B.R. 245, 251 (Bankr.D.Del. 2008) (Documents attached to a declaration by the records custodian were business records under Fed.R.Evid. 803(6) for considering a motion for partial

summary judgment).

Accordingly, Berco's evidentiary objections are overruled.

(2)     Objection to claim for reimbursement of Environmental Incident clean-up costs

The Berco Claim includes a claim for reimbursement or indemnification of approximately $600,000 for clean-up of the Leased Premises due to the Environmental Incident. Berco also asserts that Newhall's failure to reimburse Berco for the costs incurred in connection with the Environmental Incident is a default under the Lease, which must be cured if the Lease is to be assumed.

Newhall argues that Berco has no claim for the costs incurred in connection with the Environmental Incident because the Lease provisions demonstrate that Berco accepted the equipment, including pipelines, on the Leased Premises on an "as-is, where-is" basis, and agreed to maintain, repair and replace the pipeline and other existing facilities at its sole cost and expense.  In response, Berco argues that it has a valid indemnification or contribution claim against Newhall based on the following: (i)  notwithstanding the "as is" provisions, Newhall had a duty to disclose known defects that were not readily discernable by Berco, (ii) Newhall should reimburse Berco's clean-up costs related to the attempted clean-up of "legacy oil" that naturally seeps from the earth and was not attributable to any conduct or negligence of Berco, (iii) Berco is entitled to be reimbursed for the clean-up costs from the "Lease Performance, Abandonment and Restoration Fund," (iv) Newhall is responsible for the clean-up costs under CERCLA, and (v) Berco should be reimbursed for the clean-up costs from Newhall's insurance policies covering the Leased Premises.

(a)     Burden of Proof

8

The burden of proof as to the validity of the claim shifts between parties. *In re Sea Containers, Ltd.*, 2009 WL 2208128, *2 (Bankr.D.Del. July 22, 2009) citing *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). The shifting burdens of proof are described in *Allegheny Int'l* as follows:

> Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is "*prima facie*" valid. In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. It is often said that the objector must produce evidence equal in force to the *prima facie* case....In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence....The burden of persuasion is always on the claimant.

*Allegheny Int'l*, 954 F.2d at 173-74 (citations omitted). Newhall, relying on language of the Lease, has met its obligation to go forward to refute the bases alleged in support of the Berco Claim, as well as the Berco Cure Amount Objection. The burden now reverts back to Berco to prove the validity of its claim. In the summary judgment context, this means that Newhall (as the moving party) must show that Berco's evidence is insufficient to prove its claim; Berco then must show, by more than a mere scintilla of evidence, that there are material facts for trial.

(b)     The Lease

California's Civil Code provides that '[t]he language of a contract governs its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code §1638.[8] An elementary rule of construction, applicable to oil leases and other contracts, is

---

[8]The Lease contains no choice of law provision, however, both parties agree that California law is applicable. A choice of law analysis using Delaware's "most significant relationship" test of the RESTATEMENT (SECOND) OF CONFLICTS §188 would yield the same result. *Weiss v. Northwest*

that "the function of the court is not to make a new lease for the parties but to interpret the lease which they have made 'without regard to its wisdom or folly.'" *Renner v. Huntington-Hawthorne Oil & Gas Co.*, 39 Cal.2d 93, 101, 244 P.2d 895, 900 (Cal. 1952) quoting *Hill v. General Petroleum Corp.*, 128 Cal.App. 284, 294, 16 P.2d 1035 (Cal.Ct.App. 1932).   When the meaning of an oil and gas lease does not turn on the credibility of extrinsic evidence, interpretation is a question of law.  *San Mateo Cmty. College Dist. v. Half Moon Bay L.P.*, 65 Cal.App.4th 401, 409 76 Cal. Rptr.2d 287, 291 (Cal.Ct. App. 1998).

The Lease provides that Berco is responsible for damages to the Leased Premises while it is operating thereon pursuant to Section Seven, which provides in pertinent part:

**Section Seven: Lessee's Operations**

. . . .

(b)     Lessee shall be liable to Lessor and to Lessor's tenants and Lessee agrees to pay for all damages to the Leased Premises . . . caused by or arising out of Lessee's operations (**including, but not limited to fires or overflow or escape of oil**, gas or water) on the Leased Premise, even though such damages are not intentional and do not result from negligence.

. . . .

(e)     Lessee shall comply with all rules, regulations and requirements of all federal, state, county and municipal agencies concerning operations on the Leased Premises, air and water quality and the environment.

(Perez Aff., Ex. N) (emphasis added).   Berco argues that Section Ten(f) of the Lease limits its clean-up responsibilities to damages caused by its negligence or wrongful act, and the pipeline break was not the result of Berco's actions.  Section Ten(f) provides:

**Section Ten: Removal of Improvement and Equipment, Abandonment, Clean-up and Restoration.**

---

*Broadcasting, Inc.,* 140 F.Supp.2d 336, 342 (D.Del. 2001), *Hionis Int'l Enter., Inc. v. Tandy Corp.*, 867 F.Supp. 268, 271 (D.Del. 1994).

. . . .

(f)    Lessee shall be responsible for the clean-up and restoration of the surface and subsurface of the Leased Premises only insofar as (i) required under the preceding subsections of this Section Ten [regarding, *inter alia*, plugging or abandoning wells], or (ii) with respect to conditions or substances within the Leased Premises which result from Lessee's breach of any obligation of Lessee under this Lease or from any negligent or otherwise wrongful act or omission of Lessee.

(Perez Aff., Ex. N). This section does not limit Berco's obligation to damages arising from its negligence or wrongful acts; it also imposes responsibility to clean-up substances arising from a breach of any obligation under the Lease - - which would include Berco's obligation under Section Seven to be responsible for any damages caused by "overflow or escape of oil."

(c)    <u>Discussion: Berco's Arguments.</u>

Notwithstanding the foregoing Lease language, Berco asserts that other acts or omissions of Newhall or other applicable laws support its claim for reimbursement or contribution of the Environmental Incident clean-up costs.

(i)    <u>Berco leased the Leased Premises  "as-is" "where-is" and "without warranty or representation."</u>

Newhall responds that is not responsible for the costs of the Environmental Incident because Newhall did not make any representations as to the condition of the pipelines on the Leased Premises, yet Berco agreed to take all equipment "as-is" and "where-is" and, further, agreed to maintain, repair and replace the pipeline during the Lease term.  Section Two of the Lease provides:

**Section Two: Consideration for Use of Existing Facilities, Fixtures, Equipment and Improvements.**  Lessor accepts the confirmation and agreement provided in Paragraph 3

11

of the Recitals, above,[9] as payment in full for Lessee's use during the term of the Lease of any and all facilities, fixtures, equipment and improvements currently located within the Leased Premises and appurtenant to the individual Current Wells (including but not limited to, the existing Tank Battery facilities and all pipelines currently within the Lease Premises and embraced within that description.) **Lessee accepts all such facilities, fixtures, equipment and improvements, and its use thereof, on as *[sic]* "AS-IS" and "WHERE-IS" basis, without warranty or representation from Lessor either (a) as to the merchantability of the same, or fitness of the same for a specific use or for any use, (b) as to the condition, quality, character or quantity of the same, (c) as to Lessor's ownership or other right, title or interest as to the same, or (d) on any other subject concerning the same.  Lessee shall maintain, repair and replace such facilities, fixtures, equipment and improvements throughout the term of this Lease as[*sic*] its sole cost and expense and shall deliver the same, along with possession of the Leased Premises, to Lessor at the expiration or sooner termination of this Lease in the existing condition with the exception of reasonable wear and tear arising out of Lessee's use thereof.**  Lessee's obligations with respect to such facilities, fixtures, equipment and improvements as it may hereafter place within the Leased Premises are as provided in Section Ten, below.

(Perez Aff., Ex. N) (emphasis added).

California courts have recognized that an "as is" provision "puts potential buyers on notice that the seller makes no warranties about the quality or condition of the thing sold.  In practice, it serves as a kind of 'red flag' warning the buyer that the goods or property to be sold may not be in perfect condition or of ideal quality."  *Shapiro v. Hu*, 188 Cal.App.3d 324, 333, 233 Cal.Rptr. 470, 475 (Cal.Ct.App. 1986).  *See also Lingsch v. Savage*, 213 Cal.App.2d 729, 742, 29 Cal.Rptr.201 (Cal.Ct.App. 1963) ("[T]he use of an 'as is' provision seems to convey the implication that the property is in some way defective and that the buyer must take it at his own risk.").

In response, Berco argues that, despite the "as-is" "where-is" language, Newhall had a

---

[9]In Paragraph 3 of the Recitals, Berco confirmed that Newhall did not have any liability or responsibility to pay the amount of $12,000 which remained due and owing by the prior lessee to Barney's Electric, Inc., a company owned in substantial part by the same owners of Berco.

duty to disclose facts regarding the pipelines that were not readily discernable or ascertainable

by Berco.  California courts have recognized that an "as-is" provision does not provide a seller

with general immunity from liability for fraud.  *Lingsch*, 213 Cal.App.2d at 740-41.  In the

*Lingsch* decision, the plaintiff alleged the defendants sold real property to the plaintiff, knowing

at the time of the sale that "the building was in a state of disrepair, and that units contained

therein were illegal and that the building had been placed for condemnation by the proper

officials."  *Lingsch*, 213 Cal.App.2d at 732-33.  The *Lingsch* Court wrote:

> We are of the opinion that, generally speaking, [an "as is"] provision means that
> the buyer takes the property in the condition visible to or observable by him.
> Where the seller actively misrepresents the then condition of the property or fails
> to disclose the true facts of its condition not within the buyer's reach and affecting
> the value or desirability of the property, an "as is" provision is ineffective to
> relieve the seller of either his "affirmative" or "negative" fraud. . . . An "as is"
> provision may therefore be effective as to a dilapidated stairway but not as to a
> missing structural member, a subterranean creek in the backyard or an
> unexploded bomb buried in the basement, all being known to the seller.

*Lingsch*, 213 Cal.App.2d at 742 (citations omitted).[10]  *See also Shapiro*, 188 Cal.App.3d at 333-

34 ("[A]ny sale of property 'as is' is a sale of the property in its 'present or existing condition';

the use of the phrase 'as is' relieves a seller of real property from liability for defects in that

condition.  The only exception to this principle is when a seller, through fraud or

misrepresentation, intentionally conceals material defects not otherwise visible or observable to

the buyer.").

Berco received a copy of Newhall's 1997 Environmental Inspection of the Leased

Premises, but Berco argues that the fact that the Environmental Inspection report was nearly

---

[10] The lower court granted a demurrer because the plaintiffs agreed to buy the property "in its
present state and condition" and with "no representations, guaranties, or warranties," but the *Lingsch*
Court reversed dismissal of the complaint, granting the plaintiff a chance to amend his complaint to add
detailed allegations to support his fraud claim.

eight years old at the time the Lease was signed may give rise to the assumption "that there were conditions existing, known or which should have been known to [Newhall] that were material and should have been disclosed to [Berco]."[11]  (Bercaw Decl., Ex. A, Proof of Claim at 2 "Claim Attachments").[12]   To the contrary, the age of the Environmental Inspection, combined with the "as-is" and  "where-is" language, served as the classic "red flag" that items such as the pipelines may not be in perfect condition. Berco knew of the existence of the  pipelines, and the Lease language indicates that both parties knew Berco intended to use them. Berco's "Spill Prevention And Control Countermeasure Plan" indicates that Berco's operations take place on "an unmanned facility that is inspected for visible leaks on a daily basis."  (Perez Aff., Ex. Q,  p. 7).

Despite Berco's vague objection about what Newhall "should have" known, there are no allegations that Newhall knew, or intentionally concealed. any information about the property or equipment from Berco.  Berco's conclusory inferences raise no more than a "metaphysical doubt" about possible non-disclosures.  Berco's arguments are insufficient to overcome the "as is" and "where is" provisions of the Lease.

(ii)    Newhall is not required to reimburse Berco for clean-up costs under CERCLA

_____

[11]Paragraph 5 of the Lease Recitals states:
In contemplation of entry into a prior oil and gas lease, Lessor has caused an Environmental Inspection to be carried out within the Leased Premises in or about September 1997 (the "Environmental Inspection").  Lessor has provided Lessee a copy of the written report of the results of that Environmental Inspection, dated September 30, 1997, in advance of entry into this lease.
(Perez Aff., Ex. N).  Berco also argues that Newhall "as the long time land owner" should have made additional disclosures to Berco to address inspections or repairs made in response to a 1994 earthquake in the vicinity or the possibility of "historical seepage" (i.e., oil that naturally seeps from the earth). (Berco Response to the Summary Judgment Motion (D.I. 2940) ("Berco Response") at 10). Neither of these alleged events supports a reasonable inference that Newhall purposefully withheld information from Berco in connection with these matters .

[12]The Declaration of Beverly Bercaw, a managing member of Berco Oil Company, is attached to the Berco Response (the "Bercaw Decl.").

14

Berco argues that Newhall, as owner of the Leased Premises, is required to indemnify or reimburse Berco for the clean-up costs under the Comprehensive Environmental Response, Compensation, Liability Act, 42 U.S.C. §9601 *et seq.* ("CERCLA").  In response, Newhall argues that CERCLA does not apply to spills of crude oil.[13]

To establish a prima facie CERCLA claim, a plaintiff must allege four elements, including a release or threatened release of a "hazardous substance."[14]  *Cose v. Getty Oil Co.*, 4 F.3d 700, 703 (9th Cir. 1993).  42 U.S.C. §9601(14) specifically excludes "petroleum, including crude oil" from the definition of "hazardous substance."  As recognized by the Third Circuit:

> [The Environmental Protection Agency ("EPA")]  has distinguished between oil
> that naturally contains low levels of hazardous substances and oil to which
> hazardous substances have been added through use. Although EPA has extended

---

[13]Newhall also argues that the claim for reimbursement or contribution under CERCLA was not included in the original proof of claim, but is a new claim that should be disallowed as a late claim since it was raised after the bar date.  I need not address this issue since the Environmental Incident does not fall within the ambit of CERCLA.

[14]The four elements that must be alleged to state a prima facie case under CERCLA are (i) the waste disposal site is a "facility" within the meaning of 42 U.S.C. §9501(9), (ii) a "release" or "threatened release" of a "hazardous substance" from the facility has occurred, *id.* §9607(a)(4), (iii) such release or threatened release will require the expenditure of response costs that are consistent with the national contingency plan, *id.* §9607(a)(4) and (a)(4)(B), and (iv) the defendant falls within one of four classes of persons subject to CERCLA's liability provisions, *id.* §9607(a)(1)-(4).  *Cose*, 4 F.3d at 703-04.

The term "hazardous substance" means:
(A) any substance designated pursuant to section 1321(b)(2)(A) of Title 33, (B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title, (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act [42 U.S.C.A. § 6921] (but not including any waste the regulation of which under the Solid Waste Disposal Act [42 U.S.C.A. § 6901 et seq.] has been suspended by Act of Congress), (D) any toxic pollutant listed under section 1317(a) of Title 33, (E) any hazardous air pollutant listed under section 112 of the Clean Air Act [42 U.S.C.A. § 7412], and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 2606 of Title 15. **The term does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph,** and the term does not include natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and such synthetic gas).
42 U.S.C. §9601 (emphasis added).

the petroleum exclusion to the former category of oily substances, it has specifically declined to extend such protection to the latter category. . . . . EPA's interpretation of the petroleum exclusion comports with the relevant legislative history which indicates that the exclusion was intended for oil spills, not for releases of oil which has become infused with hazardous substances through use. See S.Rep. No. 848, 96th Cong., 2d Sess. 30-31 (1980), reprinted in A Legislative History, Vol. I, at 405.

*United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 266-67 (3d Cir. 1992).  The undisputed

facts show that the Environmental Incident occurred as part of Berco's use of the Leased

Premises for the production of  hydrocarbons.  There is no indication that anything had been

added to the oil that spilled from the broken pipeline.  "Hydrocarbons" are defined as "an

organic compound . . .containing only carbon and hydrogen and often occurring in petroleum,

natural gas, coal, and bitumens."[15]  Accordingly, Berco has not demonstrated that the

Environmental Incident involved a "hazardous substance" as defined in CERCLA.

(iii)    <u>Berco is not entitled to reimbursement or contribution from Newhall's insurance for clean-up costs.</u>

In its response to the Summary Judgment Motion, Berco admits that it failed to obtain

insurance for the Leased Premises at the time of the Environmental Incident.  Berco argues that

insurance was not required because the parties never attached the "Insurance Requirements" as

Exhibit B to the Lease.  Section Seven of the Lease provides in pertinent part:

(a)    Prior to the commencement of any operations on the Leased Premises, Lessee shall furnish Lessor a Certificate of Insurance confirming its coverage of the types and amounts and otherwise in accordance with the terms and provisions of the "Insurance Requirements" attached hereto as Exhibit "B", showing Lessee's coverage for . . . Commercial General Liability, and Property Insurance with insurers reasonably acceptable to Lessor and naming Lessor as an additional insured, and providing that such policies of insurance shall not be canceled except after thirty (30) days advance written notice to the Lessor.  Notwithstanding any

---

[15] *See* http://www.merriam-webster.com/dictionary/hydrocarbon (accessed 1/9/2013).

16

other provisions of this Lease, Lessee shall not have any right of entry on the Leased Premises until such Certificate of Insurance is delivered to Lessor.  Lessee covenants and agrees to maintain all such insurance in full force and effect at all times during the term of this Lease and thereafter until it shall have fully satisfied all of its obligations under this Lease.

(Perez Aff., Ex. N).  Berco now asserts that it is entitled to be reimbursed for the Environmental Incident clean-up costs from *Newhall's* insurance on the Leased Premises.   However, Berco's argument does not explain any legal theory under which Berco's failure to obtain insurance shifts any responsibility for the clean-up costs to Newhall, so that Newhall should make a claim against its insurance for payment.

     (iv)    Berco is not entitled to reimbursement or contribution for the costs to clean-up "historical seepage."

Berco also argues that it is entitled to be reimbursed for the Environmental Incident clean-up costs because those costs may have included clean-up of "historical seepage" (i.e., oil that naturally seeps from the earth).  Since historical seepage is not caused by Berco's operations, Berco argues that it is not responsible to pay for its clean-up. Newhall argues in response that Berco has failed to provide any evidence of historical seepage or of costs to clean-up historical seepage.

Berco's response to the Summary Judgment Motion states that "[d]uring the time of the remediation, not only was there an attempted clean up of the surface spill, but as well, there was the attempted clean up of "legacy oil" that naturally seeps from the earth." (Berco Response at 2). The only information in support of this statement is (i) reference to a website (http://geomaps.wr.usgs.gov/seeps/losangeles.html) showing the occurrence, generally, of seepage in an area that includes the Leased Premises (Perez Aff., Ex. CC), and (ii) a declaration of Beverly Bercaw, a managing member of Berco, responsible for the books and records and

management of Berco, stating that "the leakage is of historical or legacy oil, and due to the negligence or omission of the Lessor, Newhall." (Bercaw Decl., ¶11).

The Incident Briefing[16] prepared after the Environmental Incident (Perez Aff., Ex. R) includes the following statement in section 5, entitled "Initial Response, Objectives, Current Actions, Planned Actions": "The possibility exists that there may be 'historic' spill that will be encountered in the stream bed. Should this occur, these will be addressed on an as needed basis by the Unified Command."

None of the conclusory statements in Berco's Response and Bercaw's Declaration support a claim for costs to clean-up historical seepage. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002) ("In order to satisfy the standard for summary judgment, the affiant must ordinarily set forth facts, rather than opinions or conclusions. An affidavit that is essentially conclusory and lacking in specific facts is inadequate to satisfy the movant or non-movant's burden.") (internal punctuation omitted). Although the website and the Incident Briefing speculate that the Leased Premises *could* contain historical seepage, Berco presented no facts identifying any historic seepage on the clean-up site. This is not a matter of weighing evidence, but a matter of lack of evidence. The parties agree that the Environmental Incident occurred due to a break in the pipeline. There are no facts alleged about the percentage of clean-up costs attributable to historical seepage. Berco cannot defeat the Summary Judgment Motion with conjecture about the theoretical possibility of encountering historical seepage on the Leased

---

[16]Exhibit R to the Perez Affidavit is the "Patriot Incident Briefing," an Environmental Protection Agency ("EPA") form prepared by Patriot Environmental Services, a private contractor hired by Berco clean up the oil spill, dated 9/16/08 to 10/4/08. (*See also* Bercaw Decl., Ex. B). Attached to the Patriot Incident Briefing are "Incident Action Plans," which are also EPA forms. The Incident Action Plan dated 7/23/08 to 8/28/08 is also attached to the Berco Claim. (Bercaw Decl., Ex. A).

Premises and a declaration setting forth conclusory statements.

(v)    Berco may not recover its Environmental Incident costs from the Lease Fund.

Berco also asserts that Newhall must reimburse Berco for the Environmental Incident clean-up costs from the "Lease Performance, Abandonment and Restoration Fund," which was established by Section Six of the Lease, consisting of (i) funds in the amount of $26,000 accrued from payments made by previous oil and gas lessees for the eventual plugging and abandonment of oil and gas wells, and (ii) monthly payments by Berco (the "Lease Fund"). (Perez Aff., Ex. N). Newhall argues that the Lease Fund is held as security to ensure that Berco complies with its Lease obligations and not to reimburse Berco for its clean-up costs. Newhall is correct.

The purpose of the Lease Fund, set forth in Section Six (c) of the Lease, is "(1) to secure the full and faithful performance of the obligations of Lessee under this Lease and (2) ultimately, to partially defray the cost and expense incurred by Lessor in the performance of its abandonment of the Current Wells and clean-up and restoration of the Leased Premises as herein provided." (*Id.*). Newhall is permitted to retain the Lease Fund until the Lease terminates and Berco has complied with all of its obligations under the Lease. (*Id.* at Section Six(d)). Upon termination of the Lease, Newhall may use as much of the Lease Fund as necessary for the costs of abandonment of Current Wells, and for the clean-up and restoration of the Leased Premises. (*Id.*). Thereafter, any remaining Lease Funds would be returned to Berco (without interest). (*Id.*). During the Lease term, Newhall has the right to use the Lease Fund to satisfy any of Berco's unperformed Lease obligations. (*Id.* at Section Six(e)). The Lease provides:

> If (in Lessor's sole discretion) Lessor elects to remedy such failure on the part of Lessee, and to reimburse its cost and expense incurred in connection with its having remedied that failure from the Lease Performance, Abandonment and Restoration Fund, then within ten (10) days of the Lessee's receiving written

19

notice from Lessor that Lessor has reimbursed itself in that manner, and of the
amount of that reimbursement, Lessee shall tender to Lessor the full amount of
that reimbursement in order to restore the Lease Performance, Abandonment and
Restoration Fund to its previous balance.

(*Id.*).  I have already determined that Berco is responsible for the Environmental Incident clean-

up costs.  Therefore, if Newhall paid the Environmental Incident clean-up costs from the Lease

Fund, Section Six (e) would require Berco to reimburse the Lease Fund and restore its balance

within ten days thereafter.  It would serve no legitimate purpose to allow payment of Berco from

the Lease Fund, only to require Berco to reimburse and restore the Lease Fund.

(3)    Objection to claim for reimbursement of tax payments.

Berco also claims that Newhall has failed to pay property taxes on the Leased Premises

over several years, as required under Section Eighteen (b) of the Lease, and demands "immediate

payment and reimbursement."  (Berco Response, Ex. A). Berco further alleges that Newhall

failed to pay property taxes that were due prior to the execution of the Lease and that Newhall's

nondisclosure of the delinquent taxes is a breach of the Lease.

(a)    Mineral Rights Taxes

Newhall argues that Section Eighteen (a) of the Lease provides that Berco is solely

responsible to pay the following taxes and assessments:

[Berco] shall, at its own expense and without reimbursement by Lessor, pay and
discharge before delinquency all taxes, assessments and other governmental charges
which during the term of this Lease, shall be levied upon or assessed or charged against
the oil, gas and hydrocarbon leasehold estate created hereby and against the
improvements and personal property constructed or placed on or produced from the
Leased Premises by or for the Lessee under this Lease, except the royalty interest
reserved to Lessor. [17]

---

[17] Section Four (d) provides that  "'Royalty Share' means and refers to 16.667% (1/6) with respect
to all production upon which a royalty is due to Lessor hereunder."  (Perez Aff., Ex. N).

(Perez Aff., Ex. N).    Berco is not required to pay any tax on the royalty interest reserved to

Newhall, but Newhall argues that if Berco elects to pay Newhall's portion, Section Eleven (b) of

the Lease makes it clear that Berco may recoup Newhall's share of the taxes from royalties paid

by Berco to Newhall.[18]    Further, Newhall argues that any unpaid taxes at the start of the Lease

term were for unpaid mineral rights taxes that were not the responsibility of Newhall. (Perez

Aff., Ex. Z).

      (b)    <u>Surface Taxes</u>

Newhall also asserts that Section Eighteen (b) of the Lease requires Newhall to pay only

those taxes assessed against "the interest owned by Lessor (or any of its subsidiaries) in the

surface of the Leased Premises (and improvements of Lessor and its subsidiaries thereon) . . . ."

(Perez Aff., Ex. N).  Newhall asserts that it has paid all surface taxes in full.  (Perez Aff. Ex.

Y).[19]    As a result, Newhall argues that it does not owe any amount to Berco for property taxes.

   (c) <u>Berco's Tax Liability</u>

Berco attached copies of "Secured Tax Statements" to its claim, which contain

handwritten notations of a check number and date, asserting that the statements show payment of

taxes that were Newhall's responsibility.    Newhall, however, argues that the Lease imposes

separate tax obligations upon Berco.  Section Eighteen (a) of the Lease requires that:

---

[18] Section Eleven (b) provides in pertinent part: "If Lessor . . . shall fail to pay any taxes due by Lessor on said Leased Premises . . .then Lessee, at its option, may discharge such taxes . . . and in such event, become subrogated thereto and have the right to apply to the repayment thereof of any rentals and royalties accruing to Lessor hereunder." (Perez Aff., Ex. N).

[19] Exhibit Y to the Perez Affidavit is an Affidavit of Donald L. Kimball, Executive Vice President - Operations and Finance of Newhall Holding Company, LLC, the ultimate parent of Newhall.  Kimball states that he functions as the financial officer for Newhall and certain affiliates and that, under his direction and supervision, an employee monitors, pays and discharges all taxes assessed by Ventura County against the interest owned by Newhall in the surface of the Leased Premises.

>    [Berco] shall, at its own expense and without reimbursement by Lessor, pay and
>    discharge before delinquency all taxes, assessments and other governmental
>    charges which during the term of this Lease, shall be levied upon or assessed or
>    charged against the oil, gas and hydrocarbon leasehold estate created hereby and
>    against the improvements and personal property constructed or placed on or
>    produced from the Leased Premises by or for the Lessee under this Lease, except
>    the royalty interest reserved to Lessor.

(Perez Aff., Ex. N).   Section Eighteen (c) also obligates Berco to pay (without reimbursement

by Newhall) all taxes "referable to any operations or acts of [Berco] . . . on the Leased Premises

including (without limitation) the drilling or operation of any well or wells, the production,

extraction, severance or removal of any hydrocarbon, or for any product thereof, or the

transportation thereof away from the Leased Premises." (*Id.*).

The Lease requires Berco to pay all taxes assessed with respect to the oil, gas and

hydrocarbon leasehold estate, except for the amount due on the royalty interest reserved to

Newhall.  The evidence offered by both parties with respect to the tax obligations is incomplete

and raises a issue of material fact regarding whether payments by Berco satisfied Berco' own tax

liabilities or Newhall's tax liabilities. Because there are factual issues regarding the tax claim,

summary judgment will be denied.


### Conclusion

For the reasons set forth above, Berco's evidentiary objection to the Declaration Filed in

Support of Newhall's Summary Judgment Motion is overruled.  Further, for the reasons stated

above, Newhall's Summary Judgment Motion with respect to Berco's claim will be: (i) granted,

in part, to sustain Newhall's objection to Berco's claim for reimbursement of the Environmental

Incident clean-up costs, and (ii) denied, in part, with respect Newhall's objection to Berco's claim for reimbursement of property taxes.

An appropriate order follows.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: January 11, 2012